# 20-3837

## United States Court of Appeals

**FOR THE SECOND CIRCUIT**

**Docket No. 20-3837**

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,

*Plaintiff-Appellee*,

—v.—

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, UNITED STATES DEPARTMENT OF STATE, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,

*Defendants-Appellants*,

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF JUSTICE, UNITED STATES CUSTOMS AND BORDER PROTECTION,

*Defendants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOINT APPENDIX**
**VOLUME I OF II**
**(Pages JA-1 to JA-300)**

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY
*Attorney for Plaintiff-Appellee.*
206 Kent Hall
New York, New York 10027
(212) 854-1607

SAMUELSON LAW TECHNOLOGY AND PUBLIC POLICY CLINIC
*Attorney for Plaintiff-Appellee.*
U.C. Berkeley School of Law
Berkeley, California 94720
(510) 643-4800

AUDREY STRAUSS,
*United States Attorney for the Southern District of New York,*
*Attorney for Defendants-Appellants.*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2743

# TABLE OF CONTENTS

PAGE

U.S. District Court, Southern District of New York,
Civil Docket for Case No. 17 Civ. 7572 (ALC) ........ JA 1

Amended Complaint,
dated March 14, 2018 ........ JA 22

Freedom of Information Act Request,
dated August 7, 2017 ........ JA 36

Declaration of Eric F. Stein,
dated February 26, 2019 ........ JA 44

Declaration of Carrie DeCell, Esq.,
dated March 28, 2019 ........ JA 102

Declaration of Eric F. Stein,
dated May 3, 2019 ........ JA 160

Declaration of Jill A. Eggleston,
dated March 14, 2019 ........ JA 168

Declaration of Toni Fuentes,
dated March 15, 2019 ........ JA 188

Declaration of Carrie DeCell, Esq.,
dated April 16, 2019 ........ JA 250

Declaration of Jill A. Eggleston,
dated May 14, 2019 ........ JA 550

Declaration of Toni Fuentes,
dated May 17, 2019 ........ JA 555

Notice of Appeal, dated November 12, 2020 ........ JA 574

STAYED,APPEAL,ECF

# U.S. District Court
# Southern District of New York (Foley Square)
# CIVIL DOCKET FOR CASE #: 1:17-cv-07572-ALC

Knight First Amendment Institute at Columbia University v. Department of Homeland Security et al
Assigned to: Judge Andrew L. Carter, Jr
Cause: 05:552 Freedom of Information Act

Date Filed: 10/04/2017
Jury Demand: None
Nature of Suit: 895 Freedom of Information Act
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Knight First Amendment Institute at Columbia University**

represented by

**Aditya Kamdar**
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA 94111
415-362-6666
Email: akamdar@durietangri.com
*TERMINATED: 08/29/2019*

**Caroline Decell**
Knight First Amendment Institute At Columbia University
206 Kent Hall
New York, NY 10027
(212)-854-1607
Email: carrie.decell@knightcolumbia.org
*ATTORNEY TO BE NOTICED*

**Catherine Newby Crump**
Samuelson Law Technology & Public Policy Clinic
U.C. Berkeley School of Law
Berkeley, CA 94720
510-643-4800
Fax: 510-643-4625
Email: ccrump@clinical.law.berkeley.edu
*ATTORNEY TO BE NOTICED*

**Leena M. Charlton**
Pryor Cashman
7 Times Square
New York, NY 10036
212-326-0843
Email: lcharlton@pryorcashman.com
*TERMINATED: 11/13/2020*

**Megan Kathleen Graham**
Samuelson Law, Technology & Public Policy Clinic At U.C. B
354 Boalt Hall

Berkeley, CA 94720
(510)-664-4381
Email: mgraham@clinical.law.berkeley.edu
*ATTORNEY TO BE NOTICED*

**Xiangnong Wang**
Knight First Amendment Institute at Columbia University
475 Riverside Drive
Suite 302
New York, NY 10115
646-745-8500
Email: george.wang@knightcolumbia.org
*ATTORNEY TO BE NOTICED*

**Jameel Jaffer**
Knight First Amendment Institute at Coumbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646)-745-8500
Email: jameel.jaffer@knightcolumbia.org
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**U.S. Department of Homeland Security** represented by **Jennifer Ellen Blain**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212)637-2743
Fax: (212) 637-2730
Email: Ellen.Blain@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Immigration and Customs Enforcement**
*TERMINATED: 01/16/2018*
represented by **Jennifer Ellen Blain**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Citizenship and Immigration Services** represented by **Jennifer Ellen Blain**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Justice** represented by **Jennifer Ellen Blain**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of State** represented by **Jennifer Ellen Blain**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Customs and Border Protection** represented by **Jennifer Ellen Blain**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Immigration and Customs Enforcement** represented by **Jennifer Ellen Blain**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/04/2017 | 1 | COMPLAINT against Citizenship and Immigration Services, Customs and Border Protection, Department of Homeland Security, Department of Justice, Department of State, Immigration and Customs Enforcement. (Filing Fee $ 400.00, Receipt Number 0208-14203758)Document filed by Knight First Amendment Institute at Columbia University. (Attachments: # 1 Exhibit Exhibit A (FOIA Request))(Jaffer, Jameel) (Entered: 10/04/2017) |
| 10/04/2017 | 2 | CIVIL COVER SHEET filed. (Jaffer, Jameel) (Entered: 10/04/2017) |
| 10/04/2017 | 3 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Knight First Amendment Institute at Columbia University.(Jaffer, Jameel) (Entered: 10/04/2017) |
| 10/04/2017 | 4 | **FILING ERROR - DEFICIENT SUMMONS REQUEST - CAPTION TITLE ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to U.S. Customs and Border Protection, re: 1 Complaint,. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) Modified on 10/5/2017 (kl). (Entered: 10/04/2017) |
| 10/04/2017 | 5 | **FILING ERROR - DEFICIENT SUMMONS REQUEST - CAPTION TITLE ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to U.S. Department of Homeland Security, re: 1 Complaint,. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) Modified on 10/5/2017 (kl). (Entered: 10/04/2017) |
| 10/04/2017 | 6 | **FILING ERROR - DEFICIENT SUMMONS REQUEST - CAPTION TITLE ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to U.S. Department of Justice, re: 1 Complaint,. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) Modified on 10/5/2017 (kl). (Entered: 10/04/2017) |
| 10/04/2017 | 7 | **FILING ERROR - DEFICIENT SUMMONS REQUEST - CAPTION TITLE ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to U.S. Department of State, |

| | | |
|---|---|---|
| | | re: 1 Complaint,. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) Modified on 10/5/2017 (kl). (Entered: 10/04/2017) |
| 10/04/2017 | 8 | **FILING ERROR - DEFICIENT SUMMONS REQUEST - CAPTION TITLE ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to U.S. Immigration and Customs Enforcement, re: 1 Complaint,. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) Modified on 10/5/2017 (kl). (Entered: 10/04/2017) |
| 10/04/2017 | 9 | **FILING ERROR - DEFICIENT SUMMONS REQUEST - CAPTION TITLE ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to U.S. Citizenship and Immigration Services, re: 1 Complaint,. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) Modified on 10/5/2017 (kl). (Entered: 10/04/2017) |
| 10/05/2017 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Andrew L. Carter, Jr. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (kl) (Entered: 10/05/2017) |
| 10/05/2017 | | Magistrate Judge Katharine H. Parker is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (kl) (Entered: 10/05/2017) |
| 10/05/2017 | | Case Designated ECF. (kl) (Entered: 10/05/2017) |
| 10/05/2017 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Jameel Jaffer to RE-FILE Document No. 9 Request for Issuance of Summons, 8 Request for Issuance of Summons, 4 Request for Issuance of Summons, 7 Request for Issuance of Summons, 6 Request for Issuance of Summons, 5 Request for Issuance of Summons,. The filing is deficient for the following reason(s): PLEASE ENTER ALL PARTIES IN THE CAPTION TITLE THAT ARE VIEWABLE OR ENTER ET AL. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (kl)** (Entered: 10/05/2017) |
| 10/05/2017 | 10 | REQUEST FOR ISSUANCE OF SUMMONS as to U.S. Customs and Border Protection, re: 1 Complaint,. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) (Entered: 10/05/2017) |
| 10/05/2017 | 11 | REQUEST FOR ISSUANCE OF SUMMONS as to U.S. Department of Homeland Security, re: 1 Complaint,. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) (Entered: 10/05/2017) |
| 10/05/2017 | 12 | REQUEST FOR ISSUANCE OF SUMMONS as to U.S. Department of Justice, re: 1 Complaint,. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) (Entered: 10/05/2017) |
| 10/05/2017 | 13 | REQUEST FOR ISSUANCE OF SUMMONS as to U.S. Department of State, re: 1 Complaint,. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) (Entered: 10/05/2017) |

# JA-5

| | | |
|---|---|---|
| 10/05/2017 | 14 | REQUEST FOR ISSUANCE OF SUMMONS as to U.S. Immigration and Customs Enforcement, re: 1 Complaint,. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) (Entered: 10/05/2017) |
| 10/05/2017 | 15 | REQUEST FOR ISSUANCE OF SUMMONS as to U.S. Citizenship and Immigration Services, re: 1 Complaint,. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) (Entered: 10/05/2017) |
| 10/06/2017 | 16 | ELECTRONIC SUMMONS ISSUED as to U.S. Customs and Border Protection. (kl) (Entered: 10/06/2017) |
| 10/06/2017 | 17 | ELECTRONIC SUMMONS ISSUED as to U.S. Department of Homeland Security. (kl) (Entered: 10/06/2017) |
| 10/06/2017 | 18 | ELECTRONIC SUMMONS ISSUED as to U.S. Department of Justice. (kl) (Entered: 10/06/2017) |
| 10/06/2017 | 19 | ELECTRONIC SUMMONS ISSUED as to U.S. Department of State. (kl) (Entered: 10/06/2017) |
| 10/06/2017 | 20 | ELECTRONIC SUMMONS ISSUED as to U.S. Immigration and Customs Enforcement. (kl) (Entered: 10/06/2017) |
| 10/06/2017 | 21 | ELECTRONIC SUMMONS ISSUED as to U.S. Citizenship and Immigration Services. (kl) (Entered: 10/06/2017) |
| 10/20/2017 | 22 | AFFIDAVIT OF SERVICE. U.S. Citizenship and Immigration Services served on 10/10/2017, answer due 10/31/2017; U.S. Customs and Border Protection served on 10/10/2017, answer due 10/31/2017; U.S. Department of Homeland Security served on 10/10/2017, answer due 10/31/2017; U.S. Department of Justice served on 10/10/2017, answer due 10/31/2017; U.S. Department of State served on 10/10/2017, answer due 10/31/2017; U.S. Immigration and Customs Enforcement served on 10/10/2017, answer due 10/31/2017. Service was made by Mail. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) (Entered: 10/20/2017) |
| 10/20/2017 | 23 | AFFIDAVIT OF SERVICE. Service was made by Mail. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) (Entered: 10/20/2017) |
| 11/09/2017 | 24 | AFFIDAVIT OF SERVICE. U.S. Citizenship and Immigration Services served on 11/6/2017, answer due 11/27/2017; U.S. Customs and Border Protection served on 11/6/2017, answer due 11/27/2017; U.S. Department of Homeland Security served on 11/6/2017, answer due 11/27/2017; U.S. Department of State served on 11/7/2017, answer due 11/28/2017; U.S. Immigration and Customs Enforcement served on 11/6/2017, answer due 11/27/2017. Service was made by Mail. Document filed by Knight First Amendment Institute at Columbia University. (Attachments: # 1 Delivery Confirmation)(Jaffer, Jameel) (Entered: 11/09/2017) |
| 11/13/2017 | 25 | LETTER MOTION for Extension of Time to File Answer addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated November 13, 2017. Document filed by U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 11/13/2017) |
| 11/14/2017 | 26 | ORDER: granting 25 Letter Motion for Extension of Time to Answer. The application is granted. U.S. Citizenship and Immigration Services answer due 12/28/2017; U.S. Customs and Border Protection answer due 12/28/2017; U.S. Department of Homeland Security answer due 12/28/2017; U.S. Department of Justice answer due 12/28/2017; U.S. Department of State answer due 12/28/2017; U.S. Immigration and Customs |

| | | |
|---|---|---|
| | | Enforcement answer due 12/28/2017. (Signed by Judge Andrew L. Carter, Jr on 11/14/2017) (ap) (Entered: 11/14/2017) |
| 12/28/2017 | 27 | ANSWER to 1 Complaint,. Document filed by U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Department of State.(Blain, Jennifer) (Entered: 12/28/2017) |
| 12/28/2017 | 28 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated December 28, 2017 re: Immigration and Customs Enforcement Request for Pre-Motion Conference re Motion to Dismiss. Document filed by U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 12/28/2017) |
| 01/11/2018 | 29 | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT -** STIPULATION OF VOLUNTARY DISMISSAL It is hereby stipulated and agreed by and between the parties and/or their respective counsel(s) that the above-captioned action is voluntarily dismissed, WITHOUT prejudice against the defendant(s) U.S. Immigration and Customs Enforcement pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Document filed by Knight First Amendment Institute at Columbia University. (Jaffer, Jameel) Modified on 1/12/2018 (km). (Entered: 01/11/2018) |
| 01/11/2018 | 30 | LETTER addressed to Judge Andrew L. Carter, Jr. from Counsel for Plaintiff dated January 11, 2018 re: U.S. Immigration and Customs Enforcement Request for Pre-Motion Conference re Motion to Dismiss. Document filed by Knight First Amendment Institute at Columbia University.(Jaffer, Jameel) (Entered: 01/11/2018) |
| 01/12/2018 | | *****NOTE TO ATTORNEY TO E-MAIL PDF. Note to Attorney Jameel Jaffer for noncompliance with Section 18.3 of the S.D.N.Y. Electronic Case Filing Rules & Instructions. E-MAIL the PDF for Document 29 Stipulation of Voluntary Dismissal with handwritten signatures of the attorneys to: judgments@nysd.uscourts.gov. (km)** (Entered: 01/12/2018) |
| 01/16/2018 | 31 | STIPULATION OF VOLUNTARY DISMISSAL OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT PURSUANT TO F.R.C.P. 41(a)(1)(A)(ii): IT IS HEREBY STIPULATED AND AGREED by and between the parties' respective counsels that the above-captioned action is voluntarily dismissed, without prejudice, against the defendant U.S. Immigration and Customs Enforcement pursuant to Federal Rule of Civil Procedure 41(a)(1) (A)(ii). U.S. Immigration and Customs Enforcement terminated. (Signed by Judge Andrew L. Carter, Jr on 1/16/2018) (rj) (Entered: 01/16/2018) |
| 02/08/2018 | 32 | NOTICE OF CHANGE OF ADDRESS by Jameel Jaffer on behalf of Knight First Amendment Institute at Columbia University. New Address: Knight First Amendment Institute at Columbia University, 475 Riverside Drive, Suite 302, New York, NY, USA 10115, 646-745-8500. (Jaffer, Jameel) (Entered: 02/08/2018) |
| 02/12/2018 | 33 | ORDER: The Court will hold a status conference in this matter on February 23, 2018 at 3:00 p.m. The parties (and/or counsel) should appear in person in Courtroom 1306 at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY, on the date and time specified above. SO ORDERED. Status Conference set for 2/23/2018 at 03:00 PM in Courtroom 1306, 40 Foley Square, New York, NY 10007 before Judge Andrew L. Carter Jr. (Signed by Judge Andrew L. Carter, Jr on 2/12/2018) (rj) (Entered: 02/12/2018) |
| 02/15/2018 | 34 | NOTICE OF APPEARANCE by Catherine Newby Crump on behalf of Knight First Amendment Institute at Columbia University. (Crump, Catherine) (Entered: 02/15/2018) |
| 02/16/2018 | 35 | MOTION for Megan Kathleen Graham to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-14712008. **Motion and supporting papers to be reviewed by** |

| | | |
|---|---|---|
| | | **Clerk's Office staff.** Document filed by Knight First Amendment Institute at Columbia University. (Attachments: # 1 Affidavit, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Graham, Megan) (Entered: 02/16/2018) |
| 02/16/2018 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 35 MOTION for Megan Kathleen Graham to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number 0208-14712008. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (ma)** (Entered: 02/16/2018) |
| 02/20/2018 | 36 | ORDER FOR ADMISSION PRO HAC VICE granting 35 Motion for Megan Kathleen Graham to Appear Pro Hac Vice. (Signed by Judge Andrew L. Carter, Jr on 2/20/2018) (rj) (Entered: 02/20/2018) |
| 02/20/2018 | 37 | LETTER addressed to Judge Andrew L. Carter, Jr. from Megan Graham dated 2/20/2018 re: Request to Appear Telephonically at Status Conference. Document filed by Knight First Amendment Institute at Columbia University.(Graham, Megan) (Entered: 02/20/2018) |
| 02/23/2018 | 38 | MEMO ENDORSEMENT on re: 37 Letter regarding Request to Appear Telephonically at Status Conference filed by Knight First Amendment Institute at Columbia University. ENDORSEMENT: SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 2/21/2018) (rj) (Entered: 02/23/2018) |
| 02/23/2018 | | Minute Entry for proceedings held before Judge Andrew L. Carter, Jr: Status Conference held on 2/23/2018. Jameel Jaffer, Carrie Decell, Alex Abdo, Catherine Crump and Megan Graham for Plaintiff(s). Jennifer Bain for Defendant(s). See Docket No. 39 for complete details. (Court Reporter: Steven Griffing) (tdh) (Entered: 02/26/2018) |
| 02/26/2018 | 39 | ORDER: As discussed during the February 23, 2018 status conference in this matter, Defendants will complete their searches for responsive documents by March 30, 2018. Defendant U.S. Customs and Border Protection will complete document production by March 30, 2018. The parties shall submit a joint status report by April 9, 2018. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 2/23/2018) (rj) (Entered: 02/26/2018) |
| 03/12/2018 | 40 | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR -** AMENDED COMPLAINT amending 1 Complaint, against U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement.Document filed by Knight First Amendment Institute at Columbia University. Related document: 1 Complaint. (Attachments: # 1 Exhibit A: Letter With Written Consent to File Amended Complaint Pursuant to FRCP 15(a)(2), # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Crump, Catherine) Modified on 3/13/2018 (sj). (Entered: 03/12/2018) |
| 03/12/2018 | 41 | EXHIBIT TO PLEADING re: 40 Amended Complaint,,. Document filed by Knight First Amendment Institute at Columbia University.(Crump, Catherine) (Entered: 03/12/2018) |
| 03/13/2018 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Catherine Newby Crump to RE-FILE re: Document No. 40 Amended Complaint. The filing is deficient for the following reason(s): all of the parties listed on the pleading were not entered on CM ECF; the wrong party/parties whom the pleading is against were selected; (U.S. Immigration and Customs Enforcement was previously terminated and must be added back to the docket). Docket the event type Add Party to Pleading found under the event list Complaints and Other Initiating** |

| | | |
|---|---|---|
| | | **Documents.. Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (sj)** (Entered: 03/13/2018) |
| 03/14/2018 | 42 | AMENDED COMPLAINT amending 1 Complaint, against U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement.Document filed by Knight First Amendment Institute at Columbia University. Related document: 1 Complaint,. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Crump, Catherine) (Entered: 03/14/2018) |
| 03/14/2018 | 43 | REQUEST FOR ISSUANCE OF SUMMONS as to U.S. Immigration and Customs Enforcement, re: 42 Amended Complaint,,. Document filed by Knight First Amendment Institute at Columbia University. (Crump, Catherine) (Entered: 03/14/2018) |
| 03/15/2018 | 44 | ELECTRONIC SUMMONS ISSUED as to U.S. Immigration and Customs Enforcement. (sj) (Entered: 03/15/2018) |
| 03/15/2018 | 45 | NOTICE OF CHANGE OF ADDRESS by Catherine Newby Crump on behalf of Knight First Amendment Institute at Columbia University. New Address: Samuelson Law, Technology & Public Policy Clinic, U.C. Berkeley School of Law, 433 Boalt Hall (North Addition), Berkeley, CA, United States 94720, 510-642-5049. (Crump, Catherine) (Entered: 03/15/2018) |
| 03/22/2018 | 46 | AFFIDAVIT OF SERVICE of Summons and Amended Complaint,,. U.S. Immigration and Customs Enforcement served on 3/19/2018, answer due 4/9/2018. Service was made by Mail. Document filed by Knight First Amendment Institute at Columbia University. (Attachments: # 1 Delivery Confirmation)(Graham, Megan) (Entered: 03/22/2018) |
| 04/03/2018 | 47 | ANSWER to 42 Amended Complaint,,. Document filed by U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Blain, Jennifer) (Entered: 04/03/2018) |
| 04/09/2018 | 48 | STATUS REPORT. *Joint Status Report* Document filed by Knight First Amendment Institute at Columbia University.(Crump, Catherine) (Entered: 04/09/2018) |
| 04/13/2018 | 49 | MEMO ENDORSEMENT on re: 48 Status Report filed by Knight First Amendment Institute at Columbia University. ENDORSEMENT: The proposed briefing schedule is adopted. A status conference is scheduled for May 14, 2018 at 10:00 am. SO ORDERED. Status Conference set for 5/14/2018 at 10:00 AM before Judge Andrew L. Carter Jr. (Signed by Judge Andrew L. Carter, Jr on 4/13/2018) (rj) (Entered: 04/13/2018) |
| 04/13/2018 | 50 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated April 13, 2018 re: Joint Status Update re ICE. Document filed by U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 04/13/2018) |
| 04/16/2018 | 51 | MEMO ENDORSEMENT on re: 50 Letter regarding Joint Status Update re ICE filed by U.S. Immigration and Customs Enforcement. ENDORSEMENT: SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 4/16/2018) (rj) (Entered: 04/16/2018) |
| 04/20/2018 | 52 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated April 20, 2018 re: Processing and Production Schedule for State and ICE. Document filed by U.S. Department of State, U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 04/20/2018) |

# JA-9

| | | |
|---|---|---|
| 04/20/2018 | 53 | OATH of Eric F. Stein *in Support of State Processing Rates*. Document filed by U.S. Department of State. (Attachments: # 1 Exhibit 1)(Blain, Jennifer) (Entered: 04/20/2018) |
| 04/20/2018 | 54 | OATH of Catrina Pavlik-Keenan *in Support of ICE Production Rates*. Document filed by U.S. Immigration and Customs Enforcement. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10)(Blain, Jennifer) (Entered: 04/20/2018) |
| 05/04/2018 | 55 | LETTER addressed to Judge Andrew L. Carter, Jr. from Megan Graham dated May 4, 2018 re: Processing and Production Schedule for State and ICE. Document filed by Knight First Amendment Institute at Columbia University.(Graham, Megan) (Entered: 05/04/2018) |
| 05/04/2018 | 56 | OATH of Carrie DeCell *in Support of the Knight Institute's Letter [ECF 55]*. Document filed by Knight First Amendment Institute at Columbia University.(Graham, Megan) (Entered: 05/04/2018) |
| 05/14/2018 | 57 | ORDER: Plaintiff and Defendants U.S. Department of State and U.S. Immigration and Customs Enforcement shall confer regarding processing and production rates in this case and shall submit a joint status report by May 21, 2018. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 5/14/2018) (anc) (Entered: 05/14/2018) |
| 05/14/2018 | 58 | LETTER addressed to Judge Andrew L. Carter, Jr. from Carrie DeCell dated 05/14/2018 re: New Information and Proposed DOS Processing Schedule. Document filed by Knight First Amendment Institute at Columbia University.(Decell, Caroline) (Entered: 05/14/2018) |
| 05/14/2018 | | Minute Entry for proceedings held before Judge Andrew L. Carter, Jr: Status Conference held on 5/14/2018. Megan Graham and Carrie Decell for Plaintiff(s).Jennifer Bain for Defendant(s). See Docket No. 57. (Court Reporter: Andrew Walker) (tdh) (Entered: 05/24/2018) |
| 05/15/2018 | 59 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated May 15, 2018 re: Plaintiffs' Letter Dated May 14, 2018. Document filed by U.S. Department of State.(Blain, Jennifer) (Entered: 05/15/2018) |
| 05/15/2018 | 60 | ORDER: The Court is in receipt of Plaintiff's letter dated May 14, 2018. (ECF No. 58.) Defendant U.S. Department of State shall respond stating its position by May 16, 2018 at 12:00 p.m. (Signed by Judge Andrew L. Carter, Jr on 5/15/2018) (ap) Modified on 5/16/2018 (ap). (Entered: 05/15/2018) |
| 05/18/2018 | 61 | ORDER: The Court is in receipt of Defendant U.S. Department of State's ("DOS") response to Plaintiff' s letter dated May 14, 2018. ECF No. 59. In its letter, DOS stated that it could determine the precise number of responsive pages to Plaintiff's FOIA request by May 17, 2018. Id. DOS is ordered to file a status report providing the number of responsive pages by 3:00 p.m. today. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 5/18/2018) (rj) Modified on 5/18/2018 (rj). (Entered: 05/18/2018) |
| 05/18/2018 | 62 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated May 18, 2018 re: State's Number of Pages to Process. Document filed by U.S. Department of State.(Blain, Jennifer) (Entered: 05/18/2018) |
| 05/18/2018 | 63 | ORDER: Accordingly, Plaintiff sought production of all such documents by June 15, 2018. Id. DOS filed a response the following day indicating that it could identify the precise number of responsive pages by May 17, 2018. ECF No. 59. Following an Order by this Court, on May 18, 2018 DOS filed a letter stating that 72 documents, totaling 1,719 pages, are most likely responsive to Plaintiff's request. ECF No. 62. DOS reiterated its request for a schedule of 300 pages per month. ECF No. 62. Having considered the |

| | | |
|---|---|---|
| | | respective parties' proposals and the various arguments made, the Court hereby ORDERS Defendant DOS to complete its processing and production of all responsive documents no later than June 28, 2018. Furthermore, DOS should produce those documents that they identify as responsive to Plaintiff's request on a rolling basis. The Court determines that this schedule provides a reasonable time frame for DOS to respond to, Plaintiff's request. SO ORDERED. ( Responses due by 6/28/2018) (Signed by Judge Andrew L. Carter, Jr on 5/18/2018) (rj) (Entered: 05/21/2018) |
| 05/21/2018 | 64 | STATUS REPORT. *Second Joint Status Report* Document filed by Knight First Amendment Institute at Columbia University.(Decell, Caroline) (Entered: 05/21/2018) |
| 05/23/2018 | 65 | ORDER. The Court is in receipt of the parties' joint status report dated May 21, 2018. ECF No. 64. Defendant U.S. Immigration and Customs Enforcement ("ICE") shall submit a status report advising the Court how many pages of records are responsive to Plaintiff's narrowed request by June 18, 2018 or as soon as ICE completes its responsiveness review, whichever is sooner. Defendant U.S. Department of Justice-Office of Legal Counsel ("DOJ-OLC") shall submit a declaration by May 28, 2018 explaining in more detail the bases for its proposed production schedule. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 5/23/2018) (rjm) (Entered: 05/23/2018) |
| 05/29/2018 | 66 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated May 29, 2018 re: OLC Production Schedule with Declaration. Document filed by U.S. Department of Justice. (Attachments: # 1 Affidavit Paul P. Colborn)(Blain, Jennifer) (Entered: 05/29/2018) |
| 05/31/2018 | 67 | ORDER: The Court is in receipt of Defendant U.S. Department of Justice-Office of Legal Counsel ("DOJ-OLC")'s declaration dated May 29, 2018. ECF No. 66. The Court hereby orders DOJ-OLC to complete its processing and production of all responsive documents no later than July 16, 2018. Furthermore, DOJ-OLC should produce those documents that they identify as responsive to Plaintiff's request on a rolling basis. The Court determines that this schedule provides a reasonable time frame for DOJ-OLC to respond to Plaintiff's request. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 5/31/2018) (ne) (Entered: 05/31/2018) |
| 06/18/2018 | 68 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated June 18, 2018 re: Status Update on Behalf of ICE. Document filed by U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 06/18/2018) |
| 06/22/2018 | 69 | ORDER: In a joint status report dated May 21, 2018, Defendant United States Immigration and Customs Enforcement ("ICE") proposed to produce records responsive to Plaintiffs Freedom of Information Act ("FOIA") request on a rolling basis, to be completed by December 31, 2018. ECF No. 64. Plaintiff requested a production deadline of August 31, 2018. Id. At that time, ICE did not know how many documents were responsive to Plaintiff's narrowed request. Id. On May 23, 2018, this Court ordered ICE to submit a status report by June 18, 2018 indicating how many pages of records are responsive to Plaintiff's narrowed request. ECF No. 65. On June 18, 2018, ICE wrote to this Court stating that it has determined that 99 pages of documents are most likely responsive to the narrowed request. ECF No. 68. Plaintiff shall file a response by June 25, 2018 indicating its position on a deadline for ICE's production in light of this information. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 6/21/2018) (rj) (Entered: 06/22/2018) |
| 06/22/2018 | 70 | LETTER addressed to Judge Andrew L. Carter, Jr. from Carrie DeCell dated June 22, 2018 re: ICE's Letter dated June 18, 2018. Document filed by Knight First Amendment Institute at Columbia University.(Decell, Caroline) (Entered: 06/22/2018) |
| 06/26/2018 | 71 | ORDER: The Court hereby ORDERS Defendant U.S. Immigration and Customs |

| | | |
|---|---|---|
| | | Enforcement ("ICE") to complete its processing and production of all responsive documents no later than July 3, 2018. Furthermore, ICE should produce those documents that they identify as responsive to Plaintiff's request on a rolling basis. SO ORDERED. Responses due by 7/3/2018. (Signed by Judge Andrew L. Carter, Jr on 6/26/2018) (rj) (Entered: 06/26/2018) |
| 07/18/2018 | 72 | LETTER addressed to Judge Andrew L. Carter, Jr. from Carrie DeCell dated July 18, 2018 re: Request for Clarification of Orders Setting DOS and ICE Production Schedules. Document filed by Knight First Amendment Institute at Columbia University. (Attachments: # 1 Declaration of Carrie DeCell)(Decell, Caroline) (Entered: 07/18/2018) |
| 07/20/2018 | 73 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated July 20, 2018 re: Plaintiff's July 18, 2018 Letter. Document filed by U.S. Department of State, U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 07/20/2018) |
| 07/24/2018 | 74 | ORDER: The Court is in receipt of Plaintiff's letter dated July 18, 2018 (ECF No. 72) and Defendants' response dated July 20, 2018 (ECF No. 73). Defendant United States Department of State ("DOS") shall produce all responsive documents by July 31, 2018. Defendant United States Immigration and Customs Enforcement ("ICE") shall make a further submission to this Court stating how many of the referred pages are responsive to Plaintiff's narrowed request and when the review of those pages will be complete by July 25, 2018 at 11:00 a.m. (Signed by Judge Andrew L. Carter, Jr on 7/24/2018) (mro) (Entered: 07/24/2018) |
| 07/24/2018 | 75 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated July 24 2018 re: ICE July 24 Update. Document filed by U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 07/24/2018) |
| 07/26/2018 | 76 | ORDER: The Court is in receipt of Defendant United States Immigration and Customs Enforcement ("ICE")'s letter dated July 24, 2018 (ECF No. 75). ICE shall submit a status report informing the Court how many documents are responsive to Plaintiff's narrowed request by July 27, 2018. ICE shall also refer any such remaining responsive documents to the relevant agencies no later than July 27, 2018. The Court defers ruling on a production date for any such documents until it receives ICE's status report. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 7/26/2018) (rj) (Entered: 07/26/2018) |
| 07/27/2018 | 77 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated July 27, 2018 re: Further ICE Update. Document filed by U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 07/27/2018) |
| 10/05/2018 | 78 | LETTER addressed to Judge Andrew L. Carter, Jr. from the Knight Institute dated 10/05/2018 re: Status Update. Document filed by Knight First Amendment Institute at Columbia University.(Graham, Megan) (Entered: 10/05/2018) |
| 11/09/2018 | 79 | LETTER addressed to Judge Andrew L. Carter, Jr. from Carrie DeCell dated November 9, 2018 re: Request for Pre-Motion Conference re Motion for Partial Summary Judgment. Document filed by Knight First Amendment Institute at Columbia University.(Decell, Caroline) (Entered: 11/09/2018) |
| 11/28/2018 | 80 | MEMO ENDORSEMENT on re: 79 Letter regarding Request for Pre-Motion Conference re Motion for Partial Summary Judgment, filed by Knight First Amendment Institute at Columbia University. ENDORSEMENT: SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 11/28/2018) (rj) (Entered: 11/29/2018) |
| 12/18/2018 | 81 | NOTICE OF APPEARANCE by Caroline Decell on behalf of Knight First Amendment Institute at Columbia University. (Decell, Caroline) (Entered: 12/18/2018) |

| | | |
|---|---|---|
| 12/27/2018 | 82 | STANDING ORDER M10-468: The United States Attorney's Office shall notify the Court immediately upon the restoration of Department of Justice funding. (As further set forth in this Order.) (Signed by Judge Colleen McMahon on 12/27/2018) (anc) (Entered: 01/02/2019) |
| 12/27/2018 | | Case Stayed. (anc) (Entered: 01/14/2019) |
| 02/01/2019 | 83 | NOTICE OF CHANGE OF ADDRESS by Caroline Decell on behalf of Knight First Amendment Institute at Columbia University. New Address: Knight First Amendment Insitute at Columbia University, 475 Riverside Drive, Suite 302, New York, New York, United States of America 10115, (646) 745-8500. (Decell, Caroline) (Entered: 02/01/2019) |
| 02/06/2019 | 84 | MOTION for Aditya Vijay Kamdar to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-16304455. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Knight First Amendment Institute at Columbia University. (Attachments: # 1 Affidavit, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Kamdar, Aditya) (Entered: 02/06/2019) |
| 02/06/2019 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 84 MOTION for Aditya Vijay Kamdar to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-16304455. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 02/06/2019) |
| 02/07/2019 | 85 | ORDER FOR ADMISSION TO PRACTICE PRO HAC VICE granting 84 Motion for Adi Kamdar to Appear Pro Hac Vice. (Signed by Judge Andrew L. Carter, Jr on 2/7/2019) (ks) (Entered: 02/07/2019) |
| 02/13/2019 | 86 | LETTER MOTION for Extension of Time *of Proposed Briefing Schedule, on Consent* addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated February 13, 2019. Document filed by U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 02/13/2019) |
| 02/15/2019 | 87 | ORDER granting 86 Letter Motion for Extension of Time. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 2/15/2019) (mro) (Entered: 02/15/2019) |
| 02/15/2019 | | Set/Reset Deadlines: Cross Motions due by 4/15/2019. Motions due by 3/15/2019. Responses due by 5/15/2019 Replies due by 5/29/2019. (mro) (Entered: 02/15/2019) |
| 02/26/2019 | 88 | LETTER MOTION for Leave to File Excess Pages *On Consent, and a Status Update Regarding DHS* addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated February 26, 2019. Document filed by U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 02/26/2019) |
| 02/26/2019 | 89 | MOTION for Summary Judgment *as to OLC, ICE and the State Department*. Document filed by U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 02/26/2019) |
| 02/26/2019 | 90 | MEMORANDUM OF LAW in Support re: 89 MOTION for Summary Judgment *as to OLC, ICE and the State Department*. . Document filed by U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement. (Blain, Jennifer) (Entered: 02/26/2019) |
| 02/26/2019 | 91 | DECLARATION of Toni Fuentes in Support re: 89 MOTION for Summary Judgment *as* |

| | | |
|---|---|---|
| | | *to OLC, ICE and the State Department*.. Document filed by U.S. Department of Justice. (Attachments: # 1 Exhibit, # 2 Exhibit)(Blain, Jennifer) (Entered: 02/26/2019) |
| 02/26/2019 | 92 | DECLARATION of Paul P. Colborn in Support re: 89 MOTION for Summary Judgment *as to OLC, ICE and the State Department*.. Document filed by U.S. Department of Justice. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Blain, Jennifer) (Entered: 02/26/2019) |
| 02/26/2019 | 93 | DECLARATION of Eric F. Stein in Support re: 89 MOTION for Summary Judgment *as to OLC, ICE and the State Department*.. Document filed by U.S. Department of State. (Attachments: # 1 Exhibit 1 - Vaughn Index, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Blain, Jennifer) (Entered: 02/26/2019) |
| 02/27/2019 | 94 | ORDER granting 88 Letter Motion for Leave to File Excess Pages. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 2/27/2019) (ne) (Entered: 02/27/2019) |
| 03/15/2019 | 95 | MOTION for Summary Judgment *as to USCIS and ICE*. Document filed by U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement. (Blain, Jennifer) (Entered: 03/15/2019) |
| 03/15/2019 | 96 | MEMORANDUM OF LAW in Support re: 95 MOTION for Summary Judgment *as to USCIS and ICE*. . Document filed by U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement. (Blain, Jennifer) (Entered: 03/15/2019) |
| 03/15/2019 | 97 | DECLARATION of Jill A. Eggleston in Support re: 95 MOTION for Summary Judgment *as to USCIS and ICE*.. Document filed by U.S. Citizenship and Immigration Services. (Blain, Jennifer) (Entered: 03/15/2019) |
| 03/15/2019 | 98 | DECLARATION of Toni Fuentes in Support re: 95 MOTION for Summary Judgment *as to USCIS and ICE*.. Document filed by U.S. Immigration and Customs Enforcement. (Attachments: # 1 Exhibit Vaughn Index)(Blain, Jennifer) (Entered: 03/15/2019) |
| 03/28/2019 | 99 | LETTER MOTION for Leave to File Excess Pages *on Consent* addressed to Judge Andrew L. Carter, Jr. from Carrie DeCell dated March 28, 2019. Document filed by Knight First Amendment Institute at Columbia University.(Decell, Caroline) (Entered: 03/28/2019) |
| 03/28/2019 | 100 | MOTION for Summary Judgment *as to ICE, OLC, and DOS*. Document filed by Knight First Amendment Institute at Columbia University.(Decell, Caroline) (Entered: 03/28/2019) |
| 03/28/2019 | 101 | MEMORANDUM OF LAW in Support re: 100 MOTION for Summary Judgment *as to ICE, OLC, and DOS*. . Document filed by Knight First Amendment Institute at Columbia University. (Decell, Caroline) (Entered: 03/28/2019) |
| 03/28/2019 | 102 | DECLARATION of Carrie DeCell in Support re: 100 MOTION for Summary Judgment *as to ICE, OLC, and DOS*.. Document filed by Knight First Amendment Institute at Columbia University. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Decell, Caroline) (Entered: 03/28/2019) |
| 04/01/2019 | 103 | ORDER granting 99 Letter Motion for Leave to File Excess Pages. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 4/1/2019) (mro) (Entered: 04/01/2019) |
| 04/15/2019 | 104 | MOTION for Summary Judgment *as to ICE and USCIS*. Document filed by Knight First Amendment Institute at Columbia University.(Decell, Caroline) (Entered: 04/15/2019) |
| 04/15/2019 | 105 | MEMORANDUM OF LAW in Support re: 104 MOTION for Summary Judgment *as to ICE and USCIS*. . Document filed by Knight First Amendment Institute at Columbia University. (Decell, Caroline) (Entered: 04/15/2019) |

**JA-14**

| | | |
|---|---|---|
| 04/15/2019 | 106 | DECLARATION of Carrie DeCell in Support re: 104 MOTION for Summary Judgment *as to ICE and USCIS.*. Document filed by Knight First Amendment Institute at Columbia University. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Decell, Caroline) (Entered: 04/15/2019) |
| 04/16/2019 | 107 | NOTICE of Errata and Corrections re: 105 Memorandum of Law in Support of Motion, 106 Declaration in Support of Motion,. Document filed by Knight First Amendment Institute at Columbia University. (Decell, Caroline) (Entered: 04/16/2019) |
| 04/16/2019 | 108 | MEMORANDUM OF LAW in Support re: 104 MOTION for Summary Judgment *as to ICE and USCIS. CORRECTION OF ECF No. 105* . Document filed by Knight First Amendment Institute at Columbia University. (Decell, Caroline) (Entered: 04/16/2019) |
| 04/16/2019 | 109 | DECLARATION of Carrie DeCell in Support re: 104 MOTION for Summary Judgment *as to ICE and USCIS.*. Document filed by Knight First Amendment Institute at Columbia University. (Attachments: # 1 Exhibit A, # 2 Exhibit B [CORRECTED], # 3 Exhibit C) (Decell, Caroline) (Entered: 04/16/2019) |
| 04/22/2019 | 110 | LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated April 22, 2019. Document filed by U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 04/22/2019) |
| 05/03/2019 | 111 | MEMORANDUM OF LAW in Support re: 95 MOTION for Summary Judgment *as to USCIS and ICE. and In Opposition to Plaintiff's Motion*. Document filed by U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement. (Blain, Jennifer) (Entered: 05/03/2019) |
| 05/03/2019 | 112 | DECLARATION of Eric Stein in Support re: 95 MOTION for Summary Judgment *as to USCIS and ICE.*. Document filed by U.S. Department of State. (Blain, Jennifer) (Entered: 05/03/2019) |
| 05/03/2019 | 113 | DECLARATION of Toni Fuentes in Support re: 89 MOTION for Summary Judgment *as to OLC, ICE and the State Department.*. Document filed by U.S. Immigration and Customs Enforcement. (Blain, Jennifer) (Entered: 05/03/2019) |
| 05/03/2019 | 114 | MEMORANDUM OF LAW in Support re: 89 MOTION for Summary Judgment *as to OLC, ICE and the State Department. CORRECTED*. Document filed by U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement. (Blain, Jennifer) (Entered: 05/03/2019) |
| 05/13/2019 | 115 | LETTER MOTION for Extension of Time to File Response/Reply *by Two Days, On Consent* addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated May 13, 2019. Document filed by U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 05/13/2019) |
| 05/13/2019 | 116 | ORDER granting 110 Letter Motion for Extension of Time to File Response/Reply re 110 LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated April 22, 2019., 115 LETTER MOTION for Extension of Time to File Response/Reply *by Two Days, On Consent* addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated May 13, 2019. ; granting 115 Letter Motion for Extension of Time to File Response/Reply re 110 LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated April 22, 2019., 115 LETTER MOTION for Extension of Time to File Response/Reply *by Two Days, On Consent* addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated May 13, 2019. ENDORSEMENT: SO ORDERED. Responses due by 5/17/2019 Replies due by |

| | | |
|---|---|---|
| | | 5/31/2019. (Signed by Judge Andrew L. Carter, Jr on 5/13/2019) (rj) (Entered: 05/13/2019) |
| 05/17/2019 | 117 | REPLY MEMORANDUM OF LAW in Support re: 100 MOTION for Summary Judgment *as to ICE, OLC, and DOS*. . Document filed by Knight First Amendment Institute at Columbia University. (Decell, Caroline) (Entered: 05/17/2019) |
| 05/17/2019 | 118 | REPLY MEMORANDUM OF LAW in Support re: 95 MOTION for Summary Judgment *as to USCIS and ICE. And In Opposition to Plaintiff's Cross-Motion*. Document filed by U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement. (Blain, Jennifer) (Entered: 05/17/2019) |
| 05/17/2019 | 119 | DECLARATION of Jill Eggleston in Support re: 95 MOTION for Summary Judgment *as to USCIS and ICE*.. Document filed by U.S. Citizenship and Immigration Services. (Blain, Jennifer) (Entered: 05/17/2019) |
| 05/17/2019 | 120 | DECLARATION of Elliot Viker in Support re: 95 MOTION for Summary Judgment *as to USCIS and ICE*.. Document filed by U.S. Citizenship and Immigration Services. (Blain, Jennifer) (Entered: 05/17/2019) |
| 05/17/2019 | 121 | DECLARATION of Toni Fuentes in Support re: 95 MOTION for Summary Judgment *as to USCIS and ICE*.. Document filed by U.S. Immigration and Customs Enforcement. (Blain, Jennifer) (Entered: 05/17/2019) |
| 05/31/2019 | 122 | REPLY MEMORANDUM OF LAW in Support re: 104 MOTION for Summary Judgment *as to ICE and USCIS*. . Document filed by Knight First Amendment Institute at Columbia University. (Decell, Caroline) (Entered: 05/31/2019) |
| 06/28/2019 | 123 | LETTER addressed to Judge Andrew L. Carter, Jr. from the Knight First Amendment Institute dated 06/28/2019 re: Request for Oral Argument. Document filed by Knight First Amendment Institute at Columbia University.(Graham, Megan) (Entered: 06/28/2019) |
| 07/01/2019 | 124 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated July 1, 2019 re: DHS Status Update. Document filed by U.S. Department of Homeland Security. (Blain, Jennifer) (Entered: 07/01/2019) |
| 07/02/2019 | 125 | ORDER: The Court is in receipt of Plaintiff's letter dated June 28, 2019 (ECF No. 123) and Defendants' letter in response dated July 1, 2019. ECF No. 124. The Court will hold a status conference in this matter on July 9, 2019 at 3:00 p.m. The parties (and/or counsel) should appear in person in Courtroom 1306 at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY, on the date and time specified above. SO ORDERED. Status Conference set for 7/9/2019 at 03:00 PM in Courtroom 1306, 40 Foley Square, New York, NY 10007 before Judge Andrew L. Carter Jr. (Signed by Judge Andrew L. Carter, Jr on 7/2/2019) (rj) (Entered: 07/03/2019) |
| 07/08/2019 | 126 | LETTER addressed to Judge Andrew L. Carter, Jr. from Knight First Amendment Institute dated 07/08/2019 re: Request to Appear Telephonically. Document filed by Knight First Amendment Institute at Columbia University.(Graham, Megan) (Entered: 07/08/2019) |
| 07/08/2019 | 127 | ORDER: Due to a change in the Court's schedule, the status conference previously scheduled for July 9, 2019, is ADJOURNED to July 16, 2019, at 3:00 p.m. The parties should appear in person in Courtroom 1306 at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY, on the date and time specified above. SO ORDERED., Status Conference set for 7/16/2019 at 03:00 PM in Courtroom 1306, 40 Foley Square, New York, NY 10007 before Judge Andrew L. Carter Jr. (Signed by Judge Andrew L. Carter, Jr on 7/8/2019) (rj) (Entered: 07/08/2019) |

| | | |
|---|---|---|
| 07/16/2019 | | Minute Entry for proceedings held before Judge Andrew L. Carter, Jr: Status Conference held on 7/16/2019. Aditya Kamdar, Caroline Decell, and Megan Graham for Petitioner(s). AUSA Jennifer Blain for Government. Andre Manuel, Summer Intern present. See Docket No. 128 for details. (Court Reporter: Sonya Ketter Moore) (tdh) (Entered: 07/26/2019) |
| 07/17/2019 | 128 | ORDER SETTING ORAL ARGUMENT: The Court hereby schedules oral argument for July 31, 2019 at 11:00 a.m. The parties should appear in person at the Thurgood Marshall United States Courthouse, 40 Foley Square, in Courtroom 1306 on the date and time specified above. Furthermore, as discussed in the July 16, 2019 proceeding, the parties are directed to submit joint status reports on or before July 19, 2019 and August 2, 2019 respectively. (Oral Argument set for 7/31/2019 at 11:00 AM in Courtroom 1306, 40 Centre Street, New York, NY 10007 before Judge Andrew L. Carter Jr..) (Signed by Judge Andrew L. Carter, Jr on 7/17/2019) (ne) (Entered: 07/17/2019) |
| 07/19/2019 | 129 | STATUS REPORT. *Third Joint Status Report* Document filed by Knight First Amendment Institute at Columbia University.(Graham, Megan) (Entered: 07/19/2019) |
| 07/22/2019 | 130 | LETTER addressed to Judge Andrew L. Carter, Jr. from the Knight First Amendment Institute dated 07/22/2019 re: DHS's new search. Document filed by Knight First Amendment Institute at Columbia University.(Decell, Caroline) (Entered: 07/22/2019) |
| 07/31/2019 | | Minute Entry for proceedings held before Judge Andrew L. Carter, Jr: Oral Argument held on 7/31/2019. Caroline Decell, Megan Graham, and Aditya Kamdar for Plaintiff(s). AUSA Jennifer Blain for the Defendant(s). Defendant(s) Supplemental Affidavit Due: 8/7/19. Plaintiff(s) Response Due: 8/14/19. (Court Reporter: Lisa Smith) (tdh) (Entered: 08/01/2019) |
| 08/02/2019 | 131 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated August 2, 2019 re: Status Update re DHS's Search. Document filed by U.S. Department of Homeland Security.(Blain, Jennifer) (Entered: 08/02/2019) |
| 08/07/2019 | 132 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated August 7, 2019 re: ICE Searches of the Office of the Director and ERO. Document filed by U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 08/07/2019) |
| 08/07/2019 | 133 | DECLARATION of Alexander Choe in Support re: 89 MOTION for Summary Judgment *as to OLC, ICE and the State Department*.. Document filed by U.S. Immigration and Customs Enforcement. (Blain, Jennifer) (Entered: 08/07/2019) |
| 08/07/2019 | 134 | DECLARATION of Eliman Jussara Solorzano in Support re: 89 MOTION for Summary Judgment *as to OLC, ICE and the State Department*.. Document filed by U.S. Immigration and Customs Enforcement. (Blain, Jennifer) (Entered: 08/07/2019) |
| 08/09/2019 | 135 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated August 9, 2019 re: DHS Status Update. Document filed by U.S. Department of Homeland Security.(Blain, Jennifer) (Entered: 08/09/2019) |
| 08/14/2019 | 136 | LETTER addressed to Judge Andrew L. Carter, Jr. from Knight First Amendment Institute dated 08/14/2019 re: ICE Searches of the Office of the Director and ERO. Document filed by Knight First Amendment Institute at Columbia University.(Decell, Caroline) (Entered: 08/14/2019) |
| 08/21/2019 | 137 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated August 21, 2019 re: DHS Search Status Update. Document filed by U.S. Department of Homeland Security.(Blain, Jennifer) (Entered: 08/21/2019) |
| 08/28/2019 | 138 | MOTION for Adi Kamdar to Withdraw as Attorney *FOR PLAINTIFF*. Document filed by Knight First Amendment Institute at Columbia University.(Kamdar, Aditya) (Entered: |

| | | |
|---|---|---|
| | | 08/28/2019) |
| 08/29/2019 | 139 | MEMO ENDORSED ORDER granting 138 Motion to Withdraw as Attorney. ENDORSEMENT: SO ORDERED. Attorney Aditya Kamdar terminated. (Signed by Judge Andrew L. Carter, Jr on 8/29/2019) (rj) (Entered: 08/29/2019) |
| 09/13/2019 | | *****DELETED DOCUMENT. Deleted document number 140 Opinion and Order. The document was incorrectly filed in this case. (js)** (Entered: 09/16/2019) |
| 09/13/2019 | 140 | OPINION AND ORDER re: 100 MOTION for Summary Judgment *as to ICE, OLC, and DOS* filed by Knight First Amendment Institute at Columbia University. For the foregoing reasons, Defendants' partial motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's Cross Partial Motion for Summary Judgment is GRANTED in part and DENIED in part. The Clerk of Court is respectfully directed to terminate the Motion at docket entry 100. (Signed by Judge Andrew L. Carter, Jr on 9/13/2019) (ne) (Entered: 09/16/2019) |
| 09/23/2019 | 141 | OPINION AND ORDER re: 95 MOTION for Summary Judgment *as to USCIS and ICE* filed by U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, 89 MOTION for Summary Judgment *as to OLC, ICE and the State Department* filed by U.S. Department of State, U.S. Immigration and Customs Enforcement, U.S. Department of Justice, 104 MOTION for Summary Judgment *as to ICE and USCIS* filed by Knight First Amendment Institute at Columbia University. For the foregoing reasons, Defendants' Motions for Summary Judgment are GRANTED in part and DENIED in part, and Plaintiff's Cross-Motion for Summary Judgment is GRANTED in part and DENIED in part as follows: (1) ICE's Motion is granted and Plaintiff's Cross-Motion is denied with respect to its application of Exemption 5 to the First Amendment Concerns Memo, the 235(c) Memo, the EO Implementation Memo. (2) Plaintiff's Cross-Motion is granted and ICE's Motion is denied with respect to the Extreme Vetting Memo, the Foreign Policy Provisions Memo, and the HSI Updates Memo. ICE must re-assess its applied exemptions to these records, using this Opinion as guidance, and disclose all responsive non-exempt materials that can reasonably be segregated from exempt materials. (3) USCIS' Motion is granted and Plaintiff's Cross-Motion denied with respect to the TRIG Options Paper and TRIG Exemptions. (4) Plaintiff's Cross-Motion is granted and USCIS' motion is denied with respect to the Acting Director Memo and Senior Policy Council Paper. USCIS must release the reasonably segregable information in these records. (5) The government's motions for summary judgment regarding the unchallenged documents are granted. (Signed by Judge Andrew L. Carter, Jr on 9/23/2019) (ne) (Entered: 09/23/2019) |
| 09/24/2019 | 142 | NOTICE OF APPEARANCE by Leena M. Charlton on behalf of Knight First Amendment Institute at Columbia University. (Charlton, Leena) (Entered: 09/24/2019) |
| 09/30/2019 | 143 | MOTION for Reconsideration *in Part of the Court's September 16 and 23 Orders*. Document filed by U.S. Citizenship and Immigration Services, U.S. Department of State, U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 09/30/2019) |
| 09/30/2019 | 144 | MEMORANDUM OF LAW in Support re: 143 MOTION for Reconsideration *in Part of the Court's September 16 and 23 Orders*. . Document filed by U.S. Citizenship and Immigration Services, U.S. Department of State, U.S. Immigration and Customs Enforcement. (Blain, Jennifer) (Entered: 09/30/2019) |
| 10/04/2019 | 145 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated October 4, 2019 re: ICE Status Update. Document filed by U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 10/04/2019) |
| 10/11/2019 | 146 | LETTER addressed to Judge Andrew L. Carter, Jr. from Knight First Amendment |

| | | |
|---|---|---|
| | | Institute dated 10/11/2019 re: ICE, DHS, and Item 1 Searches. Document filed by Knight First Amendment Institute at Columbia University.(Decell, Caroline) (Entered: 10/11/2019) |
| 10/15/2019 | 147 | MEMORANDUM OF LAW in Opposition re: 143 MOTION for Reconsideration *in Part of the Court's September 16 and 23 Orders*. . Document filed by Knight First Amendment Institute at Columbia University. (Decell, Caroline) (Entered: 10/15/2019) |
| 10/22/2019 | 148 | REPLY MEMORANDUM OF LAW in Support re: 143 MOTION for Reconsideration *in Part of the Court's September 16 and 23 Orders*. . Document filed by U.S. Citizenship and Immigration Services, U.S. Department of State, U.S. Immigration and Customs Enforcement. (Blain, Jennifer) (Entered: 10/22/2019) |
| 12/06/2019 | 149 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated December 6, 2019 re: Status of DHS's Search. Document filed by U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Department of State.(Blain, Jennifer) (Entered: 12/06/2019) |
| 12/20/2019 | 150 | STATUS REPORT. *(Joint)* Document filed by U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement.(Blain, Jennifer) (Entered: 12/20/2019) |
| 01/30/2020 | 151 | NOTICE OF CHANGE OF ADDRESS by Megan Kathleen Graham on behalf of Knight First Amendment Institute at Columbia University. New Address: Samuelson Law, Technology & Public Policy Clinic, U.C. Berkeley School of Law, Berkeley, CA, 94720, 510-664-4381. (Graham, Megan) (Entered: 01/30/2020) |
| 02/21/2020 | 152 | LETTER MOTION for Extension of Time *from February 21 to February 24 to file joint status report* addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated February 21, 2020. Document filed by U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement..(Blain, Jennifer) (Entered: 02/21/2020) |
| 02/24/2020 | 153 | ORDER granting 152 Letter Motion for Extension of Time. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 2/24/2020) (ks) (Entered: 02/24/2020) |
| 02/24/2020 | 154 | STATUS REPORT. Document filed by U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement..(Blain, Jennifer) (Entered: 02/24/2020) |
| 05/14/2020 | 155 | STATUS REPORT. *(Joint)* Document filed by Knight First Amendment Institute at Columbia University..(Decell, Caroline) (Entered: 05/14/2020) |
| 08/13/2020 | 156 | STATUS REPORT. *(Joint)* Document filed by Knight First Amendment Institute at Columbia University..(Decell, Caroline) (Entered: 08/13/2020) |
| 09/03/2020 | 157 | MOTION for Leena Charlton to Withdraw as Attorney . Document filed by Knight First Amendment Institute at Columbia University..(Charlton, Leena) (Entered: 09/03/2020) |
| 09/13/2020 | 158 | OPINION & ORDER re: 143 MOTION for Reconsideration *in Part of the Court's September 16 and 23 Orders*. filed by U.S. Department of State, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services. For the reasons set forth below, Defendants' motion for reconsideration is hereby DENIED. I had enough information from DOS's and USCIS's affidavits to conduct the required de novo review of the agencies' withholdings. I determined that the 7(E) exemption did not apply to |

| | | |
|---|---|---|
| | | certain sections of the FAM and the TRIG questions. No supplemental submissions or in camera review is necessary. Defendants have not met the burden to warrant reconsideration of these determinations. Defendants' motion for reconsideration is DENIED in full. (Signed by Judge Andrew L. Carter, Jr on 9/13/2020) (rj) (Entered: 09/14/2020) |
| 10/16/2020 | 159 | LETTER MOTION for Extension of Time *to Submit Status Report, with Consent* addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated October 16, 2020. Document filed by U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement..(Blain, Jennifer) (Entered: 10/16/2020) |
| 10/19/2020 | 160 | ORDER granting 159 Letter Motion for Extension of Time. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 10/19/2020) (nb) (Entered: 10/19/2020) |
| 10/20/2020 | 161 | STATUS REPORT. *(Joint)* Document filed by Knight First Amendment Institute at Columbia University..(Decell, Caroline) (Entered: 10/20/2020) |
| 10/21/2020 | 162 | ORDER: The Court is in receipt of the parties' joint status report. (ECF No. 161). The parties shall file a joint status report by December 11, 2020. So Ordered. (Signed by Judge Andrew L. Carter, Jr on 10/21/2020) (js) (Entered: 10/21/2020) |
| 11/04/2020 | 163 | **FILING ERROR - DEFICINT DOCKET ENTRY -** MOTION for Xiangnong Wang to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22441979. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Knight First Amendment Institute at Columbia University. (Attachments: # 1 Affidavit (notarized), # 2 Certificate of Good Standing, # 3 Text of Proposed Order).(Wang, Xiangnong) Modified on 11/4/2020 (vba). (Entered: 11/04/2020) |
| 11/04/2020 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 163 MOTION for Xiangnong Wang to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22441979. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from SUPREME COURT OF OREGON;. Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (vba)** (Entered: 11/04/2020) |
| 11/10/2020 | 164 | MOTION for Xiangnong Wang to Appear Pro Hac Vice *with corrected Certificate of Good Standing*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Knight First Amendment Institute at Columbia University. (Attachments: # 1 Affidavit (notarized), # 2 Corrected Certificate of Good Standing, # 3 Text of Proposed Order).(Wang, Xiangnong) Modified on 11/10/2020 (bcu). (Entered: 11/10/2020) |
| 11/10/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 164 MOTION for Xiangnong Wang to Appear Pro Hac Vice *with corrected Certificate of Good Standing*. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 11/10/2020) |
| 11/10/2020 | 165 | **FILING ERROR - NO ORDER SELECTED FOR APPEAL -** NOTICE OF APPEAL. Document filed by U.S. Citizenship and Immigration Services, U.S. Department of State, U.S. Immigration and Customs Enforcement. Form C and Form D |

| | | |
|---|---|---|
| | | are due within 14 days to the Court of Appeals, Second Circuit..(Blain, Jennifer) Modified on 11/10/2020 (tp). (Entered: 11/10/2020) |
| 11/10/2020 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Blain, Jennifer to RE-FILE Document No. 165 Notice of Appeal. The filing is deficient for the following reason(s): the order/judgment being appealed was not selected. Re-file the appeal using the event type Corrected Notice of Appeal found under the event list Appeal Documents - attach the correct signed PDF - select the correct named filer/filers - select the correct order/judgment being appealed. (tp)** (Entered: 11/10/2020) |
| 11/11/2020 | 166 | CORRECTED NOTICE OF APPEAL re: 165 Notice of Appeal, 158 Memorandum & Opinion,,, 140 Memorandum & Opinion,, 141 Memorandum & Opinion,,,,,,. Document filed by U.S. Citizenship and Immigration Services, U.S. Department of State, U.S. Immigration and Customs Enforcement..(Blain, Jennifer) (Entered: 11/11/2020) |
| 11/11/2020 | 167 | MEMO ENDORSEMENT on MOTION FOR ADMISSION PRO HAC VICE OF XIANGNONG WANG AS ADDITIONAL COUNSEL FOR PLAINTIFF: granting 164 Motion for Xiangnong Wang to Appear Pro Hac Vice. ENDORSEMENT: SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 11/11/2020) (ama) (Entered: 11/11/2020) |
| 11/12/2020 | | Appeal Fee Not Required for 166 Corrected Notice of Appeal. Appeal filed by U.S. Government. (tp) (Entered: 11/12/2020) |
| 11/12/2020 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 166 Corrected Notice of Appeal.(tp) (Entered: 11/12/2020) |
| 11/12/2020 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 166 Corrected Notice of Appeal, filed by U.S. Department of State, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services were transmitted to the U.S. Court of Appeals. (tp) (Entered: 11/12/2020) |
| 11/13/2020 | 168 | ORDER granting 157 Motion to Withdraw as Counsel for Plaintiff Attorney Leena M. Charlton terminated. So Ordered. (Signed by Judge Andrew L. Carter, Jr on 11/13/2020) (js) (Entered: 11/13/2020) |
| 12/09/2020 | 169 | LETTER addressed to Judge Andrew L. Carter, Jr. from AUSA Ellen Blain dated December 9, 2020 re: Clarification of Government Position, or in the alternative, Request for a Stay Pending Appeal. Document filed by U.S. Citizenship and Immigration Services, U.S. Department of State, U.S. Immigration and Customs Enforcement..(Blain, Jennifer) (Entered: 12/09/2020) |
| 12/10/2020 | 170 | ORDER: The Court is in receipt of the Defendants' letter. (ECF No. 169). Accordingly, the Court stays this matter pending the disposition of the appeal. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 12/10/2020) (jca) (Entered: 12/10/2020) |
| 12/11/2020 | 171 | STATUS REPORT. *(Joint)* Document filed by Knight First Amendment Institute at Columbia University..(Decell, Caroline) (Entered: 12/11/2020) |
| 02/09/2021 | 172 | STATUS REPORT. *(Joint)* Document filed by U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Department of State, U.S. Immigration and Customs Enforcement..(Blain, Jennifer) (Entered: 02/09/2021) |
| 02/10/2021 | 173 | MEMO ENDORSEMENT on re: 172 Status Report, filed by U.S. Department of Homeland Security, U.S. Department of State, U.S. Immigration and Customs Enforcement, U.S. Department of Justice, U.S. Customs and Border Protection, U.S. Citizenship and Immigration Services. ENDORSEMENT: The parties shall file a joint |

| | | |
|---|---|---|
| | | status report by April 9, 2021. So Ordered. (Signed by Judge Andrew L. Carter, Jr on 2/10/2021) (js) (Entered: 02/10/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 02/11/2021 11:22:36 | | | |
| **PACER Login:** | JEBNYC12 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:17-cv-07572-ALC |
| **Billable Pages:** | 18 | **Cost:** | 1.80 |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,

Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, U.S. DEPARTMENT OF JUSTICE, and U.S. DEPARTMENT OF STATE,

Defendants.

No. 1:17-cv-07572-ALC

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**[1]

Plaintiff Knight First Amendment Institute at Columbia University (the "Knight Institute"), by and through its attorneys, hereby complains as follows against Defendants U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs Enforcement ("ICE"), U.S. Citizenship and Immigration Services ("USCIS"), U.S. Department of Justice ("DOJ"), and U.S. Department of State ("DOS"):

**INTRODUCTION**

1. In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, the Knight Institute seeks the immediate release of agency

[1] Plaintiff files this amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Defendants' counsel provided written consent for the filing of an amended complaint on March 8, 2018, which Plaintiffs have submitted by letter to the Court. ECF No. 41. A true and correct copy of that letter, along with Defendants' written consent, is attached hereto as Exhibit A.

records concerning the exclusion or removal of individuals from the United States based on their speech, beliefs, or associations.

2. During his 2016 presidential campaign, then-candidate Donald Trump evoked a Cold War-era "ideological screening test" for admission into the United States and proclaimed that a "new screening test" involving "extreme, extreme vetting" was overdue.[2]

3. A week after his inauguration, President Trump issued Executive Order 13,769, declaring that the United States "must ensure that those admitted to this country do not bear hostile attitudes toward it and its founding principles" and "cannot, and should not, admit those who do not support the Constitution." Exec. Order No. 13,769, 82 Fed. Reg. 8,977 (Jan. 27, 2017). The President subsequently explained that only individuals who "want to love our country" should be admitted into the United States.[3]

4. Following legal challenges to the January 27, 2017 order, the President issued a revised order on March 6, 2017. That order directed the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence to develop a more robust vetting program for visa applicants and refugees seeking entry into the United States, involving, among other things, "collection of all information necessary for a rigorous evaluation of all grounds of inadmissibility." Exec. Order No. 13,780, 82 Fed. Reg. 13,209, 13,215 (Mar. 6, 2017). The order further required the Secretary of Homeland Security, in conjunction with the Secretary of State, Attorney General, and Director of National Intelligence, to make periodic reports through October 2, 2017 on their progress in developing the new vetting program. Exec.

[2] Karen DeYoung, *Trump Proposes Ideological Test for Muslim Immigrants and Visitors to the U.S.*, Wash. Post (Aug. 15, 2016), https://perma.cc/G9SC-EPHT.

[3] *Trump Defends Immigration Restrictions, Wants People 'Who Love Our Country,'* Chi. Trib. (Feb. 6, 2017), http://trib.in/2vIQeuw.

Order No. 13,780, 82 Fed. Reg. at 13,215.

5. Pursuant to President Trump's order, DHS and DOS have been developing new vetting policies.[4] For example, following approval by the U.S. Office of Management and Budget in late May 2017, DOS adopted a new questionnaire for certain visa applicants requesting any social media platforms and handles used during the last five years. 82 Fed. Reg. 20,956, 20, 957 (May 4, 2017).[5] More recently, DHS modified its system of immigration records to include the "social media handles, aliases, [and] associated identifiable information," as well as "publicly available information obtained from the internet, . . . and information obtained and disclosed pursuant to information sharing agreements." 82 Fed. Reg. 43,556, 43,557 (Sept. 18, 2017). This modification covers not only visa applicants, but also naturalized U.S. citizens and lawful permanent residents, *id.* at 43,560, and it took effect on October 18, 2017, *id.* at 43,556.

6. The public has an urgent need to know about these and other new vetting policies, and about the government's understanding of its authority to base immigration decisions on individuals' speech, beliefs, or associations. Furthermore, the public has a right to evaluate the government's past and ongoing reliance on existing statutory provisions to exclude or remove individuals from the United States on those grounds.

7. Toward that end, the Knight Institute submitted an identical FOIA Request (the

[4] *See* Jordan Fabian & Morgan Chalfant, *Trump Quietly Puts Teeth Into His 'Extreme Vetting' Policy*, The Hill (June 29, 2017), https://perma.cc/5J5C-TDW3. *But see* Michael D. Shear & Ron Nixon, *Despite Trump's Tough Talk on Travel Ban, Few Changes to Vetting*, N.Y. Times (June 11, 2017), https://www.nytimes.com/2017/06/11/us/politics/as-trump-sounds-urgent-note-on-travel-ban-a-vetting-revamp-grinds-on.html?mcubz=0.

[5] Yeganeh Torbati, *Trump Administration Approves Tougher Visa Vetting, Including Social Media Checks*, Reuters (May 31, 2017), https://perma.cc/2BUE-FLKJ.

"Request") to DHS, CBP, ICE, USCIS, DOJ,[6] and DOS on August 7, 2017. The Request sought, among other things, information about any new vetting policies, and about the government's understanding of its authority to base immigration decisions on individuals' speech, beliefs, or associations.

8. On September 29, 2017, ICE released 1,666 pages of records responsive to the Request but withheld all but thirteen of those pages, claiming exemptions under FOIA. The Knight Institute sought review of this response in an administrative appeal submitted on December 22, 2017 and amended on January 5, 2018.

9. On February 6, 2018, ICE responded to the administrative appeal. ICE affirmed the withholdings in its initial production, but remanded the Request to the ICE FOIA Office to conduct new and/or additional searches. On February 13, 2018, ICE informed the Knight Institute that it had completed its search and would begin processing the potentially responsive records. On March 7, 2018, ICE released a small subset of those records. ICE has failed to release, or even to describe, the full set of records responsive to the Request.

10. All other Defendants have failed to release any records responsive to the Request.

11. The Knight Institute now seeks the injunctive relief necessary to ensure Defendants' timely compliance with FOIA's requirements.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

13. Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B).

[6] Specifically, the Knight Institute submitted the Request to the DOJ Office of Public Affairs ("OPA"), Office of Information Policy ("OIP"), and Office of Legal Counsel ("OLC").

## PARTIES

14. The Knight Institute is a New York not-for-profit corporation based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education. Public education is essential to the Knight Institute's mission. Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities the Knight Institute was established to conduct. The Knight Institute is a "person" within the meaning 5 U.S.C. § 551(2).

15. DHS is an "agency" within the meaning of 5 U.S.C. § 552(f). CBP, ICE, and USCIS are components of DHS. DHS and these components have possession and control over some or all of the requested records.

16. DOJ is an "agency" within the meaning of 5 U.S.C. § 552(f). DOJ has possession and control over some or all of the requested records.

17. DOS is an "agency" within the meaning of 5 U.S.C. § 552(f). DOS has possession and control over some or all of the requested records.

## FACTUAL ALLEGATIONS

### *The FOIA Request*

18. On August 7, 2017, the Knight Institute submitted identical versions of the Request[7] to all Defendants.

19. In general, the Request seeks information about any new vetting policies, and about the government's understanding of its authority to base immigration decisions on individuals' speech, beliefs, or associations. The Request further seeks information about the government's

[7] A true and correct copy of the Request is attached hereto as Exhibit B.

past and ongoing reliance on existing statutory provisions to exclude or remove individuals from the United States on those grounds.

20. The relevant statutory provisions include the "endorse or espouse provisions" of the Immigration and Nationality Act ("INA"), which make inadmissible any alien who "endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity," 8 U.S.C. § 1182(a)(3)(B)(i)(VII), or who is a representative of "a political, social, or other group that endorses or espouses terrorist activity," 8 U.S.C. § 1182(a)(3)(B)(i)(IV)(bb). The endorse or espouse provisions provide a basis for removal as well. *See* 8 U.S.C. § 1225(c) (expedited removal of arriving aliens); 8 U.S.C. § 1227(a)(4)(B) (removal of admitted aliens); *see also* 8 U.S.C. § 1158(b)(2)(A)(v) (removal of refugees otherwise qualified for asylum on similar grounds).

21. The relevant statutory provisions also include the "foreign policy provision" of the INA, which makes inadmissible any "alien whose entry or proposed activities in the United States . . . would have potentially serious adverse foreign policy consequences." 8 U.S.C. § 1182(a)(3)(C)(i). Under certain circumstances, such aliens are inadmissible even where the determination of inadmissibility is based on "beliefs, statements or associations [that] would be lawful within the United States." 8 U.S.C. § 1182(a)(3)(C)(iii); s*ee also* 8 U.S.C. §§ 1225(c)(1), 1227(a)(4)(C) (providing for expedited removal and removal on the same grounds).

22. Specifically, the Request seeks (1) communications from the White House to any federal agency since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations. The Request further seeks the following records created on or after May 11, 2005: (2) all memoranda concerning the legal implications of excluding or removing individuals from the United States based on their speech, beliefs, or associations; (3) all legal or policy memoranda concerning the endorse or espouse

provisions, or the foreign policy provision as it relates to "beliefs, statements or associations"; (4) all records containing policies, procedures, or guidance regarding the application or waiver of the endorse or espouse provisions or the foreign policy provision; (5) all Foreign Affairs Manual sections (current and former) relating to the endorse or espouse provisions or the foreign policy provision, as well as records discussing, interpreting, or providing guidance regarding such sections; and (6) all records concerning the application or waiver of the endorse or espouse provisions to exclude or remove individuals from the United States, or the application or waiver of the foreign policy provision to exclude or remove individuals from the United States based on "beliefs, statements or associations."

23.     The Knight Institute requested expedited processing of the Request on the ground that there is a "compelling need" for the documents because they contain information "urgent[ly]" needed by the Knight Institute, an organization "primarily engaged in disseminating information," in order to "inform the public concerning actual or alleged Federal Government Activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

24.     The Knight Institute also requested a waiver of document search, review, and duplication fees on the grounds that (a) disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester," 5 U.S.C. § 552(a)(4)(A)(iii); (b) the Knight Institute is an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use, 5 U.S.C. § 552(a)(4)(A)(ii)(II); and (c) the Knight Institute is a "representative of the news media" within the meaning of FOIA and the records are not sought for commercial use, 5 U.S.C. § 552(a)(4)(A)(ii)(II).

***ICE Responses and Administrative Appeal***

25. By email dated August 23, 2017, ICE acknowledged receipt of the Request and assigned it reference number 2017-ICFO-43023. ICE invoked a ten-day extension of its response time, granted the Knight Institute's request for a fee waiver, and initially denied its request for expedited processing. Following an administrative appeal of that denial, ICE granted the request for expedited processing on September 26, 2017.

26. On September 29, 2017, ICE sent the Knight Institute a "final response" to its FOIA request "for 1. All directives, memoranda, guidance, emails, or other communications sent by the White House to any federal agency since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude1 [sic] or remove individuals from the United States (please see request for more details)." The letter mentioned no other Item of the Request and contained no other indication that it constituted a response to the entire Request.[8]

27. As part of its September 29, 2017 response, ICE released 1,666 pages of records responsive to the Request. ICE withheld 1,653 of those pages in full, however, claiming FOIA exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

28. On October 4, 2017, the Knight Institute filed its original Complaint against all Defendants, including ICE. Thereafter, ICE informed the Knight Institute of its position that the Knight Institute had failed to exhaust its administrative remedies with respect to ICE's September 29, 2017 response. On December 21, 2017, the Knight Institute submitted an administrative appeal requesting review of ICE's response to Item 1 of the Request, on the view that ICE had responded

---

[8] A true and correct copy of ICE's September 29, 2017 response letter is attached hereto as Exhibit C.

only as to that Item.[9]

29. On December 28, 2017, ICE filed a pre-motion letter with the Court indicating its intent to pursue a motion to dismiss. ECF No. 28. Characterizing its September 29, 2017 response as a final response to the entire Request, ICE argued that the Knight Institute had failed to exhaust its administrative remedies prior to filing suit. *Id*. at 2–3. Based on ICE's characterization of its September 29, 2017 response, the Knight Institute amended its administrative appeal by letter dated January 5, 2018, to request review of ICE's response to the entire Request.[10]

30. On January 11, 2018, the Knight Institute and counsel for ICE filed a stipulation of voluntary dismissal, without prejudice, of ICE from this lawsuit. ECF No. 29. On January 16, 2018, the Court dismissed ICE without prejudice. ECF No. 31.

31. On February 6, 2018, ICE responded to the Knight Institute's amended administrative appeal, concluding that the withholdings in its initial production were "proper in all respects," but determining that "new search(s) or modifications to the existing search(s) . . . could be made," and remanding the Request to ICE's FOIA Office for further processing and retasking.[11]

32. On February 13, 2018, ICE informed the Knight Institute that ICE had located approximately 14,000 pages of "potentially responsive documents," and that it would "commit to reviewing and processing a minimum of 500 pages per month." ICE indicated that the first production would be made on March 7, 2018, with subsequent productions on the seventh day of

---

[9] A true and correct copy of the Knight Institute's December 21, 2017 administrative appeal is attached hereto as Exhibit D.

[10] A true and correct copy of the Knight Institute's January 5, 2018 letter amending its administrative appeal is attached hereto as Exhibit E.

[11] A true and correct copy of ICE's February 6, 2018 response letter is attached hereto as Exhibit F.

each month thereafter.[12]

33. By letter dated March 7, 2018, ICE informed the Knight Institute that it had processed 560 pages of records and referred 87 of those pages to other agencies. Along with the letter, ICE released 463 pages, redacting certain pages and withholding others in their entirety on the basis of FOIA exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).[13]

34. To date, ICE has failed to respond adequately to the Request as required by FOIA.

***Other Agency Responses***

35. By letter dated August 17, 2017, DHS acknowledged receipt of the Request and assigned it reference number 2017-HQFO-01179. DHS invoked a ten-day extension of its response time but granted the Knight Institute's request for expedited processing and a fee waiver. To date, DHS has released no records responsive to the Request.

36. On August 15, 2017, CBP sent the Knight Institute an email notification confirming receipt of the Request and assigning it tracking number CBP-2017-080352. CBP did not issue a formal acknowledgement letter. To date, CBP has not responded to the Knight Institute's requests for expedited processing and a fee waiver, nor has it released any records responsive to the Request.

37. USCIS effectively acknowledged receipt of the Request in emails dated September 8, 2017 and September 18, 2017, requesting clarification regarding the scope of certain items of the Request and assigning it reference number COW2017000956. To date, USCIS has not responded to the Knight Institute's requests for expedited processing and a fee waiver, nor has it released any records responsive to the Request.

---

[12] A true and correct copy of ICE's February 13, 2018 email is attached hereto as Exhibit G.

[13] A true and correct copy of ICE's March 7, 2018 response letter is attached hereto as Exhibit H.

38.     By letter dated August 17, 2017, DOJ OIP acknowledged receipt of the Request and assigned it reference number DOJ-2017-005910. DOJ OIP noted that the Request required a search in another office and therefore involved "unusual circumstances," granted the Knight Institute's request for expedited processing, and stated that it had not reached a decision regarding the Knight Institute's request for a fee waiver. To date, DOJ OIP has released no records responsive to the Request.

39.     By letter dated August 21, 2017, DOJ OLC acknowledged receipt of the Request and assigned it reference number FY17-275. DOJ OLC noted that it had tentatively assigned the Request to the "complex" processing track, denied the Knight Institute's request for expedited processing, and stated that it had not reached a decision regarding the Knight Institute's request for a fee waiver. The Knight Institute submitted an administrative appeal challenging DOJ OLC's denial of expedited processing to DOJ OIP on August 31, 2017, but has yet to receive a decision. To date, DOJ OLC has released no records responsive to the Request.

40.     To date, DOJ OPA has not acknowledged receipt of the Request, responded to the Knight Institute's requests for expedited processing and a fee waiver, or released any records responsive to the Request.

41.     By letter dated August 15, 2017, DOS acknowledged receipt of the Request and assigned it reference number F-2017-14346. DOS granted the Knight Institute's request for expedited processing and a fee waiver. To date, DOS has released no records responsive to the Request.

**CAUSES OF ACTION**

1.     Defendants' failure to make records responsive to the Request promptly available violates FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendants' corresponding regulations.

2. Defendants' failure to process the Request as soon as practicable violates FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and Defendants' corresponding regulations.

3. DOJ's, USCIS's, and CBP's failure to grant the Knight Institute's request for expedited processing violates FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendants' corresponding regulations.

4. DOJ's, USCIS's, and CBP's failure to grant the Knight Institute's request for a waiver of search, review, and duplication fees violates FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), (iii), and Defendants' corresponding regulations.

5. ICE has wrongly withheld responsive agency records to which the Knight Institute is entitled under FOIA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Order Defendants to conduct a thorough search for responsive records;

B. Order Defendants to process and release any responsive records immediately;

C. Enjoin Defendants DOJ, USCIS, and CBP from charging Plaintiff search, review, and duplication fees relating to the Request;

D. Retain jurisdiction of this action to ensure no agency records are wrongfully withheld, and order Defendants to disclose any wrongfully withheld records;

E. Award Plaintiff its reasonable costs and attorney's fees incurred in this action; and

F. Grant such other and further relief as the Court may deem just and proper.

Dated: March 12, 2018

Sincerely,

/s/ Jameel Jaffer

Jameel Jaffer (JJ-4653)
Alex Abdo (AA-0527)
Carrie DeCell (CD-0731)
Knight First Amendment Institute at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
jameel.jaffer@knightcolumbia.org
(646) 745-8500

*Counsel for Plaintiff*

/s/ Catherine Crump

Catherine Crump (CC-4067)
Megan Graham (*pro hac vice*)
Samuelson Law, Technology & Public Policy Clinic
University of California, Berkeley, School of Law
433 Boalt Hall, North Addition
Berkeley, CA 94720-7200
ccrump@clinical.law.berkeley.edu
(510) 642-5049

*Counsel for Plaintiff*

# EXHIBIT B

KNIGHT
FIRST AMENDMENT
INSTITUTE
at Columbia University

Caroline M. DeCell
Staff Attorney

August 7, 2017

Dr. James V.M.L. Holzer
Deputy Chief FOIA Officer
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW
STOP-0655
Washington, DC 20528-0655
Email: foia@hq.dhs.gov

FOIA Officer
U.S. Customs and Border Protection
1300 Pennsylvania Avenue NW
Room 3.3D
Washington, DC 20229

FOIA Officer
U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW
STOP-5009
Washington, DC 20536-5009
Email: ice-foia@dhs.gov

FOIA Officer
U.S. Citizenship and Immigration Services
National Records Center, FOIA/PA Office
P. O. Box 648010
Lee's Summit, MO 64064-8010
Email: uscis.foia@uscis.dhs.gov

Director of Public Affairs
Office of Public Affairs
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

Laurie Day
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
Suite 11050
1425 New York Avenue NW
Washington, DC 20530-0001

Melissa Golden
Lead Paralegal and FOIA Specialist
Office of Legal Counsel
Department of Justice
Room 5511, 950 Pennsylvania Avenue NW
Washington, DC 20530-0001

FOIA Officer
U. S. Department of State
Office of Information Programs and
Services
A/GIS/IPS/RL
SA-2, Suite 8100
Washington, DC 20522-0208

**Re: Freedom of Information Act Request**
**Expedited Processing Requested**

To Whom It May Concern:

The Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute") submits this request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records concerning the exclusion or removal of individuals from the United States based on their speech, beliefs, or associations.

## I. Background

During his 2016 presidential campaign, then-candidate Donald Trump evoked a Cold War era "ideological screening test" for admission into the United States and proclaimed that a "new screening test" involving "extreme, extreme vetting" was overdue.[2] A week after his inauguration,

[1] The Knight First Amendment Institute is a New York not for profit organization based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education.

[2] Karen DeYoung, *Trump Proposes Ideological Test for Muslim Immigrants and Visitors to the U.S.*, Wash. Post (Aug. 15, 2016), https://perma.cc/G9SC EPHT.

President Trump issued Executive Order 13,769, declaring that the United States "must ensure that those admitted to this country do not bear hostile attitudes toward it and its founding principles" and "cannot, and should not, admit those who do not support the Constitution." Exec. Order No. 13,769, 82 Fed. Reg. 8,977 (Jan. 27, 2017).

The President issued a revised order on March 6, 2017. It directed the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence to develop a more robust vetting program for aliens seeking entry into the United States, involving, among other things, "collection of all information necessary for a rigorous evaluation of all grounds of inadmissibility." Exec. Order No. 13,780, 82 Fed. Reg. 13,209, 13,215 (Mar. 6, 2017).

The Knight Institute seeks to inform the public about any new vetting policies and about the government's understanding of its authority to base immigration decisions on individuals' speech, beliefs, or associations. It also seeks to report on the government's use of existing statutory provisions, including the "endorse or espouse provisions" and the "foreign policy provision,"[2] to exclude or remove individuals from the United States on these grounds.

**II. Records Requested**

The Knight Institute requests the following records created on or after May 11, 2005:

1. All directives, memoranda, guidance, emails, or other communications sent by the White House[3] to any federal agency

[1] Any alien who "endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity," 8 U.S.C. § 1182(a)(3)(B)(i)(VII), as well as any alien who is a representative of "a political, social, or other group that endorses or espouses terrorist activity," 8 U.S.C. § 1182(a)(3)(B)(i)(IV)(bb) (together, the "endorse or espouse provisions") is deemed inadmissible. The endorse or espouse provisions provide a basis for removal as well. *See* 8 U.S.C. § 1225(c) (expedited removal of arriving aliens); 8 U.S.C. § 1227(a)(4)(B) (removal of admitted aliens); *see also* 8 U.S.C. § 1158(b)(2)(A)(v) (removal of refugees otherwise qualified for asylum on similar grounds).

[2] Any "alien whose entry or proposed activities in the United States . . . would have potentially serious adverse foreign policy consequences" is inadmissible, 8 U.S.C. § 1182(a)(3)(C)(i), even, under certain circumstances, where the determination of inadmissibility is based on "beliefs, statements or associations [that] would be lawful within the United States," 8 U.S.C. § 1182(a)(3)(C)(iii). *See also* 8 U.S.C. §§ 1225(c)(1), 1227(a)(4)(C) (providing for expedited removal and removal on the same grounds).

[3] The term "White House" includes, but is not limited to, the Executive Office of the President, the Office of the President, the White House Office, the Office of Counsel to the President, the National Security Council, the Office of the Vice President, the Cabinet, as well as any government officer who directly advises the President or the Vice President as to the legality of, or authority to undertake, any executive action.

since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude or remove individuals from the United States.

2. All memoranda concerning the legal implications of excluding or removing individuals from the United States based on their speech, beliefs, or associations.

3. All legal or policy memoranda concerning the endorse or espouse provisions, or the foreign policy provision as it relates to "beliefs, statements or associations."

4. All records containing policies, procedures, or guidance regarding the application or waiver of the endorse or espouse provisions or the foreign policy provision. Such records would include policies, procedures, or guidance concerning the entry or retrieval of data relevant to the endorse or espouse provisions or the foreign policy provision into or from an electronic or computer database.

5. All Foreign Affairs Manual sections (current and former) relating to the endorse or espouse provisions or the foreign policy provision, as well as records discussing, interpreting, or providing guidance regarding such sections.

6. All records concerning the application, waiver, or contemplated application or waiver of the endorse or espouse provisions to exclude or remove individuals from the United States, or the application, waiver, or contemplated application or waiver of the foreign policy provision to exclude or remove individuals from the United States based on "beliefs, statements or associations," including:

   a. Statistical data or statistical reports regarding such application, waiver, or contemplated application or waiver;

   b. Records reflecting the application, waiver, or contemplated application or waiver of the endorse or espouse provisions or foreign affairs provision by an immigration officer, a border officer, a Department of Homeland Security official, or a Department of Justice official;

   c. Records concerning any determination made by the Attorney General pursuant to 8 U.S.C. § 1225(c) regarding

[1] As used herein, the term "exclude" includes denying a visa, revoking a visa, or otherwise deeming inadmissible for entry into the United States.

the admissibility of arriving aliens under the endorse or espouse provisions or the foreign policy provision;

d. Department of Homeland Security and Department of Justice records concerning consultation between the Secretary of State, the Secretary of Homeland Security, and/or the Attorney General (or their designees) relating to any waiver or contemplated waiver of the endorse or espouse provisions pursuant to 8 U.S.C. §§ 1158(b)(2)(v), 1182(d)(3)(A), or 1182(d)(3)(B)(i); and

e. Notifications or reports from the Secretary of Homeland Security or the Secretary of State concerning waivers of the endorse or espouse provision pursuant to 8 U.S.C. § 1182(d)(3)(B)(ii).

Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

We also ask that you provide responsive electronic records in their native file format or a generally accessible electronic format (*e.g.*, for tabular data, XLS or CSV). *See* 5 U.S.C. § 552(a)(3)(B). Alternatively, please provide the records electronically in a text-searchable, static-image format (*e.g.*, PDF), in the best image quality in the agency's possession, and in separate, Bates-stamped files.

## III. Application for Expedited Processing

The Knight Institute requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the records sought because the information they contain is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

### *A. The Knight Institute is primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The Knight Institute is "primarily engaged in disseminating information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II).

The Institute is a newly established organization at Columbia University dedicated to defending and strengthening the freedoms of speech and the

press in the digital age. Research and public education are central to the Institute's mission. Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and the public are among the core activities the Institute was established to perform. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

*B. The records sought are urgently needed to inform the public about actual or alleged government activity.*

The requested records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). The records sought concern the government's exclusion and removal of individuals from the United States based on their speech, beliefs, or associations. Such activity is ongoing, and the President has promised "strong programs" to ensure that the only individuals allowed in the United States are those who "want to love our country."[2] To this end, the President has mandated more robust vetting standards for all immigration programs, and has directed the Secretary of Homeland Security to report periodically on the development of these standards from now until October 2, 2017. Exec. Order No. 13,780, 82 Fed. Reg. at 13,215.

President Trump's executive orders on immigration have already been the subject of widespread debate,[3] and the development of new vetting policies will ensure continued public interest in the issue. Yet, lack of transparency with respect to current policies and practices stymies

[1] Mike McPhate, *Columbia University To Open a First Amendment Institute*, N.Y. Times (May 17, 2016), https://perma.cc/YC9M LUAD; James Rosen, *New Institute Aspires To Protect First Amendment in Digital Era*, McClatchy DC (May 20, 2016), https://perma.cc/ZS2K FPED.

[2] *Trump Defends Immigration Restrictions, Wants People 'Who Love Our Country,'* Chi. Trib. (Feb. 6, 2017), http://trib.in/2vIQeuw.

[3] *See, e.g.*, Mark Berman, *To Argue for Stricter Vetting of Immigrants, Trump Invokes Attacks Carried Out by U.S. Citizens*, Wash. Post (Feb. 28, 2017), https://perma.cc/PA4P 9KPP; Lauren Gambino & Tom McCarthy, *Trump Pressing Ahead with 'Extreme Vetting' in Spite of Court Battles*, The Guardian (June 6, 2017), https://perma.cc/Q6WT XCRX; Jonathan E. Meyer, *The Consequences of Extreme Vetting*, Politico (May 5, 2017), https://perma.cc/9F5P 65PQ; S.A. Miller & Dave Boyer, *Trump Signs New Extreme Vetting Order*, Wash. Times (Mar. 6, 2017), https://perma.cc/2XME QKFH; Michael Price, *Does the President's Immigration Order Violate the Rule Against Ideological Exclusion?*, Lawfare (Feb. 1, 2017), https://perma.cc/9BKA X86L; Yeganeh Torbati, *State Department Proposes Collecting Immigrants' Social Media Handles in Move Toward 'Extreme Vetting,'* Bus. Insider (May 4, 2017), https://perma.cc/H4Q9 648S; *Trump Administration's Threat To Impose Ideological Test for Immigrants Evokes Dark Chapter in U.S. History, Says PEN America*, PEN America (Jan. 27, 2017), https://perma.cc/BVS8 8AV4.

meaningful debate over the form that the new "extreme vetting" policies may take.

The public's interest in the records is even greater because current practices may violate constitutional rights. The First Amendment encompasses the right "to receive suitable access to social, political, esthetic, moral, and other ideas and experiences," *Red Lion Broad. v. FCC*, 395 U.S. 367, 390 (1969), and this "right to receive information" is implicated where the government excludes a non-citizen from the United States based on her speech or beliefs, *Kleindiest v. Mandel*, 408 U.S. 753, 763 65 (1972). At present, the public can neither determine the degree to which its First Amendment rights are being abridged under existing policies, nor assess how proposed policies could further curtail these rights moving forward.

For these reasons, the Knight Institute is entitled to expedited processing of this request.

**IV. Application for Waiver or Limitation of Fees**

The Knight Institute requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). For the reasons explained above, disclosure of the records would be in the public interest. Moreover, disclosure would not further the Knight Institute's commercial interest. The Institute will make any disclosed information available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citation omitted).

In addition, the Knight Institute requests a waiver of search and review fees on the ground that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute will perform scholarly research on the application of the First Amendment in the digital era. The Institute is in the midst of inaugurating a research program that will bring together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It will publish that commentary in many forms in scholarly publications, in long-form reports, and in short-form essays.

Finally, the Knight Institute requests a waiver of search and review fees on the ground that it is a "representative of the news media" within the

meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute qualifies as a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of FOIA); *Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282, 287 88 (D. Conn. 2012); *ACLU*, 321 F. Supp. 2d at 30 n.5. Courts have found other non-profit organizations with research and public education missions similar to that of the Knight Institute to be representatives of the news media. *See, e.g.*, *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 10 15 (D.D.C. 2003) (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53 54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

For these reasons, the Knight Institute is entitled to a fee waiver.

* * *

Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email to clarify any aspect of the request or, where reasonable, to narrow it.

I certify that the foregoing is true and correct.

Sincerely,

/s/ Caroline M. DeCell

Caroline M. DeCell
Knight First Amendment Institute at
Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027
carrie.decell@knightcolumbia.org
(212) 854-9600

**THE UNITED STATES DISTRICT COURT**
**FOR SOUTHERN DISTRICT OF NEW YORK**

KNIGHT FIRST AMENDMENT INSTITUTE

Plaintiff,

v.

UNITED STATES DEPARTMNET OF HOMELAND SECURITY, ET AL.

Defendants.

Case Number: 17-cv-07572

**DECLARATION OF ERIC F. STEIN**

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1. I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department") and have served in this capacity since January 22, 2017. Previously, I was the Acting Director since October 16, 2016, and Acting Co-Director since March 21, 2016. I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other applicable records access provisions. Prior to serving in this capacity, from April 2013, I worked directly for the Department's Deputy Assistant Secretary ("DAS") for Global Information Services ("GIS") and served as a senior advisor and deputy to the DAS on all issues related to GIS' offices and programs, which includes IPS. As the IPS Director, I have original classification authority and am authorized to classify

and declassify national security information. I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties. I am familiar with the efforts of Department personnel to process the subject request, and I am in charge of coordinating the agency's search and recovery efforts with respect to that request.

2. The core responsibilities of IPS include: (1) responding to records access requests made by the public (including under the FOIA, the Privacy Act, and the mandatory declassification review requirements of the Executive Order governing classified national security information), by members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders, and discovery requests; (2) records management; (3) privacy protection; (4) national security classification management and declassification review; (5) corporate records archives management; (6) research; (7) operation and management of the Department's library; and (8) technology applications that support these activities.

3. This declaration explains the Department's search for records responsive to the Plaintiff's FOIA request and describes the types of withholdings the Department claims on those records.[1] A *Vaughn* index (Exhibit 1) provides a detailed description of the information withheld and the justifications for those withholdings.

## I. ADMINISTRATIVE PROCESSING OF PLAINTIFF'S REQUEST

4. On August 7, 2017 (Exhibit 2), Knight First Amendment Institute ("Plaintiff") submitted a FOIA request to the Department seeking:

[1] Plaintiff is not challenging any of the Exemption 6 redactions, so documents where the Department relied on Exemption 6 as a basis for all redactions are not included in this Declaration and *Vaughn*.

*1. All directives, memoranda, guidance, emails, or other communications sent by the White House to any federal agency since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude or remove individuals from the United States.*

2. All memoranda concerning the legal implications of excluding or removing individuals from the United States based on their speech, beliefs, or associations.

3. All legal or policy memoranda concerning the endorse or espouse provisions, or the foreign policy provision as it relates to "beliefs, statements or associations."

4. All records containing policies, procedures, or guidance regarding the application or waiver of the endorse or espouse provisions or the foreign policy provision. Such records would include policies, procedures, or guidance concerning the entry or retrieval of data relevant to the endorse or espouse provisions or the foreign policy provision into or from an electronic or computer database.

5. All Foreign Affairs Manual sections (current and former) relating to the endorse or espouse provisions or the foreign policy provision, as well as records discussing, interpreting, or providing guidance regarding such sections.

6. All records concerning the application, waiver, or contemplated application or waiver of the endorse or espouse provisions to exclude or remove individuals from the United States, or the application, waiver, or contemplated application or waiver of the foreign policy provision to exclude or remove individuals from the United States based on "beliefs, statements or associations," including:

    a. Statistical data or statistical reports regarding such application, waiver, or contemplated application or waiver;

    *b. Records reflecting the application, waiver, or contemplated application or waiver of the endorse or espouse provisions or foreign affairs provision by an immigration officer, a border officer, a Department of Homeland Security official, or a Department of justice official;*

    *c. Records concerning any determination made by the Attorney General pursuant to 8 U.S.C. § 1225(c) regarding the admissibility of arriving aliens under the endorse or espouse provisions or the foreign policy provision;*

    *d. Department of Homeland Security and Department of Justice records concerning consultation between the Secretary of State, the Secretary of Homeland*

> *Security, and/or the Attorney General (or their designees) relating to any waiver or contemplated waiver of the endorse or espouse provisions pursuant to 8 U.S.C. §§ 1158(b)(2)(v), 1182(d)(3)(A), or 1182( d)(3)(B)(i); and*
>
> e. Notifications or reports from the Secretary of Homeland Security or the Secretary of State concerning waivers of the endorse or espouse provision pursuant to 8 U.S.C. § 1182(d)(3)(B)(ii)

Through discussions with Plaintiff to clarify the request, Plaintiff agreed to eliminate the italicized portions of the request. Plaintiff's request covered the time period from May 11, 2005, to present.

5. By letter dated August 15, 2017 (Exhibit 3), IPS acknowledged receipt of Plaintiff's FOIA request and assigned it Case Control Number F-2017-14346.

6. By letter dated June 28, 2018 (Exhibit 4), the Department produced responsive documents to Plaintiff. The Department processed 243 responsive documents, releasing 90 in full, withholding 126 in part, denying 16 in full, and referring 11 to other U.S. Government agencies for direct reply. By letters dated November 9, 2018 (Exhibit 5), and February 26, 2019 (Exhibit 6), the Department issued re-releases of documents where it was determined that additional information could be released, additional exemptions applied to portions previously withheld, or where law enforcement sensitive information was inadvertently released that should have been redacted.

7. By letter dated July 31, 2018 (Exhibit 7), the Department made a supplemental production of two of the documents that were sent to other federal agencies for direct reply to Plaintiff.

## II. THE SEARCH PROCESS

8. When the Department receives a FOIA request, IPS evaluates the request to determine which offices, overseas posts, or other records systems within the Department may

reasonably be expected to contain the records requested.  This determination is based on the

description of the records requested and requires a familiarity with the holdings of the

Department's records systems, applicable records disposition schedules, and the substantive and

functional mandates of numerous Department offices and Foreign Service posts and missions.

9.     After reviewing Plaintiff's request, IPS determined that the following offices or

records systems were reasonably likely to have documents responsive to Plaintiff's request: the

Bureau of Consular Affairs, the Office of the Legal Adviser, the Executive Secretariat, and the

Bureau of Administration.  A description of these components and their record systems, and how

they were searched, is provided below.  IPS concluded that no other offices or records systems

were reasonably likely to maintain documents responsive to Plaintiff's request.

10.     When conducting a search in response to a FOIA request, the Department relies

on the knowledge and expertise of the employees of each bureau/office/post to determine the

files and locations reasonably likely to house responsive records and the best means of locating

such records, as these employees are in the best position to know how their files are organized.

Likewise, those employees are also in the best position to determine which search terms would

yield potentially responsive records, because they are most knowledgeable about the

organization of the records systems in use.  In this case, wherever possible, the Department relied

on the expertise of individuals with knowledge about the communications of the Department's

principal officers.

**Bureau of Consular Affairs**

11.     The Bureau of Consular Affairs ("CA") is responsible for the welfare and

protection of U.S. citizens abroad, for the issuance of passports and other documentation to

citizens and nationals, and for the protection of U.S. border security and the facilitation of

legitimate travel to the United States. The Office of Visa Services in the Bureau of Consular Affairs ("CA/VO") manages all aspects of visa services for foreign nationals who wish to enter the United States. The CA/VO Special Assistant, who was knowledgeable of both the FOIA request and of CA/VO's records systems, determined that the only CA/VO components reasonably likely to contain responsive records were the CA Office of Legal Affairs and the Office of Screening, Analysis and Coordination.

**CA Office of Legal Affairs**

12. The Bureau of Consular Affairs' Office of Legal Affairs ("CA/VO/L") provides specific guidance on matters of visa law and regulations. CA/VO/L renders advisory opinions to U.S. Embassies and Consulates abroad on questions involving proper visa classification, specific grounds of visa ineligibility, and other legal issues concerning immigrant and nonimmigrant visa classifications, including diplomatic visas. It consists of two divisions: the Legislation and Regulations Division ("CA/VO/L/R") and the Advisory Opinions Division ("CA/VO/L/A"). The Legislation and Regulations Division reviews and prepares for publication all visa regulations and general instructions (including revisions to the Department's Foreign Affairs Manual), interprets those provisions of the Immigration and Nationality Act ("INA") relating to issuance and refusal of visas, and recommends and analyzes proposed amendments to existing immigration laws.

13. The CA/VO/L Deputy Director searched his electronic files and emails using the following keywords: "endorse," "espouse," "speech," or "3C." No date restrictions were applied to this search.

14. The CA/VO/L/R Division Chief is responsible for revisions to the Department's Foreign Affairs Manual ("FAM"), specifically sections of chapter 9 of the FAM. The FAM is

organized by volume, chapter, subchapter, and number. The Division Chief manually searched a shared electronic database that contains current and archived FAMs. The time period searched was January 2005 through February 2018, the date of the first search. She also searched her email records using the search terms "endorse" or "espouse." No date restrictions were applied to this search.

**Office of Screening, Analysis, and Coordination**

15. The Office of Screening, Analysis, and Coordination within the Office of Visa Services ("CA/VO/SAC") is CA's primary interlocutor with other U.S. Government agencies involved in the national security screening of foreign travelers. The office responds to all security investigation requests, coordinating with law enforcement and intelligence agencies, Department bureaus, and other U.S. Government partners on visa matters involving national security, technology transfer, counterintelligence, human rights violations, and U.S. sanctions. The office also provides guidance and recommendations on visa policy related to national security exclusions, and represents CA on U.S. Government steering groups related to screening, tracking, and watchlisting.

16. The CA/VO/SAC Counterterrorism Division Chief searched a classified SharePoint site containing memos related to INA(a)(3)(B) dated late 2012 to present, as well as the Digital Asset Management System ("DAMS"), which CA uses to route memos for signature. DAMS contains final, signed memos related to INA(a)(3)(B). She used the search terms "endorsing," "espousing," "espouses," "endorses." No date restrictions were applied to these searches.

**The Office of the Legal Adviser**

17. The Office of the Legal Adviser ("L") furnishes advice on all legal issues, domestic and international, arising in the course of the Department's work. This includes

assisting Department principals and policy officers in formulating and implementing the foreign

policies of the United States, and promoting the development of international law and its

institutions as a fundamental element of those policies.  The Office is organized to provide direct

legal support to the Department's various bureaus, including both regional and geographic

offices (those which focus on specific areas of the world) and functional offices (those which

deal with specific subject matters such as economics and business, international environmental

and scientific issues, or internal management).  A paralegal, who was knowledgeable of both the

FOIA request at issue and L's records systems, determined that based on the subject of the

request the only L component reasonably likely to maintain responsive records was the Office of

Consular Affairs ("L/CA").

      18.     L/CA provides legal advice and representation relating to the performance of

consular functions by the Department of State.  These functions include: adjudication and

revocation of visas and passports; the protection of U.S. nationals and their property abroad; loss

or acquisition of U.S. nationality; passport, visa and terrorism-related information sharing;

international children's issues; and enforcement and administration of immigration laws.  L/CA's

roles include negotiation and implementation of international agreements on consular relations;

working on proposed immigration-related legislation; drafting Department regulations and

guidance; and participating in interagency initiatives.

      19.     The L/CA Office Management Specialist searched the unclassified office shared

drive, which includes the archived email files of 23 Attorney-Advisers who work or previously

worked in L/CA, using the following phrases or search terms: "endorse and espouse," "endorse

or espouse,"  "espouse and endorse," "espouse or endorse," "1st Amendment," "First

Amendment," "would have potentially serious adverse foreign policy consequences," "freedom

of speech," "freedom of belief," "freedom of association," "freedom of expression," or "protected speech." The time period searched was May 11, 2005, through March 27, 2018.

20. An L/CA Attorney-Adviser searched her unclassified and classified email records using the search terms "speech," "express," "belief," "member," or "association." No date restrictions were applied to this search.

21. A second L/CA Attorney-Adviser searched his unclassified email records using the search terms "potentially serious adverse" or "serious adverse foreign." He searched his classified email records using the search terms: "potentially serious adverse," "serious adverse foreign," "First Amendment," or "1st Amendment." The time period searched was May 11, 2005, to March 6, 2018.

22. He and another Attorney-Adviser conducted a manual search of the office's paper files, which are organized by subject. They searched files with subjects likely to include responsive records, specifically: 3B, 3C, 3D, 212f, incitement, interpretation, application, serious adverse consequences, party membership, Application/Interpretation, and 212(a)(3)(B). No date restrictions were applied to this search.

23. A third L/CA Attorney-Adviser searched her unclassified and classified email records, specifically the folders labeled "Visa Inadmissibilities" and "Visa Sanctions." She manually reviewed each of the emails located in the unclassified "Visa Inadmissibilities" folder for any documents responsive to Plaintiff's FOIA request, and searched the classified "Visa Inadmissibilities" folder using the search terms: "endorse," "espouse," "First Amendment," or "1st Amendment." She also searched the unclassified and classified "Visa Sanctions" folders using the search terms "association" or "waiver." No date restrictions were applied to these searches.

**Bureau of Administration**

24.    The Bureau of Administration ("A Bureau") provides support programs to the Department of State and U.S. embassies and consulates.  These programs include: procurement; supply and transportation; diplomatic pouch and mail services; official records, publishing, and library services; language services; setting allowance rates for U.S. Government personnel assigned abroad and providing support for Department assisted overseas schools; domestic real property and facilities management; domestic emergency management; support for White House travel abroad; and logistical support for special conferences.

25.    The Office of Global Information Services in the A Bureau ("A/GIS") is responsible for the Department's information access and management programs.  A/GIS, which is comprised of Directives Management ("DIR"), Global Publishing Solutions ("GPS"), the Privacy Office ("PRV"), and the Office of Information Programs and Services ("IPS"), offers a variety of products and services to the Department, the U.S. Government, and the public.  The responsibilities of A/GIS include, among others: ensuring that statutes, executive orders, delegations of authority and other agencies' directives are reflected appropriately in Department policy and procedures; providing design, print, and copier management services to the Department domestically and abroad; administering the Department's records management, privacy, classification, declassification, and public access programs; and serving as the primary point of contact for anyone seeking access to Department records and responding to requests from the foreign affairs and national security community, the Congress, the courts, foreign governments, and the public.

26.    An IPS Paralegal, who was knowledgeable of both the request and the relevant records systems and collections of materials, conducted a search of the Department's internal website for all Foreign Affairs Manuals and Foreign Affairs Handbooks using the search terms:

"endorse or espouse," "serious adverse foreign policy consequences," "INA 212(a)(3)(B)," and "INA 212(a)(3)(C)." No date restrictions were applied to this search.

**Office of the Executive Secretariat**

27. The Executive Secretariat Staff ("S/ES-S") is responsible for the coordination of the work of the Department internally, serving as the liaison between the Department's bureaus and the offices of the Secretary, the Deputy Secretary, and the Under Secretaries. It is generally responsible for coordinating search responses for the Office of the Secretary of State ("S"), the Office of the Deputy Secretary of State ("D"), the Office of the Under Secretary for Political Affairs ("P"), and the Counselor of the Department ("C").

28. An S/ES-S Management Analyst, who was knowledgeable of both the FOIA request and the S/ES records systems, conducted searches of the Secretariat Tracking and Retrieval System ("STARS")[2] and Everest[3] using the following search terms: "beliefs statements or associations," "endorse or espouse," "endorses or espouses," "8 U.S.C. § 1182(a)(3)(C)(i)," "8 U.S.C. § 1182(a)(3)(C)(iii)," "8 U.S.C. § 1182(a)(3)(B)(i)(IV)(bb)," "8 U.S.C. § 1182(a)(3)(B)(i)(VII)," and"8 U.S.C. § 1182(d)(3)(B)(ii)." The time period searched was January 1, 2005, through March 5, 2018.

---

[2] STARS is an automated system used to track, control, and record documents containing substantive foreign policy information passing to, from, and through the offices of the Secretary of State, the Deputy Secretary of State, the Under Secretaries of State, and the Counselor of the Department. Original documents are indexed, scanned, and stored as images in STARS. For searches of STARS, the search terms are applied to a descriptive abstract attached to each document. Each abstract is created by a Technical Information Specialist when the document is added to the database; this abstract is designed to capture the subject matter of the related document. The abstracts are the only portion of STARS database whose text can be searched. Information in STARS covers the period January 1, 2002 through December 31, 2015.

[3] Everest is a Microsoft SharePoint based enterprise system used to task, track, control, and archive documents containing substantive foreign policy information passing to, from, and through the offices of the Secretary of State, the Deputy Secretaries of State, and other Department principal officers. The documents in Everest are full-text searchable. Everest includes all information found in STARS for the period 2002-2015, and information not in STARS for the period 2015 to the present.

## III. FOIA EXEMPTIONS CLAIMED

### FOIA Exemption 1 – Classified Information

29. 5 U.S.C. § 552(b)(1) states that the FOIA does not apply to matters that are:

> (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order . . . .

30. The Department withheld certain information under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(b), (c), (d), and (e). Section 1.4 provides that:

> Information shall not be considered for classification unless . . . it pertains to one or more of the following: (b) foreign government information; (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology; (d) foreign relations or foreign activities of the United States, including confidential sources; [or] (e) scientific, technological, or economic matters relating to the national security, including defense against transnational terrorism

31. The withheld information includes information classified at the SECRET and CONFIDENTIAL levels. Section 1.2 of E.O. 13526 states:

> "Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe.
>
> "Confidential" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe.

32. Section 6.1(l) of E.O. 13526 defines "damage to the national security" as follows:

> "Damage to the national security" means harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information.

33. The information withheld under Exemption 1, 5 U.S.C. § 552(b)(1), continues to meet the classification criteria of E.O. 13526 and the Department has not previously authorized or officially acknowledged public release of this information.

**Section 1.4(b) – Foreign Government Information**

34. The Department withheld foreign government information. Section 6.1(s) of E.O. 13526 defines "foreign government information" as follows:

> "Foreign government information" means:
>
> (1) information provided to the United States Government by a foreign government or governments, an international organization of governments, or any element thereof, with the expectation that the information, the source of the information, or both, are to be held in confidence;
>
> (2) information produced by the United States Government pursuant to or as a result of a joint arrangement with a foreign government or governments, or an international organization of governments, or any element thereof, requiring that the information, the arrangement, or both, are to be held in confidence . . . .

35. Section 1.1(d) of E.O. 13526 states:

> The unauthorized disclosure of foreign government information is presumed to cause damage to the national security.

36. The ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy. Release of foreign government information provided in confidence, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges. Governments could reasonably be expected to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest. In view of the important

relationship between the United States and the foreign governments identified in the responsive documents, protecting foreign government information (including in some cases protecting even the fact that information has been provided or the source of information), is important to our international relationships and conduct of foreign relations. Information withheld in this case is currently and properly classified pursuant to Section 1.4(b) of E.O. 13526 and is, therefore, exempt from disclosure under FOIA Exemption 1.

**Section 1.4(c) – Intelligence Activities and Intelligence Sources and Methods**

37. The Department also withheld certain information that relates directly to intelligence activities, sources, or methods. Disclosure of this information could enable foreign governments or persons or entities opposed to United States foreign policy objectives to identify U.S. intelligence activities, sources, or methods and to undertake countermeasures that could frustrate the ability of the U.S. Government to acquire information necessary to the formulation and implementation of U.S. foreign policy. Because disclosure "reasonably could be expected to result in damage to the national security", information withheld in these documents is currently and properly classified pursuant to Section 1.4(c) of E.O. 13526 and is, therefore, exempt from disclosure under FOIA Exemption 1.

**Section 1.4(d) – Foreign Relations or Foreign Activities of the United States**

38. The Department withheld information that, if released, reasonably could be expected to cause damage to U.S. foreign relations. Diplomatic exchanges are premised upon, and depend upon, an expectation of confidentiality. Mutual trust between governments in this realm is vital to U.S. foreign relations. The inability of the United States to maintain confidentiality in its diplomatic exchanges would inevitably chill relations with other

governments, and could reasonably be expected to damage U.S. national security by diminishing our access to vital sources of information.

39. Some of the withheld information is classified and concerns both confidential sources and sensitive aspects of U.S. foreign relations, including, in particular, issues relating to identifying potential threats to U.S. national security. Release of this classified information has the potential to inject friction into, or cause damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States. Release of information revealing confidential sources reasonably could be expected to risk the safety of those confidential sources. Failure to preserve the expected confidentiality could jeopardize future access not only to the sources of the withheld information, but also to others who might provide sensitive information to U.S. officials that is important to U.S. national security interests. For these reasons, the Department withheld certain information in this case that is currently and properly classified pursuant to Section 1.4(d) of E.O. 13526 and is, therefore, exempt from disclosure under FOIA Exemption 1.

**Section 1.4(e) -- Scientific, Technological, or Economic Matters Relating to the National Security;**

40. The Department withheld certain information that relates to scientific, technological, or economic matters, the release of which "reasonably could be expected to result in damage to the national security." The withheld information relates to economic matters, and specifically, details about acts of public corruption and the methods by which certain types of sanctions are determined. Information withheld in these documents is currently and properly classified pursuant to Section 1.4(e) of E.O. 13526 and is, therefore, exempt from disclosure under FOIA Exemption 1.

**FOIA Exemption 3 – Exempt by Statute**

41. 5 U.S.C. § 552(b)(3) states that the FOIA does not apply to matters that are:

> specifically exempted from disclosure by statute (other than Section 552(b) of this title), provided that such statute—(A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

**Section 222(f) – Immigration and Nationality Act**

42. The Department withheld certain information under FOIA Exemption 3 as required by Section 222(f) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1202(f), which states in pertinent part:

> The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States, except that - (1) in the discretion of the Secretary of State certified copies of such records may be made available to a court which certifies that the information contained in such records is needed by the court in the interest of the ends of justice in a case pending before the court. (Emphasis added).

Section 222(f) of the INA qualifies as a withholding statute under FOIA Exemption 3, 5 U.S.C. § 552(b)(3).[4] "Under section 222(f) the Secretary of State has no authority to disclose material to the public. In that sense the confidentiality mandate is absolute; all matters covered by the statute 'shall be considered confidential.'" *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 742 (D.C. Cir. 1983). Section 222(f) applies not only to the information supplied by the visa

[4] *See Medina-Hincapie v. Dep't of State,* 700 F.2d 737, 741-42 (D.C. Cir. 1983); *see also Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 177 (D.D.C. 2011).

applicant, but also applies to any "information revealing the thought-processes of those who rule on the application." *Id.* at 744.

**Section 3024(i) – National Security Act of 1947**

43. The Department withheld certain information under Exemption 3 as required by the National Security Act of 1947, 50 U.S.C. § 3024(i)(1), because the information withheld, if released, could reasonably be expected to lead to the unauthorized disclosure of intelligence sources and methods. Documents contain currently and properly classified information pertaining to intelligence activities, sources and methods; and foreign relations and foreign activities of the United States. Information pertaining to intelligence sources and methods is protected by statute, 50 U.S.C.A. § 3024(i)(1).

**FOIA Exemption 5**

44. The Department withheld certain information under 5 U.S.C. § 552(b)(5), which states that the FOIA does not apply to:

> inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency....

45. FOIA Exemption 5, 5 U.S.C. § 552(b)(5), protects from disclosure information that is normally privileged in the civil discovery context, including information that is protected by the deliberative process privilege, attorney-client privilege, attorney work product privilege, and Presidential communications privilege. All of the information withheld under Exemption 5 exists in inter- or intra-agency documents that have not been disseminated outside of the executive branch.

**Deliberative Process Privilege**

46. The deliberative process privilege protects the confidentiality of candid views and advice of U.S. Government officials in their internal deliberations related to policy formulation and administrative direction. For example, certain information withheld in this case reflects the internal exchange of ideas and recommendations when Department officials are formulating a strategy for official action. Disclosure of material containing the details of internal discussions held in the course of formulating a policy could reasonably be expected to chill the open and frank exchange of comments and opinions that occurs between Department officials at these critical times. In addition, disclosure of these details would severely hamper the ability of responsible Department officials to formulate and carry out executive branch programs. The Department has withheld information in a number of documents in this case, as detailed in the attachment, on the basis of this exemption pursuant to the deliberative process privilege. Disclosure of this information, which is pre-decisional and deliberative, and contains selected factual material intertwined with opinion, would inhibit candid internal discussions and the expression of recommendations and judgments regarding current problems and preferred courses of action by Department personnel. The withheld information is, accordingly, exempt from release under Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.

**Attorney-Client Privilege**

47. The Department has also withheld certain information pursuant to the attorney-client privilege that reflects consultations undertaken in confidence between government attorneys and other executive branch officials for the purpose of obtaining legal advice. In each instance where such information was withheld, the withheld information reflects the two-way confidential communications that occur between attorneys and their clients when seeking and providing legal advice, and includes facts divulged to one or more of the attorneys for the

purposes of obtaining legal advice, as well as opinions given by the attorneys based upon and reflecting those facts. The withheld information reflects confidential communications with government attorneys who are providing legal advice to executive branch officials, and that confidentiality has been maintained. For these reasons, portions of the withheld information are exempt from release under Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the attorney-client privilege.

**Attorney Work-Product Privilege**

48. The Department withheld material prepared in anticipation of litigation, pursuant to the attorney work-product privilege. The work product doctrine protects both deliberative and factual materials prepared in anticipation of litigation. In the one document the Department withheld under this privilege, Department attorneys assessed ongoing litigation and the effect of policy options on that litigation and potential future litigation. Release of the document would chill Department counsel who defend the Department's legal position in litigation in the future. For these reasons, portions of the withheld information are exempt from release under Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the attorney work-product privilege.

**Presidential Communication Privilege**

49. The Department withheld information in six documents pursuant to the Presidential communications privilege to protect communications between the President's advisors and their staff and State officials, and communications between close advisors preparing information or advice for potential presentation to the President. The communications were authored by, or solicited and received by, senior presidential advisors and staff with broad and significant responsibility for gathering information in the course of preparing advice for potential presentation to the President in matters that implicate the President's decisions concerning

foreign policy or national security concerns. In this case, disclosure of the information withheld under the presidential communications privilege would reveal the process by which the President receives national security advice from close advisors. For these reasons, the withheld information is exempt from release under Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the presidential communications privilege.

**FOIA Exemption 7 – Law Enforcement Information**

50. The Department withheld certain information under FOIA Exemption 7, which protects from disclosure all "records or information compiled for law enforcement purposes" that could reasonably be expected to cause one of the six harms outlined under 5 U.S.C. § 552(b)(7). Before an agency can invoke exemptions pertaining to the specific harms enumerated in FOIA Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.

51. The law to be enforced for FOIA Exemption 7 purposes includes administrative, regulatory, civil, and criminal law. Records pertaining to routine agency activities can qualify for FOIA Exemption 7 protection when those activities involve a law enforcement purpose. Although the records must be created for some law enforcement purpose, there is no requirement that the matter culminate in actual administrative, regulatory, civil, or criminal enforcement proceedings. In this case, the harm that could reasonably be expected to result from disclosure concerns revealing sensitive law enforcement techniques and procedures related to enforcement of the Immigration and Nationality Act ("INA").

52. The Department is on the front line of enforcing the U.S. Government's immigration laws and regulations. The Department interprets and applies immigration laws and regulations, and acts as a point of contact for the public. The Department also liaises with the Department of Homeland Security and other U.S. Government agencies with roles in

administration and enforcement of U.S. immigration laws. The Department routinely uses non-public law enforcement databases to support its core duties of enforcing U.S. immigration laws.

**FOIA Exemption 7(E) – Law Enforcement Techniques and Procedures**

53. 5 U.S.C. § 552(b)(7)(E), states in relevant part that the FOIA does not apply to records or information that "would disclose techniques and procedures for law enforcement investigations or prosecution, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . ."

54. The Department has asserted FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E), to protect from disclosure details of investigative techniques, procedures, and guidelines used during the course of the certain investigations and law enforcement activities. In this case, the Department withheld certain techniques used to investigate visa applicants, details regarding the use of certain law enforcement databases used to assist the Department in issuing or denying visas, codes used in connection with investigating potential security threats, and procedures for finding and evaluating sources of information. While the protection of Exemption 7(E) is generally limited to techniques and procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness. The release of information about the techniques at issue in this case could enable terrorists and other bad actors to avoid detection or develop countermeasures to circumvent the ability of the Department to effectively use these important law enforcement techniques, thereby allowing circumvention of the law.

55. The Department withheld portions of documents under FOIA Exemption 7(E), because disclosure could reveal investigative techniques related to the visa process. For each of these withholdings, the Director determined that release of the requested information would risk

circumvention of the law. Accordingly, the Department properly withheld this information pursuant to Exemption 7(E), 5 U.S.C. § 552(b)(7)(E).

## V. CONCLUSION

56. In summary, the Department conducted thorough searches of all Department locations that were reasonably likely to contain records responsive to Plaintiff's FOIA request. The Department has carefully reviewed all of the documents addressed herein for reasonable segregation of non-exempt information and has implemented segregation when possible. Otherwise, the Department determined that no segregation of meaningful information in the documents could be made without disclosing information warranting protection under the law.

***

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 26th day of February 2019, Washington, D.C.

[signature]

Eric F. Stein

# Exhibit 1
## Department of State *Vaughn* Index
## *Knight First Amendment Institute at Columbia University v. DHS* (Case No. 17-cv-07572)

| Doc. No. | Doc. Type | Page(s) | Date/ Date Range | Author(s)/Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| **(1-8) Foreign Affairs Manual 9 FAM 302.6** | | | | | | |
| C06533909<br>C06533920<br>C06533941<br>C06533947<br>C06533951<br>C06533970<br>C06534007<br>C06571131 | Manual | 45<br>48<br>47<br>46<br>45<br>46<br>46<br>48 | 11/18/2015<br>10/20/2016<br>12/21/2015<br>3/1/2016<br>11/24/2015<br>2/23/2016<br>5/17/2016<br>11/21/2017 | Department of State (“DOS”) officials | Release in Part (“RIP”) | (b)(7)(E) |

**DESCRIPTION:** These records are multiple versions of Foreign Affairs Manual (“FAM”), Volume 9, Section 302.6, portions of which were withheld under FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E).

Volume 9 of the FAM establishes procedures for providing visa services to foreign nationals who wish to enter the United States. These processes involve interpretation and application of immigration laws and regulations, including the Immigration and Naturalization Act (“INA”), and also involve cooperation with other law enforcement agencies such as the Department of Homeland Security (“DHS”). Therefore Volume 9 meets the threshold requirement of FOIA Exemption 7 – that the record serve a law enforcement purpose.

In addition, the redacted portions specifically meet the requirements of Exemption 7(E) because they disclose law enforcement investigation techniques, procedures, and guidelines:

9 FAM 302.6-2(B)(1)b. reveals interagency cooperation procedures during the process of checking for terrorism-related ineligibilities.

9 FAM 302.6-2(B)(3)b.(3) was redacted in subsections c.(2), d., e.(5)-(6), i.(1)(c)(i)-(ii), and (5)(b) because those sections identify the situations that trigger the process of checking for terrorism-related ineligibilities and reveal the techniques used during that process to determine whether an individual is ineligible to receive visas because of their involvement with terrorist activities.

9 FAM 302.6-2(B)(4)b. defines terrorist activity, adding specific details and clarifications about how they fit into the security investigation process.

9 FAM 302.6-2(B)(4)c.(4) provides details about the conditions under which to apply a presumption of inadmissibility due to involvement in terrorist activity, and how to account for that presumption when assessing a visa applicant.

9 FAM 302.6-2(B)(4)d.(3)-(5) provides information about the Palestine Liberation Organization that is used as a guideline for determining whether an applicant is associated with the organization and therefore inadmissible.

9 FAM 302.6-2(B)(4)e. (2) and (5) gives guidelines for when spouses and children trigger the requirement for further security investigation and how to conduct that process.

9 FAM 302.6-2(B)(5)c. (2)-(4) proves guidelines on how to identify individuals who qualify for the African National Congress ("ANC") exemption.

9 FAM 302.6-2(B)(5)e. (1)(a)-(e), (3), and (4) provides information about the listed groups that is used as a guideline for determining whether an applicant is associated with the organizations and therefore exempt.

9 FAM 302.6-2(B)(5)f. (1), (2) (portions), and (3) through (6) provides information about how to assess whether to exempt an applicant associated with the Kosovo Liberation Army.

9 FAM 302.6-2(C) provides guidelines for when further investigation is required and what procedures to follow.

9 FAM 302.6-2(E) provides procedures for flagging certain ineligibilities or potential ineligibilities in a database.

9 FAM 302.6-3(B)(2)b.(4) lists credible sources of evidence that may be used in recommending a finding, including sources that are not public knowledge.

9 FAM 302.6-3(B) describes guidelines for situations in which an individual may cease to be inadmissible.

9 FAM 302.6-3(C) provides guidelines for when a certain type of investigation is required.

9 FAM 302.6-3(E) provides procedures for flagging certain ineligibilities or potential ineligibilities in a database.

9 FAM 302.6-4(B) provides guidelines for how to vet applications when the applicant is from a state sponsor of terrorism.

9 FAM 302.6-4(C) provides guidelines for when a certain type of investigation is required.

9 FAM 302.6-4(E) provides procedures for flagging certain ineligibilities or potential ineligibilities in a database.

Disclosure of any of the above information could reasonably be expected to risk circumvention of the law because terrorists and other bad actors could use it to conceal derogatory information, provide fraudulent information, or otherwise circumvent the security checks put in place to ensure that terrorists and other bad actors cannot gain visas into the United States.

The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(9-11) Foreign Affairs Manual 9 FAM 40.32**

| | | | | | | |
|---|---|---|---|---|---|---|
| C06533937<br>C06567707<br>C06567710 | Manual | 20<br>22<br>6 | 1/2/2015<br>5/3/2005<br>12/19/1994 | DOS officials | RIP | (b)(7)(E) |

**DESCRIPTION:** These records are three versions of 9 FAM 40.32, earlier iterations of sections that are now incorporated into 9 FAM 302.6. As established above, Volume 9 of the FAM serves a law enforcement purpose, and therefore, these records meet the threshold requirement of Exemption 7.

Furthermore, the redacted portions specifically meet the requirements of Exemption 7(E), 5 U.S.C. § 552(b)(7)(E) because they disclose law enforcement investigation techniques, procedures, and guidelines about the following topics:

- guidelines for conducting the security investigation process, including whether certain procedures are mandatory, and what information to include in a request for those procedures (C06533937: N1.1.b, N2.8.a.(3)(a)-(b); C06567707: N3, N5.1.e; C06567710: N3, N11)
- interagency cooperation procedures during the process of checking for ineligibilities (C06533937: N1.1.c; C06567707: N2.1.c)
- guidelines for identifying material support (C06533937: N2.3)
- procedures for investigating whether an applicant is a member of a terrorist organization (C06533937: N2.4.e-f; C06567707: N5.4.c; C06567710: N6.2)
- procedures for finding and evaluating sources of information ( C06533937: N2.8.e-f)
- guidelines for identifying a specific type of terrorist action (C06533937: N3.2.d; C06567707: N4; C06567710: N4, N5, N7)

- provides information about the Palestine Liberation Organization that is used as a guideline for determining whether an applicant is associated with the organization and therefore inadmissible. (C06533937: N3.3.c; C06567707: N7.1, N7.2-2, N7.2-3; C06567710: N8.1, N8.2)
- guidelines for when spouses and children trigger the requirement for certain law enforcement procedures and how to conduct those procedures. (C06533937: N3.4.c, N3.4.e; C06567707:N8.b, N8.d)

Disclosure of any of the above information could reasonably be expected to risk circumvention of the law because terrorists and other bad actors could use it to conceal derogatory information, provide fraudulent information, or otherwise circumvent the security checks put in place to ensure that terrorists and other bad actors cannot gain visas into the United States.

The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(12) Foreign Affairs Manual 9 FAM 302.14**

| C06571135 | Manual | 40 | 12/13/2017 | - | RIP | (b)(7)(E) |
|---|---|---|---|---|---|---|

**DESCRIPTION:** This record is a version of 9 FAM 302.14. As established above, Volume 9 of the FAM serves a law enforcement purpose, and therefore, this record meets the threshold requirement of Exemption 7.

Furthermore, the redacted portions specifically meet the requirements of Exemption 7(E), 5 U.S.C. § 552(b)(7)(E) because they disclose law enforcement investigation techniques, procedures, and guidelines about the following topics:

- guidelines for conducting the security investigation process, including whether certain procedures are mandatory, and what information to include in a request for those procedures (302.14-2(C); 302.14-3(B)(3)e; 302.14-3(B)(3)g; 302.14-3(C); 302.14-6(B)(2)c; 302.14-6(C); 302.14-7(C); 302.14-8(C))
- provides procedures for flagging certain ineligibilities or potential ineligibilities in a database or databases (302.14-2(E); 302.14-3(B)(2); 302.14-3(E); 302.14-4(E); 302.14-5(E); 302.14-6(B)(2)b; 302.14-6(B)(3)c; 302.14-6(E); 302.14-7(E); 302.14-8(E);302.14-9(E))
- procedures for investigating whether an applicant needs to be flagged in a database (302.14-3(B)(3)c; 302.14-6(B)(3)c)
- procedures for investigating a visa that is flagged and may need to be revoked (302.14-3(B)(3)f)
- guidelines for when spouses and children trigger the requirement for further investigation and how to conduct that process (302.14-3(B)(3)i)
- guidelines for when lawful permanent residents trigger the requirement for certain law enforcement procedures (302.14-3(B)(3)h)
- procedures for using certain sources of information (302.14-3(B)(3)j)
- guidelines for evaluating/investigating coursework and intent to return to Iran (302.14-7(B)(3)(1)

Disclosure of any of the above information could reasonably be expected to risk circumvention of the law because terrorists and other bad actors could use it to conceal derogatory information, provide fraudulent information, or otherwise circumvent the security checks put in place to ensure that terrorists and other bad actors cannot gain visas into the United States.

The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(13) Cable – Exemption Authority for Individuals Associated with the African National Congress**

| | | | | | | |
|---|---|---|---|---|---|---|
| C06568888 | Cable | 8 | 6/8/2011 | DOS/U.S. Embassy Port Au Prince and All Diplomatic and Consular Posts | RIP | (b)(7)(E) |

**DESCRIPTION:** The Department sent this cable to all diplomatic and consular posts to notify them of a change in the FAM related to the African National Congress (9 FAM 40.32 N5.3).

The Department withheld some of the information under Exemption 7(E), 5 U.S.C. § 552(b)(7)(E). As established above, Volume 9 of the FAM serves a law enforcement purpose, and therefore, this record meets the threshold requirement of Exemption 7.

Furthermore, the redacted portions specifically meet the requirements of Exemption 7(E) because they disclose law enforcement investigation techniques, procedures, and guidelines about the following topics:

- guidelines for conducting the security investigation process, including whether certain security procedures are mandatory in certain situations, and what information to include in a request for additional security procedures
- procedures for investigating whether an applicant is a member of the African National Congress
- procedures for finding and evaluating sources of information
- guidelines for identifying specific types of action that may trigger ineligibilities

Disclosure of any of the above information could reasonably be expected to risk circumvention of the law because terrorists and other bad actors could use it to conceal derogatory information, provide fraudulent information, or otherwise circumvent the security checks put in place to ensure that terrorists and other bad actors cannot gain visas into the United States.

The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

| **(14-38) Implementation Guidelines for Visa Restrictions** | | | | | | |
|---|---|---|---|---|---|---|
| C06567720 | Report | 2 | Undated | DOS officials | RIP | (b)(7)(E) |
| C06567737 | Report | 2 | Undated | | | (b)(1) (1.4(d)); (b)(7)(E) |
| C06567766 | Report | 2 | Undated | | | (b)(7)(E) |
| C06567796 | Report | 1 | Undated | | | (b)(1) (1.4(d)); (b)(7)(E) |
| C06567839 | Report | 2 | Undated | | | (b)(7)(E) |
| C06567882 | Report | 3 | Undated | | | (b)(1) (1.4(b) & (d)); (b)(7)(E) |
| C06567904 | Report | 3 | Undated | | | (b)(7)(E) |
| C06567915 | Report | 2 | Undated | | | (b)(7)(E) |
| C06568365 | Report | 2 | Undated | | | (b)(1) (1.4(d)); (b)(7)(E) |
| C06568375 | Report | 2 | Undated | | | (b)(1) (1.4(d)); (b)(7)(E) |
| C06568456 | Report | 1 | Undated | | | (b)(1) (1.4(d)); (b)(7)(E) |
| C06568890 | Report | 2 | Undated | | | (b)(1) (1.4(b) & (d)); (b)(7)(E) |
| C06568896 | Report | 2 | Undated | | | (b)(1) (1.4(b) & (d)); (b)(7)(E) |
| C06568902 | Report | 2 | Undated | | | (b)(7)(E) |
| C06568905 | Report | 2 | May-14 | | | (b)(7)(E) |
| C06568918 | Report | 2 | Undated | | | (b)(7)(E) |
| C06568937 | Report | 3 | Undated | | | (b)(7)(E) |
| C06568940 | Duplicate of C0659475 | 3 | Undated | | | (b)(7)(E) |
| C06568948 | Report | 2 | Undated | | | (b)(1) (1.4(d)); (b)(7)(E) |
| C06569423 | Report | 2 | Undated | | | (b)(1) (1.4(d)); (b)(7)(E) |
| C06569454 | Report | 2 | Undated | | | (b)(1) (1.4(d)); (b)(7)(E) |
| C06569459 | Report | 2 | Undated | | | (b)(1) (1.4(d)); (b)(7)(E) |
| C06569478 | Report | 3 | Undated | | | (b)(7)(E) |
| C06570384 | Report | 2 | Undated | | | (b)(7)(E) |
| C06570543 | Report | 2 | Undated | | | (b)(7)(E) |

**DESCRIPTION:** These attachments provide implementation guidelines for the visa restrictions proposed in various Action Memoranda.

The Department withheld parts of these implementation guidelines under Exemption 7(E). As established above, visa processing is a law enforcement activity, and therefore, these records detailing how to process visa restrictions serve a law enforcement purpose and meet the threshold requirement of Exemption 7. Furthermore, the specific portions withheld contain techniques used to identify individuals whose names need to be added to the lookout system, procedures for adding those individuals to the system, procedures for performing security investigations into those individuals, and guidelines for how to apply the restrictions to a particular type of visa. Disclosure of any of the above

information could reasonably be expected to risk circumvention of the law because terrorists and other bad actors could use it to conceal derogatory information, provide fraudulent information, or otherwise circumvent the security checks put in place to ensure that terrorists and other bad actors cannot gain visas into the United States.

In addition, the Department withheld portions of some of the documents (C06567882, C06568890, C06568896, C06567737, C06567796, C06568365, C06568375, C06568456, C06569423, C06569454, C06569459) under Exemption 1, pursuant to E.O. 13526, section 1.4(d), which pertains to foreign relations or foreign activities of the United States. The fact that these specific individuals or countries were considered for sanctions, and the reason for those sanctions, if revealed, could damage or impair foreign relations and national security. Disclosure of the fact that these restrictions were being considered could negatively affect the foreign policy environment, not only in the countries most involved, but also in others that consider themselves similarly placed. Therefore, the information remains properly classified.

Finally, the Department withheld portions of certain documents (C06567882, C06568890, C06568896) under Exemption 1, pursuant to E.O. 13526, section 1.4(b), which pertains to foreign government information. The withheld information contains foreign government information about the reason for the proposed visa restrictions that was provided to the United States in the expectation of confidence. The disclosure of such information would weaken the relationship with the government that provided the information, as well as other countries considering sharing similar information with the United States in the future. Therefore, the information remains properly classified.

The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(39) Draft of Presidential Proclamation 8697**

| | | | | | | |
|---|---|---|---|---|---|---|
| C06569343 | Draft | 3 | Undated | White House | Deny in full (“DIF”) | (b)(5) (Deliberative Process Privilege (“DPP”), Presidential Communications Privilege (“PCP”)) |

**DESCRIPTION:** This is a draft of Presidential Proclamation 8697 that was attached to an Action Memorandum about a waiver of possible visa ineligibility (C06569320).

The Department withheld the draft text in full, under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. The wording of this Proclamation differs from the final version, and in the place of dates in the last paragraph there are “XX” notations. Release of this information would reveal the authors’ preliminary thoughts and ideas regarding what information to include in the final exemption notice, and could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when Department officials are drafting visa and immigration policies. Disclosure of this information would also impede the ability of responsible government officials to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action.

The Department also withheld the draft text in full, under FOIA Exemption 5, pursuant to the Presidential communications privilege. The withheld communication was authored by the White House and circulated to senior agency officials for their advice. Disclosure of the information withheld under the Presidential communications privilege would reveal the process by which the President receives national security advice from close advisors, and would reveal information about the advice itself. In order to protect communications between the President's close advisors and executive branch officials, the Department withheld the document in full.

This is an internal executive branch document that was not widely distributed, and was not disseminated outside of the executive branch.

The Department conducted a thorough, line-by-line review of this withholding and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

**(40-41) Memorandum for Philip A. McNamara: Request for State Views**

| | | | | | | |
|---|---|---|---|---|---|---|
| C06569220<br>C06569223 | Cover Sheet<br>Memorandum | 1<br>1 | 10/17/2011 | DOS<br>DOS /DHS | RIP<br>RIP | (b)(5) (DPP)<br>(b)(5) (DPP) |

**DESCRIPTION:** These documents relate to DHS requests for State Department views on granting an exemption from INA terrorism-related inadmissibility grounds for certain groups.

In two documents (C06569220 and C06569223), the Department withheld the name of an organization under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. This organization was not granted the proposed exemption. This information is predecisional and deliberative, as it pre-dates DHS's ultimate decision. Release of the withheld information would impede the ability of responsible government officials to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action. These are internal government documents that were not disseminated outside of the government.

The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(42) Inadmissibility Based on Endorsing or Espousing Terrorist Activity: First Amendment Concerns**

| | | | | | | |
|---|---|---|---|---|---|---|
| C06534021 | Legal Memorandum | 11 | August 22, 2017 | Office of the Legal Adviser | DIF | (b)(5) (Attorney-Client Privilege ("ACP"), Attorney Work Product ("AWP"), DPP, PCP) |

**DESCRIPTION:** This memorandum was solicited by senior Presidential advisors to use in the context of a high-level, inter-agency meeting involving lawyers, discussing visa policy. It contains a legal analysis of the First Amendment and some proposed courses of actions. This is an internal government document that has not been disseminated outside of the government.

The Department withheld the text under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. Release of this information would reveal the authors' preliminary thoughts and ideas regarding what policy to pursue with respect to the "endorse or espouse" provision, and could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when interagency officials are drafting visa and immigration policies. Disclosure of this information would also impede the ability of responsible government officials to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action.

The Department also withheld the text in full, under FOIA Exemption 5, pursuant to the Presidential communications privilege. The withheld communication was solicited and received by senior Presidential advisors and staff with broad and significant responsibility for gathering information in the course of preparing advice for potential presentation to the President in matters that implicate the President's decisions concerning foreign policy and national security concerns. Disclosure of the information withheld under the presidential communications privilege would reveal the process by which the President receives national security advice from close advisors, and would reveal information about the advice itself. In order to protect communications between the President's close advisors and executive branch officials, the Department withheld the document in full.

The Department also withheld the text in full, under FOIA Exemption 5, pursuant to attorney-client privilege and attorney work product privilege. The withheld communication is a confidential memorandum containing legal advice written by attorneys for their client, the U.S. executive branch. Furthermore, the document was prepared by those attorneys in anticipation of litigation as it specifically discusses both ongoing litigation and the likelihood of future litigation.

The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

**(43-45) Travel Sanctions Against Persons Who Participate in Serious Human Rights Violations and Other Abuses**

| | | | | | | |
|---|---|---|---|---|---|---|
| C06569352 | Action Memorandum | 2 | February 22, 2011 | DOS officials/Secretary of State | RIP | (b)(5) (ACP, DPP, PCP) |
| C06569349 | Legal Memorandum | 5 | Undated | | DIF | (b)(5) (ACP, DPP, PCP) |
| C06569347 | | 3 | Undated | | DIF | (b)(5) (DPP, PCP); (b)(7)(E) |

| | | | | | | |
|---|---|---|---|---|---|---|
| | Draft Procedures for Implementation | | | | | |

**DESCRIPTION:** Senior Presidential advisors solicited this memorandum to advise the President on whether to exercise authority to bar entry into the United States to aliens who participate in serious human rights violations. This memorandum and its attachments are internal government documents that were not disseminated widely, and have not been disseminated outside of the executive branch.

The Department withheld parts of the Action Memorandum (C06569352) and all of the Legal Memorandum (C06569349) and Draft Procedures (C06569347) under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege and the Presidential communications privilege. Release of this information would reveal the authors' preliminary thoughts and ideas regarding what policy to pursue with respect to barring entry to the United States, and could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when interagency officials are drafting visa and immigration policies. Disclosure of this information would also impede the ability of responsible government officials to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action. Furthermore, the withheld communication was solicited and received by senior Presidential advisors and staff with broad and significant responsibility for gathering information in the course of preparing advice for potential presentation to the President in matters that implicate the President's decisions concerning foreign policy and national security concerns. Disclosure of the information withheld under the Presidential communications privilege would reveal the process by which the President receives national security advice from close advisors, and would reveal information about the advice itself. In order to protect communications between the President's close advisors and executive branch officials, the Department withheld one document in part and two documents in full.

The Department also withheld the legal memorandum (C06569349) in full and the action memorandum (C06569352) in part, under FOIA Exemption 5, pursuant to the attorney-client privilege. The withheld communication is a confidential memorandum containing legal advice written by attorneys for their clients, senior officials in the U.S. executive branch. The advice reflects the facts provided to those attorneys and disclosure would chill the attorney-client relationship, making clients less likely to provide full and detailed information to their counsel.

The Department also withheld parts of the draft implementation guidelines (C06569347) and the action memorandum (C06569352) under Exemption 7(E), 5 U.S.C. § 552(b)(7)(E). As established above, visa processing is a law enforcement activity, and therefore, these records detailing how to process visa restrictions serve a law enforcement purpose and meet the threshold requirement of Exemption 7. Furthermore, the specific portions withheld contain techniques used to identify individuals whose names need to be added to the lookout system, procedures for adding those individuals to the system, and procedures for performing security investigations into those individuals. Disclosure of any of the above information could reasonably be expected to risk circumvention of the law because terrorists or other bad actors could use it to conceal derogatory information, provide fraudulent information, or otherwise circumvent the security checks put in place to ensure that terrorists and other bad actors cannot gain visas into the United States.

| The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
|---|---|---|---|---|---|---|
| **(46-59) Action Memoranda Making Visa Policy With Regard to Syria** | | | | | | |
| C06569424 | Action Memorandum | 3 | 7/8/2013 | NEA, CA/Secretary | RIP | (b)(1) (1.4(b) & (d)); (b)(3) (INA 222f) |
| C06595510 | Duplicate of C06569424 | 3 | | | | |
| C06567735 | Action Memorandum | 3 | 8/26/2005 (signed 9/7/2005) | NEA, CA/Secretary | | (b)(7)(E) |
| C06568882 | Duplicate of C06567735 | 3 | | | | |
| C06569457 | Duplicate of C06567735 | 3 | | | | |
| C06569422 | Near duplicate of C06567735 (missing clearance page) | 2 | | | | |
| C06567734 | Action Memorandum | 3 | 6/26/13 | NEA, CA/Secretary | | (b)(1) (1.4(d)); (b)(6)[1] |
| C06569455 | Duplicate of 7734 | 3 | 6/26/13 | | | |
| C06569419 | Near Duplicate of 7734 (no clearance page) | 2 | 6/26/13 | | | |
| C06568355<br>C06569453 | Cover Sheet<br>Action Memorandum | 1<br>4 | 12/12/2013<br>12/9/2013 | NEA, CA, H / Secretary | | (b)(1) (1.4(d));<br>(b)(3) (INA 222f); (b)(6) |

[1] Plaintiff is not challenging any of the Exemption 6 redactions. The Department has listed Exemption 6 for the sake of completeness, but does not include a further description of the information withheld on Exemption 6 grounds.

| | | | | | | |
|---|---|---|---|---|---|---|
| C06567730 | Duplicate of 9453 | 4 | 12/9/2013 | | | |
| C06595528 | Action Memorandum | 4 | 8/14/2014 | NEA, H/Secretary | | (b)(1) (1.4(d));<br>(b)(3) (INA 222f); (b)(6) |
| C06595505 | Action Memorandum | 4 | 8/15/2016 | NEA/Secretary | | (b)(1) (1.4(d));<br>(b)(3) (INA 222f); (b)(6) |

**DESCRIPTION:** These approved action memoranda concern visa decisions related to Syrian individuals, mostly named.

In most of the action memoranda (C06569424/C06595510/C06569453/C06567730/C06595528/C06595505), and the cover sheet (C06568355) the Department withheld information about individual visa decisions and individuals' visa statuses under Exemption 3, 5 U.S.C. § 552(b)(3), pursuant to the Immigration and Nationality Act ("INA") Section 222(f), codified at 8 U.S.C. § 1202(f) (hereinafter "INA 222f"). The Department had to withhold this information pursuant to INA 222f, because it is information pertaining directly to the issuance or refusal of a visa or permit to enter the United States.

In one action memorandum (C06569424/C06595510), the Department withheld the majority of one paragraph under Exemption 1, pursuant to E.O. 13526, section 1.4(b), which pertains to foreign government information. This paragraph contains foreign government information that was provided to the United States in the expectation of confidence. Release of the foreign government information in this document, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges. The disclosure of such information would weaken the relationship with the government that provided the information, as well as other countries considering sharing similar information with the United States in the future.

Additionally, in many of the action memoranda (C06569424, C06595510, C06567734, C06569455, C06569419, C06569453, C06567730, C06595528, C06595505) and the one cover sheet (C06568355), the Department withheld information under Exemption 1, pursuant to E.O. 13526, section 1.4(d), which pertains to foreign relations or foreign activities of the United States. The frank discussion of foreign policy considerations for these sanctions, if revealed, could damage or impair foreign relations and national security. The reasoning could negatively affect the foreign policy environment, not only in Syria, but also in other countries that consider themselves similarly placed. Therefore, the information remains properly classified.

In one of the action memoranda (C06567735, and the identical copies C06568882, C06569422, C06569457), the Department withheld one sentence under Exemption 7(E). As established above, visa processing is a law enforcement activity, and therefore, these records detailing how to process visa restrictions serve a law enforcement purpose and meet the threshold requirement of Exemption 7. Furthermore, the specific

portions withheld contain procedures for performing security investigations. Disclosure of this information could reasonably be expected to risk circumvention of the law because terrorists and other bad actors could use it to conceal derogatory information, provide fraudulent information, or otherwise circumvent the security checks put in place to ensure that terrorists and other bad actors cannot gain visas into the United States.

The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(60-61) Syria Information Memorandum**

| | | | | | | |
|---|---|---|---|---|---|---|
| C06569415 | Cover Sheet | 1 | 7/22/2013 | DOS | RIP | (b)(1) (1.4(d)); (b)(5) (DPP) |
| C06595525 | Information Memorandum | 4 | 7/18/2013 | NEA/Secretary | | (b)(1) (1.4(b) & (d)); (b)(5) (DPP); (b)(6) |

**DESCRIPTION:** This Information Memorandum for the Secretary relates to a policy that was considered with respect to Syria that relates to visa restrictions.

In the information memorandum (C06595525), the Department withheld three paragraphs under Exemption 1, pursuant to E.O. 13526, section 1.4(b), which pertains to foreign government information. These paragraphs contain foreign government information that was provided to the United States in the expectation of confidence. The disclosure of such information would weaken the relationship with the government that provided the information, as well as other countries considering sharing similar information with the United States in the future.

Additionally, in both documents the Department withheld information under Exemption 1, pursuant to E.O. 13526, section 1.4(d), which pertains to foreign relations or foreign activities of the United States. The frank discussion of the foreign policy options under consideration, if revealed, could damage or impair foreign relations and national security. The reasoning could negatively affect the foreign policy environment, not only in Syria, but also in other countries that consider themselves similarly placed. Therefore, the information remains properly classified.

The Department also withheld parts of both documents under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. The proposed course of action was not adopted. Both this draft and the portion of the legal background that discusses the details of the proposal are pre-decisional and deliberative with respect to a final decision about this foreign policy choice having to do with Syria. Release of this information would reveal the authors' preliminary thoughts and ideas regarding what to do and why, and could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when Department officials are formulating foreign policy. Disclosure of this information would also impede the ability of responsible government officials to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action. These are both internal Department documents that were not disseminated outside of the government.

The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(62-67) Action Memorandum on Proposed Legislative Policy for Group(s)**

| | | | | | | |
|---|---|---|---|---|---|---|
| C06569231 | Cover Sheet | 1 | 1/12/2012 | DOS | RIP | (b)(1) (1.4(d)), (b)(5) (DPP) |
| C06569243 | Letter | 1 | 1/12/2012 | Secretary Clinton/Another Agency Head | DIF | (b)(1) (1.4(d)), (b)(5) (DPP) |
| C06569247 | Action Memorandum | 3 | 1/11/2012 | Legal Adviser Harold Koh | RIP | (b)(1) (1.4(b) & (d)); (b)(5) (ACP, DPP); (b)(6) |
| C06569279 | Background Memorandum | 1 | | | RIP | (b)(1) (1.4(d)); (b)(5) (DPP) |
| C06569281 | Legislative Options Memorandum | 6 | | | RIP | (b)(1) (1.4(d)), (b)(5) (ACP, DPP) |
| C06569277 | Letter | 2 | | Another Agency Head/ Secretary Clinton | DIF | (b)(1) (1.4(c) & (d)); (b)(3) (Nat'l Sec'y Act of 1947); (b)(5) (DPP) |

**DESCRIPTION:** This package addresses an interagency proposal to exempt (from the INA's terrorism-related inadmissibility grounds) some groups that were and/or are considered Tier III undesignated terrorist organizations.

In the action memorandum (C06569247), the Department withheld information under Exemption 1, pursuant to E.O. 13526, section 1.4(b), which pertains to foreign government information. These paragraphs contain foreign government information that was provided to the United States in the expectation of confidence. The disclosure of such information would weaken the relationship with the government that provided the information, as well as other countries considering sharing similar information with the United States in the future.

In all of these documents, the Department withheld information under Exemption 1, pursuant to E.O. 13526, section 1.4(d), which pertains to foreign relations or foreign activities of the United States. The frank discussion of the foreign policy considerations of these proposed exemptions to Tier III status, if revealed, could damage or impair foreign relations and national security. The reasoning could negatively affect the foreign policy environment, not only in the named countries, but also in other countries that consider themselves similarly placed. Therefore, the information remains properly classified.

The Department also withheld portions of all of these documents under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. Release of this information would reveal the authors' preliminary thoughts and ideas regarding what policy to pursue with respect to this proposed exemption, and could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when interagency officials are drafting legislative and national security policies. Disclosure of this information would also impede the ability of responsible government officials to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action. These are internal government documents that were not disseminated outside of the executive branch.

The Department also withheld portions of two of the memoranda (C06569247/C06569281) under FOIA Exemption 5, pursuant to attorney-client privilege. The withheld communications are confidential memoranda containing legal advice written by attorneys for their client, the Secretary of State. The advice reflects the facts provided to those attorneys and disclosure would chill the attorney-client relationship, making clients less likely to provide full and detailed information to their counsel.

The Department withheld one document in full (C06569277) under Exemption 1, pursuant to E.O 13526, section 1.4(c), which pertains to intelligence activities (including covert action), intelligence sources or methods, or cryptology. This exemption was asserted to protect classified intelligence methods and sources, and controlled access and dissemination control markings. The Department also withheld this document in full under Exemption 3, pursuant to the National Security Act of 1947. This exemption was asserted to protect intelligence sources and methods, including locations of sensitive facilities, intelligence targets and interests, and dissemination controls. This document is withheld in full because there is no meaningful non-exempt information that can be reasonably be segregated from any exempt information.

The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(68-77) Action Memoranda Imposing or Lifting Visa Restrictions on Various Countries**

| | | | | | | |
|---|---|---|---|---|---|---|
| C06595500 | Action Memorandum | 4 | 7/15/2015 | NEA, CA/Secretary | RIP | (b)(1) (1.4(d));<br>(b)(3) (INA 222f); (b)(6) |
| C06567810 | Action Memorandum | 4 | 12/21/2017 | EUR/Secretary | RIP | (b)(1) (1.4(b) & (d)); (b)(7)(E) |
| C06595498 | Action Memorandum | 4 | 3/6/2014 | EUR, CA/Secretary | RIP | (b)(1) (1.4(d)); (b)(6) |
| C06567867 | Action Memorandum | 3 | 6/10/2011 | WHA/Secretary | RIP | (b)(1) (1.4(b) & (d)); (b)(6) |
| C06567859 | Additional Background | 2 | Undated | | RIP | (b)(1) (1.4(b) & (d)) |
| C06567793 | Action Memorandum | 5 | 1/23/2012 | AF/Secretary | RIP | (b)(1) (1.4(b) & (d)); (b)(6) |
| C06595539 | Action Memorandum | 4 | 3/24/2014 | WHA, CA, DRL/Secretary | RIP | (b)(1) (1.4(d)); (b)(6) |
| C06595501 | Duplicate of 5539 | 4 | 3/24/2014 | WHA, CA, DRL/Secretary | RIP | (b)(1) (1.4(d)); (b)(6) |
| C06595494 | Action Memorandum | 3 | 1/7/2011 | EAP, CA/Secretary | RIP | (b)(1) (1.4(d)); (b)(6) |

*Knight First Amendment Institute at Columbia University v. DHS et al.*
1:17-cv-07572
Exhibit 1

| C06568895 | Action Memorandum | 3 | 2/17/2011 | EAP, CA/Secretary | RIP | (b)(1) (1.4(d)); (b)(6); (b)(7)(E) |
|---|---|---|---|---|---|---|

**DESCRIPTION:** These action memoranda approved imposing or lifting visa restrictions on individuals from various countries.

In several of the action memoranda (C06567810, C06567867, C06567793) and in the additional background attachment (C06567859) the Department withheld information under Exemption 1, pursuant to E.O. 13526, section 1.4(b), which pertains to foreign government information. These paragraphs contain foreign government information that was provided to the United States in the expectation of confidence. The disclosure of such information would weaken the relationship with the government that provided the information, as well as other countries considering sharing similar information with the United States in the future.

In all of these documents, the Department withheld information under Exemption 1, pursuant to E.O. 13526, section 1.4(d), which pertains to foreign relations or foreign activities of the United States. The frank discussion of the foreign policy considerations animating these proposed changes to visa policy, if revealed, could damage or impair foreign relations and national security. Release of the reasoning could negatively affect the foreign policy environment, not only in the named countries, but also in other countries that consider themselves similarly placed. Therefore, the information remains properly classified.

The Department withheld portions of one action memorandum (C06595500) under FOIA Exemption 3, 5 U.S.C. § 552(b)(3), pursuant to INA 222f. The withheld portions relate to the visa status of the individuals being considered, and therefore pertain directly to the issuance or refusal of a visa or permit to enter the United States, the decision to deny visas to the cited individuals.

In one of the action memoranda (C06567810), the Department also withheld information under Exemption 7(E). As established above, visa processing is a law enforcement process, and therefore, this record serves a law enforcement purpose and meets the threshold requirement of Exemption 7. Furthermore, the specific portions withheld contain procedures for processing specific types of visas. This document also contains information about criminal law information sharing and investigation techniques. Disclosure of this information could reasonably be expected to risk circumvention of the law because terrorists or other bad actors could use it to conceal derogatory information, provide fraudulent information, or otherwise circumvent the security checks put in place to ensure that terrorists cannot gain visas into the United States.

The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(78-80) Inadmissibility Determination for Venezuelan Nationals**

| C06595564 | Memorandum | 5 | 5/25/2016 | | RIP | |
|---|---|---|---|---|---|---|

| | | | | | | |
|---|---|---|---|---|---|---|
| C06595542 | Memorandum | 5 | 5/25/2016 | WHA, H, DRL, CA/Under Secretary Shannon | | (b)(1) (1.4(c), (d), & (e)); (b)(3) (INA 222f); (b)(6) |
| C06595547 | Memorandum | 4 | 1/12/2016 | | | (b)(1) (1.4(c), (d), & (e)); (b)(3) (INA 222f); (b)(6) (b)(1) (1.4(c), (d), & (e)); (b)(3) (INA 222f); (b)(6) |

**DESCRIPTION:** These action memoranda concern inadmissibility determinations for three Venezuelan nationals.

The Department withheld information in these documents about which individuals' visa statuses were affected, under Exemption 3, 5 U.S.C. § 552(b)(3), pursuant to INA 222f. The Department had to withhold this information pursuant to INA 222f, because it is information pertaining directly to the issuance or refusal of a visa or permit to enter the United States.

In all of the documents, the Department withheld information under Exemption 1, pursuant to E.O. 13526, section 1.4(d), which pertains to foreign relations or foreign activities of the United States. The frank discussion of foreign policy considerations for these sanctions, if revealed, could damage or impair foreign relations and national security. The reasoning could negatively affect the foreign policy environment, not only in the named countries, but also in other countries that consider themselves similarly placed. Therefore, the information remains properly classified.

In all of the documents, the Department withheld information under Exemption 1, pursuant to E.O. 13526, sections 1.4(c) and (e), which pertain to intelligence activities (including covert action), intelligence sources or methods, or cryptology; and to scientific, technological, or economic matters relating to the national security, including defense against transnational terrorism. These documents both involve a discussion of the acts of corruption allegedly committed by the individuals in question. Releasing this information would reveal the sources and methods by which the United States collects intelligence. Furthermore, the withheld description of corruption shows the methods by which certain types of sanctions are decided, which is an economic matter related to national security. Therefore, the information remains properly classified.

The Department conducted a thorough, line-by-line review of this withholding and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(81-83) Action Memo (Kosovo Liberation Army)**

| | | | | | | |
|---|---|---|---|---|---|---|
| C06569136 | Action Memorandum | 3 | 4/20/2011 | EUR/Deputy Secretary Steinberg | RIP | (b)(5) (DPP); (b)(6) |
| C06569118 | Attachment: Report | 3 | 4/18/2011 | EUR | RIP | (b)(1) (1.4(b) & (d)) |
| C06569125 | Attachment: Report | 6 | 1/21/2010 | - | DIF | (b)(1) (1.4(b), (c), & (d)) |

**DESCRIPTION:** This Action Memorandum ("AM") approved the Department's support for DHS granting an exemption to the Kosovo Liberation Army from the Immigration and Nationality Act's terrorism-related provisions. The AM is accompanied by three attachments. The first attachment (C06569056) was a Memorandum for Christopher Button, Acting Executive Secretary for the Department of Homeland Security ("DHS") that was released in full. The second attachment (C06569118) is entitled "Policy Justification for Exemption of Certain Aliens Affiliated with the Kosovo Liberation Army (KLA)." The third attachment (C06569125) provides background information about the KLA.

In the AM (C06569136), the Department withheld part of a paragraph under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. This section describes interagency deliberations about whether DHS should take the recommended action, and the factors DHS is considering. This information is predecisional, as it pre-dates DHS's ultimate decision. Furthermore, release of this information would stifle the deliberative process in the future, making it less likely that drafters of future AMs will feel comfortable including a full description of other agencies' deliberations in their written explanations to senior policy makers. Therefore, release of the withheld information would impede the ability of responsible government officials to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action. These are internal government documents that were not disseminated outside of the executive branch.

The Department withheld information in the first attachment (C06569118) under FOIA Exemption 1, 5 U.S.C. § 552(b)(1). The document is properly marked classified at the Secret level under Sections 1.4(b) and (d) of E.O 13526, which pertain to foreign government information and foreign relations or foreign activities of the United States. The document contains foreign government information that was provided to the United States in the expectation of confidence. It also provides a frank assessment of the policies of this organization which, if revealed, would damage or impair foreign relations and national security. The fact that certain actions were being considered could negatively affect the foreign policy environment, not only in the countries most involved, but also in others that consider themselves similarly placed. Therefore, the information remains properly classified.

The Department withheld the second attachment (C06569125) in full under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), . The document is currently and properly classified at the Secret level under Sections 1.4(b), (c), and (d) of E.O 13526, which pertain to foreign government information; intelligence activities (including covert action), intelligence sources or methods, or cryptology; and foreign relations or foreign activities of the United States. The document contains foreign government information that was provided to the United States in the expectation of confidence. It also contains classified intelligence methods and sources used to collect information about the KLA. Finally, it contains a frank assessment of the policies in regard to this organization and other countries which, if revealed, would damage or impair foreign relations and national security. Therefore, the information remains properly classified.

The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(84) Fiji Action Memorandum**

| | | | | | | |
|---|---|---|---|---|---|---|
| C06595502 | Action Memorandum | 3 | 1/7/2011<br>10/10/2014 | EAP, CA/Under Secretary Sherman | RIP | (b)(1) (1.4(d)); (b)(6) |

**DESCRIPTION:** This action memorandum approved imposing and then lifting visa restrictions on individuals from Fiji.

In this document, the Department withheld information under Exemption 1, pursuant to E.O. 13526, section 1.4(d), which pertains to foreign relations or foreign activities of the United States. The frank discussion of foreign policy considerations for these sanctions, if revealed, could damage or impair foreign relations and national security. The reasoning could negatively affect the foreign policy environment, not only in the named countries, but also in other countries that consider themselves similarly placed. Therefore, the information remains properly classified.

The Department conducted a thorough, line-by-line review of these withholdings and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(85-88) Waiver of Possible Visa Ineligibility of [Redacted]**

| | | | | | | |
|---|---|---|---|---|---|---|
| C06569320 | Action Memorandum | 3 | 5/7/2012 | SCA, EUR/Deputy Secretary Nides | RIP | (b)(1) (1.4(b) & (d));<br>(b)(3) (INA 222f); (b)(6) |
| C06569414 | Profile | 2 | | | DIF | (b)(1) (1.4(b), (c), & (d));<br>(b)(3) (INA 222f); (b)(6) |
| C06569321 | Authority and Justification for Waiver of Visa Restrictions | 2 | | | RIP | (b)(1) (1.4(b) & (d)) |
| C06569318 | Cover Sheet | 1 | 5/8/2012 | | RIP | (b)(1) (1.4(d)) |

**DESCRIPTION:** This action memorandum package approved waiver of a possible visa ineligibility for an individual.

The Department withheld information in these documents about which individuals' visa statuses were affected, under Exemption 3, 5 U.S.C. § 552(b)(3), pursuant to INA 222f. The Department had to withhold this information pursuant to INA 222f, because it is information pertaining directly to the issuance or refusal of a visa or permit to enter the United States.

In all of the documents, the Department withheld information under Exemption 1, pursuant to E.O. 13526, section 1.4(d), which pertains to foreign relations or foreign activities of the United States. The frank discussion of foreign policy considerations for this waiver, if revealed, could damage or impair foreign relations and national security. The reasoning could negatively affect the foreign policy environment, not only in the named countries, but also in other countries that consider themselves similarly placed. Therefore, the information remains properly classified.

In three of the documents (C06569320, C06569414, and C06569321) the Department withheld information under Exemption 1, pursuant to E.O. 13526, section 1.4(b), which pertains to foreign government information. These paragraphs contain foreign government information that was provided to the United States in the expectation of confidence. The disclosure of such information would weaken the relationship with the government that provided the information, as well as other countries considering sharing similar information with the United States in the future.

In the profile (C06569414), the Department withheld information under Exemption 1, pursuant to E.O. 13526, sections 1.4(c), which pertains to intelligence activities (including covert action), intelligence sources or methods, or cryptology. This document involves a discussion of background information on the individual that would reveal the sources and methods by which the United States collects intelligence. Therefore, the information remains properly classified.

The Department conducted a thorough, line-by-line review of this withholding and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(89-95) Draft Notices from the Office of the Secretary: Exercise of Authority under INA Section 212(d)(3)(B)(i)**

| | | | | | | |
|---|---|---|---|---|---|---|
| C06569081 | Memorandum | 2 | Undated | USCIS/DOS | DIF | (b)(5) (DPP); (b)(6) |
| C06569151 | | 6 | | | | |
| C06569164 | | 4 | | | | |
| C06569179 | | 5 | | | | |
| C06569199 | | 5 | | | | |
| C06569216 | | 5 | | | | |
| C06569226 | | 5 | | | | |

**DESCRIPTION:** The Department of Homeland Security withheld the draft notices in full, under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.

The Department withheld these draft, unsigned notices in full, under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. These draft notices are pre-decisional and deliberative with respect to a final decision on whether to issue a notice and what to include in the final notice. Release of this information would reveal the authors' preliminary thoughts and ideas regarding what notices to issue and what information to include in the final exemption notice, and could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when Department officials are drafting visa and immigration policies. Disclosure of this information would also impede the ability of responsible government officials to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action. These are all internal Department documents that were not disseminated outside of the executive branch.

The Department conducted a thorough, line-by-line review of this withholding and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

**(96) Informal Legal Opinion on Section 212(d)(3)(B)(i)**

| C06568577 | Legal Memorandum | | | DOJ Office of Legal Counsel/ DOS | DIF | (b)(5) (ACP, DPP, PCP) |
|---|---|---|---|---|---|---|

**DESCRIPTION:** The Department of Justice (DOJ) withheld this document, under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process, the attorney-client, and Presidential communications privileges.

The Department withheld the text under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. Release of this information would reveal the authors' preliminary thoughts and ideas regarding what policy to pursue with respect to a policy on waiving inadmissibilities in certain situations, and could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when interagency officials are drafting visa and immigration policies. Disclosure of this information would also impede the ability of responsible government officials to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action.

The Department also withheld the text in full, under FOIA Exemption 5, pursuant to the Presidential communications privilege. The withheld communication was solicited and received by senior presidential advisors and staff with broad and significant responsibility for gathering information in the course of preparing advice for potential presentation to the President in matters that implicate the President's decisions concerning foreign policy and national security concerns. Disclosure of the information withheld under the presidential communications privilege would reveal the process by which the President receives national security advice from close advisors, and would reveal information about the advice itself. In order to protect communications between the President's close advisors and executive branch officials, the Department withheld the document in full. This document was not widely disseminated within the executive branch and was not disseminated outside of the executive branch.

The Department also withheld the text in full, under FOIA Exemption 5, pursuant to attorney-client privilege. The withheld communication is a confidential memorandum containing legal advice written by attorneys for their client, the U.S. executive branch. Releasing the legal advice that reflects facts provided by a client undermines the attorney-client relationship.

The Department conducted a thorough, line-by-line review of this withholding and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

**(97) Memorandum for Acting Assistant Secretary**

| C06570336 | Memorandum | 06/04/2015 | 1 | DOJ National Security Division/DOS | DIF | (b)(5) (ACP, DPP) |
|---|---|---|---|---|---|---|

| | | | | | | |
|---|---|---|---|---|---|---|

**DESCRIPTION:** DOJ withheld the draft text in full, under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.

The Department withheld the text under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. Release of this information would reveal the authors' preliminary thoughts and ideas regarding what policy to pursue with respect to a proposed exemption from the INA terrorism-related inadmissibility grounds, and could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when interagency officials are drafting visa and immigration policies. Disclosure of this information would also impede the ability of responsible government officials to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action. This document was not widely disseminated within the executive branch and was not disseminated outside of the executive branch.

The Department also withheld the text in full, under FOIA Exemption 5, pursuant to attorney-client privilege. The withheld communication is a confidential memorandum containing legal advice written by attorneys for their client, the U.S. executive branch. Releasing the legal advice that reflects facts provided by a client undermines the attorney-client relationship.

The Department conducted a thorough, line-by-line review of this withholding and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

**(98) Draft Press Guidance**

| C06567845 | Draft | 10/2009 | 1 | DOS | RIP | (b)(5) (DPP) |
|---|---|---|---|---|---|---|

**DESCRIPTION:** This document contains draft press guidance relating to visa revocations for Guineans.

The Department withheld the text under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. Release of this information would reveal the authors' preliminary thoughts and ideas regarding what the final press guidance should be regarding a decision in the process of being made, and could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when interagency officials are making decisions that require drafting press guidance. Disclosure of this information would also impede the ability of responsible government officials to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action. This document was not widely disseminated within the executive branch and was not disseminated outside of the executive branch.

The Department conducted a thorough, line-by-line review of this withholding and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

**(99) List of Names Proposed for Visa Restrictions**

| C06567771 | Name List | | 2 | DOS | RIP | (b)(1)(1.4(d));<br>(b)(3) (INA 222f); (b)(6) |
|---|---|---|---|---|---|---|

**DESCRIPTION:** This document contains a list of names proposed for visa restrictions.

The Department withheld information under Exemption 1, pursuant to E.O. 13526, section 1.4(d), which pertains to foreign relations or foreign activities of the United States. The frank discussion of the details of the visa restrictions, if revealed, could damage or impair foreign relations and national security. The discussion could negatively affect the foreign policy environment, not only in the named countries, but also in other countries that consider themselves similarly placed. Therefore, the information remains properly classified.

Also, the Department withheld information about individuals holding valid or expired U.S. visas under Exemption 3, 5 U.S.C. § 552(b)(3), pursuant to the Immigration and Nationality Act ("INA") Section 222(f), codified at 8 U.S.C. § 1202(f) (hereinafter "INA 222f"). The Department had to withhold this information pursuant to INA 222f, because indications that individuals currently hold a visa, information about the type of visa, the visa number, and the visa's expiration date is information pertaining directly to the issuance or refusal of a visa or permit to enter the United States.

The Department conducted a thorough, line-by-line review of this withholding and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

F-2017-14346

KNIGHT
FIRST AMENDMENT
INSTITUTE
at Columbia University

CAROLINE M. DECELL
Staff Attorney

August 7, 2017

Dr. James V.M.L. Holzer
Deputy Chief FOIA Officer
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW
STOP-0655
Washington, DC 20528-0655
Email: foia@hq.dhs.gov

FOIA Officer
U.S. Customs and Border Protection
1300 Pennsylvania Avenue NW
Room 3.3D
Washington, DC 20229

FOIA Officer
U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW
STOP-5009
Washington, DC 20536-5009
Email: ice-foia@dhs.gov

FOIA Officer
U.S. Citizenship and Immigration Services
National Records Center, FOIA/PA Office
P. O. Box 648010
Lee's Summit, MO 64064-8010
Email: uscis.foia@uscis.dhs.gov

Director of Public Affairs
Office of Public Affairs
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

AUG - 9 2017

Second Stein Declaration
1:17-cv-07572
Exhibit 2

Laurie Day
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
Suite 11050
1425 New York Avenue NW
Washington, DC 20530-0001

Melissa Golden
Lead Paralegal and FOIA Specialist
Office of Legal Counsel
Department of Justice
Room 5511, 950 Pennsylvania Avenue NW
Washington, DC 20530-0001

FOIA Officer
U. S. Department of State
Office of Information Programs and Services
A/GIS/IPS/RL
SA-2, Suite 8100
Washington, DC 20522-0208

**Re: Freedom of Information Act Request**
**Expedited Processing Requested**

To Whom It May Concern:

The Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute") submits this request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records concerning the exclusion or removal of individuals from the United States based on their speech, beliefs, or associations.[1]

**I. Background**

During his 2016 presidential campaign, then-candidate Donald Trump evoked a Cold War–era "ideological screening test" for admission into the United States and proclaimed that a "new screening test" involving "extreme, extreme vetting" was overdue.[2] A week after his inauguration,

[1] The Knight First Amendment Institute is a New York not-for-profit organization based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education.

[2] Karen DeYoung, *Trump Proposes Ideological Test for Muslim Immigrants and Visitors to the U.S.*, Wash. Post (Aug. 15, 2016), https://perma.cc/G9SC-EPHT.

Second Stein Declaration
1:17-cv-07572
Exhibit 2

President Trump issued Executive Order 13,769, declaring that the United States "must ensure that those admitted to this country do not bear hostile attitudes toward it and its founding principles" and "cannot, and should not, admit those who do not support the Constitution." Exec. Order No. 13,769, 82 Fed. Reg. 8,977 (Jan. 27, 2017).

The President issued a revised order on March 6, 2017. It directed the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence to develop a more robust vetting program for aliens seeking entry into the United States, involving, among other things, "collection of all information necessary for a rigorous evaluation of all grounds of inadmissibility." Exec. Order No. 13,780, 82 Fed. Reg. 13,209, 13,215 (Mar. 6, 2017).

The Knight Institute seeks to inform the public about any new vetting policies and about the government's understanding of its authority to base immigration decisions on individuals' speech, beliefs, or associations. It also seeks to report on the government's use of existing statutory provisions, including the "endorse or espouse provisions"[1] and the "foreign policy provision,"[2] to exclude or remove individuals from the United States on these grounds.

## II. Records Requested

The Knight Institute requests the following records created on or after May 11, 2005:

1. All directives, memoranda, guidance, emails, or other communications sent by the White House[3] to any federal agency

[1] Any alien who "endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity," 8 U.S.C. § 1182(a)(3)(B)(i)(VII), as well as any alien who is a representative of "a political, social, or other group that endorses or espouses terrorist activity," 8 U.S.C. § 1182(a)(3)(B)(i)(IV)(bb) (together, the "endorse or espouse provisions") is deemed inadmissible. The endorse or espouse provisions provide a basis for removal as well. *See* 8 U.S.C. § 1225(c) (expedited removal of arriving aliens); 8 U.S.C. § 1227(a)(4)(B) (removal of admitted aliens); *see also* 8 U.S.C. § 1158(b)(2)(A)(v) (removal of refugees otherwise qualified for asylum on similar grounds).

[2] Any "alien whose entry or proposed activities in the United States . . . would have potentially serious adverse foreign policy consequences" is inadmissible, 8 U.S.C. § 1182(a)(3)(C)(i), even, under certain circumstances, where the determination of inadmissibility is based on "beliefs, statements or associations [that] would be lawful within the United States," 8 U.S.C. § 1182(a)(3)(C)(iii). *See also* 8 U.S.C. §§ 1225(c)(1), 1227(a)(4)(C) (providing for expedited removal and removal on the same grounds).

[3] The term "White House" includes, but is not limited to, the Executive Office of the President, the Office of the President, the White House Office, the Office of Counsel to the President, the National Security Council, the Office of the Vice President, the Cabinet, as well as any government officer who directly advises the President or the Vice President as to the legality of, or authority to undertake, any executive action.

Second Stein Declaration
1:17-cv-07572
Exhibit 2

since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude[1] or remove individuals from the United States.

2. All memoranda concerning the legal implications of excluding or removing individuals from the United States based on their speech, beliefs, or associations.

3. All legal or policy memoranda concerning the endorse or espouse provisions, or the foreign policy provision as it relates to "beliefs, statements or associations."

4. All records containing policies, procedures, or guidance regarding the application or waiver of the endorse or espouse provisions or the foreign policy provision. Such records would include policies, procedures, or guidance concerning the entry or retrieval of data relevant to the endorse or espouse provisions or the foreign policy provision into or from an electronic or computer database.

5. All Foreign Affairs Manual sections (current and former) relating to the endorse or espouse provisions or the foreign policy provision, as well as records discussing, interpreting, or providing guidance regarding such sections.

6. All records concerning the application, waiver, or contemplated application or waiver of the endorse or espouse provisions to exclude or remove individuals from the United States, or the application, waiver, or contemplated application or waiver of the foreign policy provision to exclude or remove individuals from the United States based on "beliefs, statements or associations," including:

   a. Statistical data or statistical reports regarding such application, waiver, or contemplated application or waiver;

   b. Records reflecting the application, waiver, or contemplated application or waiver of the endorse or espouse provisions or foreign affairs provision by an immigration officer, a border officer, a Department of Homeland Security official, or a Department of Justice official;

   c. Records concerning any determination made by the Attorney General pursuant to 8 U.S.C. § 1225(c) regarding

[1] As used herein, the term "exclude" includes denying a visa, revoking a visa, or otherwise deeming inadmissible for entry into the United States.

the admissibility of arriving aliens under the endorse or espouse provisions or the foreign policy provision;

d. Department of Homeland Security and Department of Justice records concerning consultation between the Secretary of State, the Secretary of Homeland Security, and/or the Attorney General (or their designees) relating to any waiver or contemplated waiver of the endorse or espouse provisions pursuant to 8 U.S.C. §§ 1158(b)(2)(v), 1182(d)(3)(A), or 1182(d)(3)(B)(i); and

e. Notifications or reports from the Secretary of Homeland Security or the Secretary of State concerning waivers of the endorse or espouse provision pursuant to 8 U.S.C. § 1182(d)(3)(B)(ii).

Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

We also ask that you provide responsive electronic records in their native file format or a generally accessible electronic format (*e.g.*, for tabular data, XLS or CSV). *See* 5 U.S.C. § 552(a)(3)(B). Alternatively, please provide the records electronically in a text-searchable, static-image format (*e.g.*, PDF), in the best image quality in the agency's possession, and in separate, Bates-stamped files.

### III. Application for Expedited Processing

The Knight Institute requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the records sought because the information they contain is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

*A. The Knight Institute is primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The Knight Institute is "primarily engaged in disseminating information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II).

The Institute is a newly established organization at Columbia University dedicated to defending and strengthening the freedoms of speech and the

press in the digital age. Research and public education are central to the Institute's mission.[1] Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and the public are among the core activities the Institute was established to perform. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

*B. The records sought are urgently needed to inform the public about actual or alleged government activity.*

The requested records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). The records sought concern the government's exclusion and removal of individuals from the United States based on their speech, beliefs, or associations. Such activity is ongoing, and the President has promised "strong programs" to ensure that the only individuals allowed in the United States are those who "want to love our country."[2] To this end, the President has mandated more robust vetting standards for all immigration programs, and has directed the Secretary of Homeland Security to report periodically on the development of these standards from now until October 2, 2017. Exec. Order No. 13,780, 82 Fed. Reg. at 13,215.

President Trump's executive orders on immigration have already been the subject of widespread debate,[3] and the development of new vetting policies will ensure continued public interest in the issue. Yet, lack of transparency with respect to current policies and practices stymies

---

[1] Mike McPhate, *Columbia University To Open a First Amendment Institute*, N.Y. Times (May 17, 2016), https://perma.cc/YC9M-LUAD; James Rosen, *New Institute Aspires To Protect First Amendment in Digital Era*, McClatchy DC (May 20, 2016), https://perma.cc/ZS2K-FPED.

[2] *Trump Defends Immigration Restrictions, Wants People 'Who Love Our Country,'* Chi. Trib. (Feb. 6, 2017), http://trib.in/2vIQeuw.

[3] *See, e.g.*, Mark Berman, *To Argue for Stricter Vetting of Immigrants, Trump Invokes Attacks Carried Out by U.S. Citizens*, Wash. Post (Feb. 28, 2017), https://perma.cc/PA4P-9KPP; Lauren Gambino & Tom McCarthy, *Trump Pressing Ahead with 'Extreme Vetting' in Spite of Court Battles*, The Guardian (June 6, 2017), https://perma.cc/Q6WT-XCRX; Jonathan E. Meyer, *The Consequences of Extreme Vetting*, Politico (May 5, 2017), https://perma.cc/9F5P-65PQ; S.A. Miller & Dave Boyer, *Trump Signs New Extreme Vetting Order*, Wash. Times (Mar. 6, 2017), https://perma.cc/2XME-QKFH; Michael Price, *Does the President's Immigration Order Violate the Rule Against Ideological Exclusion?*, Lawfare (Feb. 1, 2017), https://perma.cc/9BKA-X86L; Yeganeh Torbati, *State Department Proposes Collecting Immigrants' Social Media Handles in Move Toward 'Extreme Vetting,'* Bus. Insider (May 4, 2017), https://perma.cc/H4Q9-648S; *Trump Administration's Threat To Impose Ideological Test for Immigrants Evokes Dark Chapter in U.S. History, Says PEN America*, PEN America (Jan. 27, 2017), https://perma.cc/BVS8-8AV4.

meaningful debate over the form that the new "extreme vetting" policies may take.

The public's interest in the records is even greater because current practices may violate constitutional rights. The First Amendment encompasses the right "to receive suitable access to social, political, esthetic, moral, and other ideas and experiences," *Red Lion Broad. v. FCC*, 395 U.S. 367, 390 (1969), and this "right to receive information" is implicated where the government excludes a non-citizen from the United States based on her speech or beliefs, *Kleindiest v. Mandel*, 408 U.S. 753, 763–65 (1972). At present, the public can neither determine the degree to which its First Amendment rights are being abridged under existing policies, nor assess how proposed policies could further curtail these rights moving forward.

For these reasons, the Knight Institute is entitled to expedited processing of this request.

## IV. Application for Waiver or Limitation of Fees

The Knight Institute requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). For the reasons explained above, disclosure of the records would be in the public interest. Moreover, disclosure would not further the Knight Institute's commercial interest. The Institute will make any disclosed information available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citation omitted).

In addition, the Knight Institute requests a waiver of search and review fees on the ground that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute will perform scholarly research on the application of the First Amendment in the digital era. The Institute is in the midst of inaugurating a research program that will bring together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It will publish that commentary in many forms — in scholarly publications, in long-form reports, and in short-form essays.

Finally, the Knight Institute requests a waiver of search and review fees on the ground that it is a "representative of the news media" within the

meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute qualifies as a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of FOIA); *Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282, 287–88 (D. Conn. 2012); *ACLU*, 321 F. Supp. 2d at 30 n.5. Courts have found other non-profit organizations with research and public education missions similar to that of the Knight Institute to be representatives of the news media. *See, e.g.*, *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 10–15 (D.D.C. 2003) (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

For these reasons, the Knight Institute is entitled to a fee waiver.

* * *

Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email to clarify any aspect of the request or, where reasonable, to narrow it.

I certify that the foregoing is true and correct.

Sincerely,

/s/ Caroline M. DeCell

Caroline M. DeCell
Knight First Amendment Institute at Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027
carrie.decell@knightcolumbia.org
(212) 854-9600

Second Stein Declaration
1:17-cv-07572
Exhibit 2

United States Department of State

*Washington, D.C. 20520*

AUG 15 2017

Dear Requester,

RE: Policy, memos, directives, emails, statistics, etc. concerning the exclusion or removal of individuals from the U.S. based on their speech, beliefs, or associations

This is in response to your request dated 08/07/2017, which was received on 08/09/2017. We have assigned Case Control Number F-2017-14346 and will begin the processing of your request based upon the information provided in your communication.

The cut-off date is the date the search is initiated unless you have provided a specific timeframe.

After consideration of your request for expedited processing under the Department's rules governing Freedom of Information Act requests, we have determined that your request does warrant expedited processing.

We have considered your request for a fee waiver. Based upon the information provided in your letter, your request for a fee waiver has been granted; therefore, your request will be processed at no charge to you.

We will notify you as soon as responsive material has been retrieved and reviewed.

Should you want to contact us, you may call our FOIA Requester Service Center at (202) 261-8484 or send an email to FOIAstatus@state.gov. Please refer to the Case Control Number in any communication.

Sincerely,

Requester Communications Branch
Office of Information Programs & Services

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*

Second Stein Declaration
1:17-cv-07572
Exhibit 3



United States Department of State

*Washington, D.C. 20520*

June 28, 2018

Case No.: F-2017-14346

Caroline M. DeCell
Knight First Amendment Institute at Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027

Dear Ms. DeCell:

In response to your client's request dated August 7, 2017, under of the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Department has located 243 responsive documents.[1] After reviewing these documents, we have determined that 90 may be released in full, 126 may be released in part, 16 must be denied in full, and 11 originated with other U.S. Government agencies and have been referred to those agencies for review and direct reply to you.

An enclosure explains the FOIA exemptions and other grounds for withholding material. For the documents withheld in full, we have cited FOIA Exemptions 1, 3, 5, 6, and 7, 5 U.S.C §§ 552(b)(1), (b)(3), (b)(5), (b)(6), and (b)(7)(E). Where we have made excisions, the applicable exemptions are marked on each document. All non-exempt material that is reasonably segregable from the exempt material has been released.

This production completes the processing of your request. If you have any questions, your attorney may contact Ellen Blain, Assistant U.S. Attorney at (212) 637-2743 or ellen.blain@usdoj.gov. Please refer to the associated case number, F-2017-14346, and the civil action number, 1:17-cv-07572, in all communications regarding this case.

Sincerely,

Cory Gurow for

Eric F. Stein, Director
Office of Information Programs and Services

Enclosures: As stated

---

[1] The Department initially reported that there were 72 documents, but when the records were ingested into our document review system packages of documents that had been counted as one document were broken up into their component parts, resulting in a greater number of documents. All 1,719 potentially responsive pages have been processed.

Second Stein Declaration
1:17-cv-07572
Exhibit 4

United States Department of State

*Washington, D.C. 20520*

November 9, 2018

Case No.: F-2017-14346

Caroline M. DeCell
Knight First Amendment Institute at Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027

Dear Ms. DeCell:

I refer you to our letter dated July 31, 2018, regarding the release of material under of the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. Upon further review of 49 records, we determined that additional information may be released.

Furthermore, we determined that additional exemptions apply to some of the portions previously withheld, as noted in the enclosed. Where we have made excisions, the applicable exemptions are marked on each document. All non-exempt material that is reasonably segregable from the exempt material has been released.

An enclosure explains the FOIA exemptions and other grounds for withholding material. If you have any questions, your attorney may contact Assistant U.S. Attorney, Ellen Blain at (202) 637-2743 or ellen.blain@usdoj.gov. Please refer to the associated case number, F-2017-14346, and the civil action number, 1:17-cv-07572, in all communications regarding this case.

Sincerely,

Corynne Gerow for

Susan C. Weetman
Chief, Programs and Policies Division
Office of Information Programs and Services

Enclosures: As stated

Second Stein Declaration
1:17-cv-07572
Exhibit 5

United States Department of State

*Washington, D.C. 20520*

February 26, 2018

Case No.: F-2017-14346

Caroline M. DeCell
Knight First Amendment Institute at Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027

Dear Ms. DeCell:

I refer you to our letter dated November 8, 2018, regarding the release of material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. Upon further review of 29 records, we determined that additional information may be released. The Department has also identified 18 documents in which law enforcement information was inadvertently released, and this information is now redacted in the enclosed material. Furthermore, we determined that additional exemptions apply to some of the portions previously withheld, as noted in the enclosed. Where we have made excisions, the applicable exemptions are marked on each document. We have released all non-exempt material that is reasonably segregable from the exempt material.

An enclosure explains the FOIA exemptions and other grounds for withholding material. If you have any questions, your attorney may contact Assistant U.S. Attorney, Ellen Blain at (202) 637-2743 or ellen.blain@usdoj.gov. Please refer to the associated case number, F-2017-14346, and the civil action number, 1:17-cv-07572, in all communications regarding this case.

Sincerely,

Susan C. Weetman
Chief, Programs and Policies Division
Office of Information Programs and Services

Enclosures: As stated

United States Department of State

*Washington, D.C. 20520*

July 31, 2018

Case No.: F-2017-14346

Caroline M. DeCell
Knight First Amendment Institute at Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027

Dear Ms. DeCell:

I refer you to our letter dated June 28, 2018, regarding the release of material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. One document sent to another U.S. Government agency for direct reply must be denied in full. The document is withheld in full under FOIA Exemptions 1 and 3, 5 U.S.C §§ 552(b)(1) and (b)(3). The Exemption 3 statute is Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 3024(i)(1). Another document sent to a U.S. Government agency for direct reply can be released in full. All released material is enclosed.

An enclosure explains the FOIA exemptions and other grounds for withholding material. If you have any questions, your attorney may contact Assistant U.S. Attorney, Ellen Blain at (202) 637-2743 or ellen.blain@usdoj.gov. Please refer to the associated case number, F-2017-14346, and the civil action number, 1:17-cv-07572, in all communications regarding this case.

Sincerely,

Susan C. Weetman for

Eric F. Stein, Director
Office of Information Programs and Services

Enclosures: As stated

Second Stein Declaration
1:17-cv-07572
Exhibit 7

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,

Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, U.S. DEPARTMENT OF JUSTICE, and U.S. DEPARTMENT OF STATE,

Defendants.

No. 1:17-cv-07572-ALC

**DECLARATION OF CARRIE DECELL IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, Carrie DeCell, declare and state as follows:

1. I am a staff attorney at the Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute"). I have served in this role since July 31, 2017.

2. Along with my colleagues, I submitted identical Freedom of Information Act ("FOIA") requests (the "Request") to the Department of Homeland Security ("DHS"), Customs and Border Protection ("CBP"), Immigration and Customs Enforcement ("ICE"), U.S. Citizenship and Immigration Services ("USCIS"), Department of Justice ("DOJ"), and Department of State ("DOS") (collectively, "Defendants") on August 7, 2017. The Request sought, among other things, agency records concerning the exclusion or removal of individuals from the United States based on their speech, beliefs, or associations, and records concerning any new policies for "vetting"

individuals on these grounds.

3. The Knight Institute requested expedited processing of the Request on the ground that the records sought were urgently needed to inform the public about government activity, particularly with respect to the "extreme vetting" program President Trump has ordered federal agencies to develop.

4. Seeking the immediate release of all agency records responsive to the Request, as required by FOIA, 5 U.S.C. § 552, the Knight Institute filed a complaint in this Court on October 4, 2017. The Institute filed an amended complaint on March 14, 2018.

5. I represent the Knight Institute in this action and have served as the primary contact for Defendants' counsel since the beginning of the litigation.

6. The purpose of this declaration is to provide the Court with information regarding the parties' negotiations over the scope of the Request and Defendants' responses to the Request.

**Communications Relating to Narrowing the Request**

7. On January 25, 2018, I spoke with Defendants' counsel by phone to discuss provisional modifications to the Request and a processing schedule for Defendants. My co-counsel, Megan Graham, and two students of the Samuelson Law, Technology & Public Policy Clinic at UC Berkeley School of Law ("Samuelson Clinic") joined the call. During the call, the Knight Institute agreed to narrow the Request on a provisional basis as follows:

- **Item 1:** Defendants' counsel asked whether Defendants could search for responsive records on White House systems alone, rather than searching each Defendant's systems for communications received from the White House. We agreed to this proposal, provided Defendants' counsel gave assurances that the records produced from the White House systems were comprehensive of all records responsive to

Item 1 of the Request. Defendants' counsel agreed to provide an explanation of the White House record retention policy so we could assess the comprehensiveness of Defendants' response to this Item of the Request.

- **Items 2–5:** We provisionally agreed to narrow these Items of the Request to final policy memoranda and equivalent records. We agreed that Defendants would not have to conduct an email search for records responsive to these Items of the Request.

- **Item 6:** Defendants' counsel had previously explained that USCIS would have to conduct a manual search of individual Alien Files ("A-Files") for records responsive to certain parts of Item 6. We provisionally agreed to narrow this Item to subparts (a) and (e), explaining that we were most interested in obtaining statistical information, not information from individual A-Files. We agreed to limit the Defendants' initial searches for material responsive to Item 6(a) to records created on or after January 19, 2012. We agreed that for Item 6(e), initially only DOS and DHS would search for responsive records.

8.      On a February 6, 2018 call with Defendants' counsel, joined by Ms. Graham and the Samuelson Clinic students, I provisionally agreed that Defendants could search for records responsive to Item 5 of the Request on DOS systems alone. We declined to narrow the search for records responsive to Item 6(a) to USCIS systems alone.

9.      To date, I have not received an explanation of the White House record retention policy, or any assurance from Defendants' counsel that the records Defendants processed in response to Item 1 of the Request are comprehensive of all records responsive to that Item of the Request.

**Communications Relating to ICE's Response to the Request**

10. On September 29, 2017, ICE sent the Knight Institute a "final response" to the Request "for 1. All directives, memoranda, guidance, emails, or other communications sent by the White House to any federal agency since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude1 [sic] or remove individuals from the United States (please see request for more details)." *See* First Am. Compl. Ex. C, ECF No. 42-3, at 3. Because the letter mentioned no other Item of the Request and contained no other indication that it constituted a response to the entire Request, I understood the letter as a response to Item 1 of the Request alone. Along with the letter, ICE released 1,666 pages of records responsive to the Request but withheld 1,653 of those pages in full, claiming FOIA exemptions.

11. During a call on December 21, 2017, Defendants' counsel informed me of ICE's position that the Knight Institute had failed to exhaust its administrative remedies with respect to ICE's September 29, 2017 response. That same day, out of an abundance of caution, I submitted an administrative appeal requesting review of ICE's response to Item 1 of the Request, on the view that ICE had responded only as to that Item.

12. In ICE's December 28, 2017 letter to the Court indicating its intent to pursue a motion to dismiss, ICE characterized its September 29, 2017 response as a final response to the entire Request. Based on that characterization, I amended the Knight Institute's administrative appeal by letter dated January 5, 2018, to request review of ICE's response to the entire Request.

13. Rather than litigate a motion to dismiss ICE from this action, the Knight Institute negotiated with Defendants' counsel a stipulation of voluntary dismissal without prejudice of ICE. The parties filed the stipulation of voluntary dismissal on January 11, 2018, and the Court

dismissed ICE from the action without prejudice on January 16, 2018.

14.     During the January 25, 2018 call on which the parties negotiated significant modifications to the Request as a whole, Defendants' counsel stated that she would confirm whether ICE was processing the Knight Institute's administrative appeal as of the date of dismissal. I therefore understood that Defendants' counsel continued to represent ICE with respect to its handling of the Request and believed that she would inform ICE of the ways in which we had provisionally agreed to narrow the Request.

15.     On February 6, 2018, I received ICE's response to the Knight Institute's amended administrative appeal, in which ICE denied our challenge to the withholdings in its September 29, 2017 response but agreed to conduct a new or modified search, remanding the Request to ICE's FOIA Office for further processing and retasking.

16.     Also on February 6, 2018, during my call with Ms. Graham, the Samuelson Clinic students, and Defendants' counsel, Defendants' counsel informed us that ICE had already remanded the appeal to the FOIA Office, completed its new search, and located approximately 14,000 pages of potentially responsive records. Defendants' counsel further informed us that ICE had begun to process the records and scheduled an initial production for March 7, 2018, and that ICE proposed to process the records at a rate of 500 pages per month and make productions on the seventh day of each month thereafter.

17.     On February 13, 2018, I received an email from ICE confirming that it had located approximately 14,000 pages of potentially responsive documents, and that it would commit to processing at least 500 pages per month. ICE indicated that the first production would be made on March 7, 2018, with subsequent productions on the seventh day of each month thereafter.

18.     By letter dated March 7, 2018, ICE informed me that it had processed 560 pages of

records and referred eighty-seven of those pages to other agencies. Along with the letter, ICE released 463 pages, redacting certain pages and withholding others in their entirety on the basis of FOIA Exemptions 5, 6, 7(C), and 7(E).

19.      With the consent of ICE and the other Defendants, the Knight Institute filed an amended complaint on March 14, 2018, in which it challenged the timeliness and comprehensiveness of ICE's response to the Request.

20.      On April 11, 2018, Ms. Graham and I spoke with Defendants' counsel to discuss the possibility of modifying the scope of the Request in order to expedite ICE's processing. Defendants' counsel explained that ICE had conducted its new search based on the original Request, not the Request as modified on the January 25, 2018 call. I responded that the Knight Institute would provisionally agree to accept ICE's response to the modified Request, or to narrow the scope of the potentially responsive records it had already located on an Item-by-Item basis.

21.      By letter dated April 30, 2018, ICE informed me that it had processed an additional 1,124 pages for release and referred 728 of those pages to other agencies. Along with the letter, ICE released 395 pages, redacting certain of those pages and withholding others in their entirety on the basis of FOIA Exemptions 5, 6, 7(C) and 7(E).

22.      In May 2018, Defendants' counsel and I reached an agreement allowing ICE to conduct a "re-review" of the records it had identified post-remand as responsive to the initial Request to determine which of those records were responsive to the provisionally narrowed Request. ICE would then process only those records responsive to the provisionally narrowed Request.

23.      By letter dated June 29, 2018, ICE informed me that following its re-review, it had identified only ninety-nine pages of records responsive to the provisionally narrowed Request. ICE

referred forty-nine pages to other agencies for processing and released fifty pages to the Knight Institute, redacting certain of those pages on the basis of FOIA Exemptions 5, 6, 7(C) and 7(E).

24.     During a call with Defendants' counsel on August 16, 2018, and as reflected in a follow-up email that day, I requested that Defendants provide draft search descriptions and *Vaughn* indices, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), to enable the Knight Institute to narrow possible challenges to Defendants' responses to the Request and to streamline any remaining litigation.

25.     By email dated October 4, 2018, Defendants' counsel informed me that ICE had agreed to produce a draft *Vaughn* index by December 4, 2018. By email dated October 12, 2018, Defendants' counsel sent me ICE's draft search description.

26.     By email dated December 5, 2018, Defendants' counsel informed me that ICE's FOIA review database had "a technical issue" that made producing a draft *Vaughn* index "rather difficult if not impossible," and asked whether the Knight Institute could provide CD copies of all productions ICE had made in this matter. With the help of the Knight Institute's paralegal, I sent Defendants' counsel the requested CD copies by overnight FedEx on December 7, 2018, and received confirmation that they were delivered on December 10, 2018. Nonetheless, ICE never produced the requested draft *Vaughn* index to the Knight Institute.

**Communications Relating to OLC's Response to the Request**

27.     By letter dated May 30, 2018, OLC informed me that it had processed 111 pages of responsive records but had withheld all 111 pages in full on the basis of FOIA Exemptions 5 and 6.

28.     By letter dated July 16, 2018, OLC informed me that it had identified an additional seventeen pages of responsive records but had withheld all seventeen pages in full on the basis of

FOIA Exemption 5.

29. By email dated November 2, 2018, Defendants' counsel sent me OLC's draft search description and draft *Vaughn* index.

**Communications Relating to DOS's Response to the Request**

30. By letter dated June 28, 2018, DOS informed me that it had located 243 records responsive to the Request. Along with the letter, DOS released ninety records in full, withholding 126 records in part and sixteen records in full on the basis of FOIA Exemptions 1, 3, 5, 6, and 7(E). DOS further informed me that it had referred eleven records to other agencies for review.

31. By email dated November 9, 2018, Defendants' counsel sent me a supplemental release from DOS. The accompanying response letter explained that, upon further review of forty-nine records, DOS had determined that additional information could be released, and that additional exemptions applied to some portions of records that had previously been withheld.

32. Attached hereto as Exhibit A is a true and correct copy of one record contained in DOS's November 9, 2018 supplemental release, titled "Action Memo for the Secretary" (C06569352).

33. Attached hereto as Exhibit B is a true and correct copy of another record contained in DOS's November 9, 2018 supplemental release, titled "9 FAM 302.6" (C06533909).

34. By email dated February 26, 2019, Defendants' counsel sent me another supplemental release from DOS. The accompanying response letter explained that, upon further review of twenty-nine records, DOS had determined that additional information could be released, that law enforcement information had previously been inadvertently released in eighteen records, and that additional exemptions applied to some portions of records that had previously been withheld.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed: March 28, 2019

Carrie DeCell
Knight First Amendment Institute
at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
carrie.decell@knightcolumbia.org
(646) 745-8500

Case 20-3837, Document 41, 02/23/2021, 3042809, Page113 of 302

JA-111

# EXHIBIT A

201102660
**United States Department of State**

***Washington, D.C. 20520***

~~SENSITIVE BUT UNCLASSSIFIED~~

February 22, 2011

RELEASE IN PART B5,B7(E)

**ACTION MEMO FOR THE SECRETARY**

FROM: DRL– Michael Posner
S/WCI – Diane F. Orentlicher, Acting
CA – Michael D. Kirby, Acting
L – Harold Hongju Koh

SUBJECT: Travel Sanctions against Persons Who Participate in Serious Human Rights Violations and other Abuses

**Recommendation**

That you approve the attached memorandum to the NSS requesting the President exercise his authority, under the Immigration and Nationality Act, to bar entry into the United States of aliens who participate in serious human rights violations and related abuses.

Approve HRC Disapprove ______________

That you approve the attached draft procedures for implementation of the Proclamation Barring Entry to Aliens who are Involved in Various Human Rights and Humanitarian Law Abuses.

Approve HRC Disapprove ______________

**Background**

The National Security Staff (NSS) has asked the Department of State to present legal options for barring entry into the United States to aliens who participate in serious human rights and humanitarian law violations and related abuses. [redacted] B5

~~SENSITIVE BUT UNCLASSSIFIED~~

Case 20-3837, Document 41, 02/23/2021, 3042809, Page115 of 302

JA-113

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06569352 Date: 11/08/2018

~~SENSITIVE BUT UNCLASSSIFIED~~

- 2 -

B5

The President of the United States has authority under Section 212(f) of the Immigration and Nationality Act (INA), by proclamation, to bar entry into the United States to aliens whose entry "would be detrimental to the interests of the United States."

B5
B7(E)

Implementation procedures have been drafted to provide guidance for how this authority would be utilized.

B5

<u>Attachments</u>:
Tab 1 – Proposed Memorandum to NSS
Tab 2 – Proposed Implementation Procedures
Tab 3 – Background on Sanctions Authority

~~SENSITIVE BUT UNCLASSSIFIED~~

2

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06569352 Date: 11/08/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page116 of 302
JA-114

# EXHIBIT B

Case 20-3837, Document 41, 02/23/2021, 3042809, Page117 of 302

JA-115

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

RELEASE IN PART B7(E)

# 9 FAM 302.6

# (U) INELIGIBILITIES BASED ON TERRORISM-RELATED GROUNDS

*(CT:VISA-1; 11-18-2015)*
*(Office of Origin: CA/VO/L/R)*

Taxonomy: *ineligibilities*

ARCHIVE COPY

## 9 FAM 302.6-1 (U) STATUTORY AND REGULATORY AUTHORITIES

### 9 FAM 302.6-1(A) (U) Immigration and Nationality Act

*(CT:VISA-1; 11-18-2015)*

**(U)** INA 101(b)(1) (8 U.S.C. 1101(b)(1)); INA 212(a)(3)(B)(8 U.S.C. 1182(a)(3)(B)); INA 212(a)(3)(F) (8 U.S.C. 1182(a)(3)(f)); INA 212(d)(3)(A) (8 U.S.C. 1182(d)(3)(A)); INA 212(d)(3)(B) (8 U.S.C. 1182(d)(3)(B)); INA 219 (8 U.S.C. 1189).

### 9 FAM 302.6-1(B) (U) United States Code

*(CT:VISA-1; 11-18-2015)*

**(U)** 8 U.S.C. 2339[illegible](c)(1); 22 U.S.C. 2723.

### 9 FAM 302.6-1(C) (U) Public Laws

*(CT:VISA-1; 11-18-2015)*

**(U)** Foreign Relations Authorization Act, Fiscal Years 1992 and 1993, Public Law 102-138, section 12[illegible]; Homeland Security Act of 2002, Public Law 107-296; Consolidated Appropriations Act, 2008, Public Law 110-161, at section 691 of Title VI of Division J (the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2008); An Act to Remove the African National Congress from Treatment as a Terrorist Organization for Certain Acts or Events, Provide Relief for Certain Members of the African National Congress Regarding Admissibility, and for Other Purposes, Public Law 110-257.

9 FAM 302.6 Page 1 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

1

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page118 of 302

JA-116

C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

U.S. Department of State Foreign Affairs Manual Volume 9
Visas

# 9 FAM 302.6-2 (U) TERRORIST ACTIVITIES - INA 212(A)(3)(B)

## 9 FAM 302.6-2(A) (U) Grounds

*(CT:VISA-1; 11-18-2015)*

**(U)** Section 212(a)(3)(B)(i) of the Immigration and Nationality Act (INA) renders ineligible any alien who:

(1) **(U)** has engaged in a terrorist activity;

(2) **(U)** you know, or have a reasonable ground to believe, is engaged in or is likely to engage after entry in any terrorist activity;

(3) **(U)** has, under circumstances indicating an intention to cause death or serious bodily harm, incited terrorist activity;

(4) **(U)** is a representative of:

(a) **(U)** a terrorist organization; or

(b) **(U)** a political, social, or other group that endorses or espouses terrorist activity;

(5) **(U)** is a member of a terrorist organization;

(6) **(U)** is a member of a terrorist organization, unless the alien can demonstrate by clear and convincing evidence that the alien did not know, and should not reasonably have known, that the organization was a terrorist organization;

(7) **(U)** endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization;

(8) **(U)** has received military-type training from or on behalf of any organization that, at the time the training was received, was a terrorist organization; or

(9) **(U)** is the spouse or child of an alien who is inadmissible, if the activity causing the alien to be found inadmissible occurred within the last 5 years.

ARCHIVE COPY

## 9 FAM 302.6-2(B) (U) Application

### 9 FAM 302.6-2(B)(1) (U) Summary

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.32 N1.1(a) and (c) CT:VISA-1902; 09-26-2012)*

a. **(U)** Section 212(a)(3)(B) of the INA describes visa ineligibilities related to terrorism. The ineligibilities hinge on terrorism-related definitions that were significantly expanded by post-9/11 legislation, most significantly, the USA

9 FAM 302.6 Page 2 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

2

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page119 of 302

JA-117

C06533909-IED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

U.S. Department of State Foreign Affairs Manual Volume 9
Visas

PATRIOT Act (2001) and the REAL ID Act (2005). As a result of these amendments, the scope of activities covered by the phrase "engage in terrorist activity" is broad. As defined in INA 212(a)(3)(B)(vi), the term "terrorist organization" encompasses both organizations that have been designated previously by the Department of State as terrorist organizations and organizations that have never been so designated by the Department of State or any other U.S. Government agency, but that have engaged in any of the activities listed in INA 212(a)(3)(B)(iv)(I)-(IV). Because terms in INA 212(a)(3)(B) are defined broadly, you must take particular care in eliciting as much pertinent information from visa applicants as possible, including the names of all groups potentially covered by these provisions with which the applicant may be linked, for example, by current membership or past financial contributions or other support. You must also inquire into the nature and activities of those organizations, bearing in mind the definition of "terrorist organization" in INA 212(a)(3)(B)(vi), described in 9 FAM 302.6-2(B)(3) paragraph i and other FAM provisions referenced therein.

b. **(U)** The Department of Homeland Security (DHS) is a key player in the adjudication process. Section 428 of the Homeland Security Act of 2002 (Public Law 107-296) gives the Secretary of Homeland Security the authority to refuse visas in accordance with the law. The "Memorandum of Understanding (MOU) Between the Secretaries of State and Homeland Security Concerning the Implementation of Section 428" explicitly acknowledges that the Secretary of Homeland Security may refuse visas independently [redacted] B7(E)

[redacted]

## 9 FAM 302.6-2(B)(2) (U) Background

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.32 N1.2 CT:VISA-1902; 09-26-2012)*

a. **(U)** The Immigration Act of 1990 (Public Law 101-649) generally amended INA 212(a) by replacing the previous 43 classes of excludable aliens with nine broad classes, each with subclasses. New INA 212(a)(3)(B), "Terrorist Activities," incorporated aspects of former INA 212(a)(27) and INA 212(a)(29).

b. **(U)** The Antiterrorism and Effective Death Penalty Act of 1996 (Public Law 104-132) expanded the scope of INA 212(a)(3)(B) to make inadmissible representatives and members of organizations designated by the Secretary under INA 219 as Foreign Terrorist Organizations (FTOs).

c. **(U)** The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (Public Law 104-208) amended INA 212(a)(3)(B)(i) again to make inadmissible

9 FAM 302.6 Page 3 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

3

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

ARCHIVE COPY

any alien who, "under circumstances indicating an intention to cause death or serious bodily harm," incited terrorist activity. The new provision applied retroactively to all such incitement activities, regardless of when they occurred.

d. **(U)** The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act") (Public Law 107-56), enacted after the terrorist attacks on September 11, 2001, expanded the scope of INA 212(a)(3) in several important respects:

(1) **(U)** It gave the Secretary of State new authority to designate organizations as terrorist organizations for purposes of INA 212(a)(3)(B) if certain criteria are met. Organizations so designated are listed on the "Terrorist Exclusion List" or "TEL";

(2) **(U)** It defined "terrorist organization" for the first time, creating three categories. The first category is Foreign Terrorist Organizations (FTOs) designated under INA 219 (see INA 212(a)(3)(B)(vi)(I)) (Tier I); the second is entities designated under the Terrorism Exclusion List (TEL) authority included in the USA PATRIOT Act (Tier II) (see INA 212(a)(3)(B)(vi)(II)). The third category, referred to as "undesignated terrorist organizations," includes entities that engage in specified "terrorist activities" listed in the INA, but that have not been designated under FTO or TEL authorities (Tier III) (see INA 212(a)(3)(B)(vi)(III)); and

(3) **(U)** It created INA 212(a)(3)(F), "Association with Terrorist Organizations," which made aliens who have been associated with a terrorist organization, and who are engaged or likely to engage in certain activities that endanger the United States, inadmissible under certain circumstances.

e. **(U)** The Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005 ("REAL ID Act") (Public Law 109-13) at sections 103 and 104 of Division B further expanded the scope of INA 212(a)(3)(B) by:

(1) **(U)** Broadening "terrorist organization" to capture undesignated groups with subgroups that engage in terrorist activity";

(2) **(U)** Making it harder for an alien suspected of "engaging in terrorist activities" to escape inadmissibility based on an alleged lack of knowledge concerning an undesignated terrorist organization or how any contribution of material support might be used by a terrorist organization (see (5), (6), and (8) below);

(3) **(U)** Making inadmissible "representatives" of all three types of terrorist organizations, regardless of alien's knowledge or intent. Previously, only representatives of groups designated under INA section 219 (Tier I) were specified;

(4) **(U)** Making inadmissible all representatives of "a political, social, or other group that endorses or espouses terrorist activity." Previously the Secretary of State had to find that the group's public endorsement of acts

ARCHIVE COPY

Case 20-3837, Document 41, 02/23/2021, 3042809, Page121 of 302

JA-119

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

of terrorist activity undermines U.S. efforts to reduce or eliminate terrorist activities;

(5) **(U)** Eliminating the knowledge defense to inadmissibility for members of entities designated for the Terrorism Exclusion List (TEL) (Tier II) and raising the standard to "clear and convincing evidence" for an alien to avoid inadmissibility for being a member of an undesignated terrorist organization on the grounds that he did not know, and should not reasonably have known, that the organization was a terrorist organization;

(6) **(U)** Raising the standard to "clear and convincing evidence" for an alien to avoid inadmissibility for soliciting funds or members for an undesignated terrorist organization on the grounds that he did not know, and should not reasonably have known, that the organization was a terrorist organization;

(7) **(U)** Expanding the "material support" bar to admissibility for knowingly providing support to any terrorist organization or its members, except, with respect to undesignated terrorist organizations, where an alien presents "clear and convincing evidence" that the alien lacked knowledge of any terrorist activity. The amendment eliminated the requirement that the alien intended to support terrorist activity;

(8) **(U)** Making inadmissible any alien who commits an act the alien knows or reasonably should know provides material support to an undesignated terrorist organization or a member of an undesignated terrorist organization, unless the alien can demonstrate "by clear and convincing evidence" that he did not know, and should not reasonably have known, that the organization was a terrorist organization. Prior to amendment, the provision did not include material support afforded to a member of an undesignated terrorist organization. The REAL ID Act added the "clear and convincing evidence standard for an alien attempting to prove lack of knowledge of an undesignated group's terrorist activity;

(9) **(U)** Making inadmissible any alien who "endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization." Before amendment, the provision covered only persons who used their position of prominence to endorse or espouse terrorist activity or to persuade others to support terrorist activity or a terrorist organization in a way the Secretary of State determined undermines U.S. efforts to reduce or eliminate terrorist activities;

(10) **(U)** Making inadmissible any alien who has "received military-type training" from or on behalf of a terrorist organization; and

(11) **(U)** Applying the terrorism provisions of the REAL ID Act amendments to actions taken by an alien before, on, or after the date of enactment, May 11, 2005.

f. **(U)** The Consolidated Appropriations Act, 2008, Public Law 110-161, 121 Stat. 1844, at section 691 of Title VI of Division J (the Department of State, Foreign

ARCHIVE COPY

9 FAM 302.6 Page 5 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

5

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page122 of 302

JA-120

C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

U.S. Department of State Foreign Affairs Manual Volume 9
Visas

Operations, and Related Programs Appropriations Act, 2008) amended the discretionary authority of the Secretary of Homeland Security and the Secretary of State, under INA 212(d)(3)(B)(i), to exempt an alien from most of the terrorism-related bars to admissibility under INA 212(a)(3)(B) and to exempt a group from treatment as an undesignated terrorist organization under INA 212(a)(3)(B)(vi)(III). The amendment also provided that certain groups should not be considered terrorist organizations on the basis of any act or event occurring before the amendment's enactment on December 26, 2007, and that the Taliban must be considered to be a designated foreign terrorist organization, under INA 212(a)(3)(B)(vi)(I), for immigration purposes. (See 9 FAM 302.6-2(B)(3) paragraph i) The amendments were effective upon enactment and apply to acts before or after enactment.

## 9 FAM 302.6-2(B)(3) (U) Definitions

*(CT:VISA-1; 11-18-2015)*

*(Previous Location: 9 FAM 40.32 N2 CT:VISA-1902; 09-26-2012)*

a. **(U)** This section explains terms used in INA 212(a)(3)(B) in alphabetical order. Where listed terms are specifically defined in the statute, the statutory reference follows immediately after the term.

*(Previous Location: 9 FAM 40.32 N2.1 CT:VISA-1992; 05-23-2013)*

b. **(U) CLEAR AND CONVINCING EVIDENCE:**

(1) **(U)** The phrase "clear and convincing evidence" appears several times in INA 212(a)(3)(B) with reference to undesignated terrorist organizations. The INA places the burden of proof on the applicant to establish that he or she did not know, or should not have reasonably known, that the undesignated terrorist organization was, in fact, a terrorist organization. (Applicants are deemed to know that designated terrorist organizations are terrorist organizations, regardless of their actual knowledge or belief).

(2) **(U)** You must consider the following in determining whether a visa applicant can demonstrate by "clear and convincing evidence" that he or she did not know, and should not reasonably have known, that an undesignated organization was a terrorist organization:

(a) **(U)** Facts particular to the individual, such as residence, profession, education, and people with whom and groups with which the applicant has associated;

(b) **(U)** The public availability of information about the organization and more specifically, about the activities that make it a terrorist organization under the INA's broad definition; and

(c) **(U)** The extent to which the organization is actively and overtly engaged in the activities that make it a terrorist organization under the INA.

9 FAM 302.6 Page 6 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

6

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

ARCHIVE COPY

Case 20-3837, Document 41, 02/23/2021, 3042809, Page123 of 302

JA-121

IED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

(3) B7(E)

*(Previous Location: 9 FAM 40.32 N2.2 CT:VISA-1902; 09-26-2012)*

c. **(U) ENDORSING OR ESPOUSING TERRORISM:**

(1) **(U)** An alien is inadmissible under INA 212(a)(3)(B)(i)(VII) if the alien endorses or espouses terrorist activity or persuades others to endorse or support terrorist activity or a terrorist organization.

*(Previous Location: 9 FAM 40.32 N2.3 CT:VISA-1992; 05-23-2013)*

d.

(1) **(U)** A safe house;

(2) **(U)** Transportation;

(3) **(U)** Communications;

(4) **(U)** Funds;

(5) **(U)** Transfer of funds or other material financial benefit;

(6) **(U)** False documentation or identification;

(7) **(U)** Weapons including chemical, biological, or radiological weapons;

(8) **(U)** Explosives; or

(9) **(U)** Training.

*(Previous Location: 9 FAM 40.32 N2.4 CT:VISA-1992; 05-23-2013)*

e. **(U) MEMBER OF A TERRORIST ORGANIZATION:**

9 FAM 302.6 Page 7 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018
7

ARCHIVE COPY

C06533909 IED U.S. Department of State Case No: F-2017-14346 Doc No: C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

U.S. Department of State Foreign Affairs Manual Volume 9
Visas

(1) **(U)** Aliens who are members of designated FTOs or entities on the Terrorism Exclusion List are inadmissible. The INA does not require the alien to know that the organization has been designated. Members of undesignated terrorist organizations are inadmissible, but there is a narrow exception based on lack of knowledge (see 9 FAM 302.6-2(B)(3) paragraph i).

(2) **(U)** Evidence of membership in a terrorist organization might include the individual's taking of an oath or performance of some act that is a prerequisite of membership. A formal induction is not necessary for a finding of membership.

(3) **(U)** Membership must be determined in light of all relevant facts, including, but not limited to, the following:

(a) **(U)** Acknowledgment of membership;

(b) **(U)** Frequent association with other members;

(c) **(U)** Participation in the organization's activities, even if lawful;

(d) **(U)** Actively working to further the organization's aims and methods in a way suggesting close affiliation constituting membership;

(e) **(U)** Occupying a position of trust in the organization, past or present;

(f) **(U)** Receiving financial support from the organization, e.g., scholarships, pensions, salary;

(g) **(U)** Contributing money to the organization;

(h) **(U)** Determination of membership by a competent court;

(i) **(U)** Voluntarily displaying symbols of the organization; or

(j) **(U)** Receiving honors and awards given by the organization.

(4) **(U)** No single factor necessarily determines that an alien was a member of an organization.

(5) [redacted]                                                                                    B7(E)

(6)

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

UNCLASSIFIED  U.S. Department of State  Case No. F-2017-14346  Doc No. C06533909  Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page125 of 302

JA-123

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

B7(E)

(7) **(U)** Note that former members will still be inadmissible if they have previously provided material support (such as membership fees), raised money, or solicited members for the organization.

*(Previous Location: 9 FAM 40.32 N2.5 CT:VISA-1902; 09-26-2012)*

f. **(U) INCITEMENT OF TERRORISM:**

(1) **(U)** "Incitement with intent to cause bodily harm" renders an alien inadmissible under INA 212(a)(3)(B)(i)(III) if he or she has incited terrorist activity under circumstances indicating an intention to cause death or serious bodily harm.

(2) **(U)** "Incited" in the context of INA 212(a)(3)(B) is speech that induces or otherwise moves another person to undertake terrorist activity. Normally speech will not rise to the level of "inciting" unless there is a clear link between the speech and an actual effort to undertake the terrorist activity. It connotes speech that is not merely an expression of views but that directs or induces action, typically in a volatile situation.

(3) **(U)** The applicant may have incited terrorist activity even if a terrorist attack does not actually occur (e.g., because an attempt to commit such activity was thwarted).

(4) **(U)** An applicant who has "incited" terrorist activity must also have acted in circumstances indicating an intention to cause death or serious bodily harm to be inadmissible under INA 212(a)(3)(B). In other words, the alien's speech must not only have induced others to undertake terrorist activity, but it must also have been made with the specific intent that such activity would result in death or serious bodily injury.

(5) **(U)** Incitement and the requisite intent to cause bodily harm could be inferred in the following situations:

(a) **(U)** Widespread opposition to Country A's policies and actions lead to a series of protests, some violent, outside Country A's embassy in Country B. The applicant goes to the embassy, stands on a box, and shouts to the crowd to join him in standing up to Country A and humiliating it. Shortly afterwards, when he sees an embassy vehicle approaching, he yells: "Don't let them in! Make them pay for what they have done!" The crowd blocks the car and removes occupants (including a diplomat working at Country A's embassy), from the car, beating them severely and taking them hostage.

**(U)** Analysis: Diplomatic hostage-taking and violent attacks on

9 FAM 302.6 Page 9 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

9

ARCHIVE COPY

Case 20-3837, Document 41, 02/23/2021, 3042809, Page126 of 302
JA-124
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

diplomats are terrorist activities. Given the alien's urging the crowd to stop the embassy vehicle and "make them pay," you would have reasonable ground to believe that the applicant's speech incited terrorist activity. The alien's "make them pay" statement, when viewed against the backdrop of previous violent protests and his general comments about standing up to Country A and humiliating it, would provide you with reasonable ground to believe that the applicant intended to cause death or serious bodily harm.

(b) **(U)** The applicant is an ardent nationalist whose opinions voiced to a particular audience regularly blame "foreigners" for his country's problems and who argues that the only solution to these problems is that "foreigners" should be driven out of the country. Press reports say that some of those in the targeted audience have been purchasing weapons and seeking to obtain and manufacture explosives. Police notify the applicant or those associated with the applicant that they are investigating several of those in the targeted audience for weapons-related offenses. At the end of a week of particularly strong anti-foreign sentiment, the applicant gives a special speech entitled "A Call to Action." With the knowledge that those under investigation are in the audience, the applicant begins his speech with: "The time has come for action!" He then reiterates throughout his speech that "The only solution to the country's problems is to purge our great land of these foreigners once and for all through whatever means necessary." Shortly thereafter, some of those in the target audience detonate a truck bomb outside a restaurant frequented by foreign nationals, killing several foreign nationals and injuring many restaurant employees.

**(U)** Analysis: The use of any explosive with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property is a terrorist activity. In the example, the applicant helps foster anti-foreign sentiments and then, during a particularly tense period, urges students to act to drive "foreigners" from the country "through whatever means necessary." Under these circumstances, you would have reasonable ground to believe that the applicant's speech incited terrorist activity. The fact that the applicant knew that several students likely had access to weapons and/or explosives and that those students were in attendance at his special lecture would provide you with reasonable ground to believe that the applicant intended to cause death or serious bodily harm.

**(U)** NOTE: The USA PATRIOT Act amended INA 212(a)(3)(B)'s definition of "engaging in terrorist activity" also to include incitement (see INA 212(a)(3)(B)(iv)(I)). As a result, a person who is inadmissible under INA 212(a)(3)(B)(i)(III) for inciting terrorist activity will also now be inadmissible under INA 212(a)(3)(B)(i)(I) for

9 FAM 302.6 Page 10 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
10
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

ARCHIVE COPY

Case 20-3837, Document 41, 02/23/2021, 3042809, Page127 of 302

JA-125

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

engaging in a terrorist activity.

*(Previous Location: 9 FAM 40.32 N2.6 CT:VISA-1902; 09-26-2012)*

g. **(U) REPRESENTATIVE:** A "representative" is defined in INA 212(a)(3)(B)(v) as "an officer, official, or spokesman of an organization, and any person who directs, counsels, commands, or induces an organization or its members to engage in terrorist activity."

*(Previous Location: 9 FAM 40.32 N2.7 CT:VISA-1902; 09-26-2012)*

h. **(U) SUBGROUP:** A group (Group X), even if not organized, can be a "subgroup" of another organization (Group Y) if there are reasonable grounds to believe that either (1) Group X as a whole or (2) the members of Group X are affiliated with Group Y. If a subgroup engages in terrorist activities, then both groups are terrorist organizations. (See 9 FAM 302.6-2(B)(3) paragraph i(1)(c)). A subgroup relationship may be found where there are reasonable grounds to believe that Group X is subordinate to, or affiliated with, Group Y and Group X is dependent on, or otherwise relies upon Group Y in whole or in part to support or maintain its operations. As an example, Group X would be a subgroup of Group Y if the latter establishes rules or guidelines that Group X generally follows and Group X relies on Group Y as a source of funds for Group X operations.

*(Previous Location: 9 FAM 40.32 N2.8 CT:VISA-1992; 05-23-2013)*

i. **(U) TERRORIST ORGANIZATION:**

(1) **(U)** "Terrorist organization," as defined in INA 212(a)(3)(B)(vi), includes both designated terrorist organizations (paragraphs a and b, below) and undesignated terrorist organizations (paragraph c, below):

(a) **(U)** An organization designated by the Secretary of State as a "foreign terrorist organization" (FTO) under INA 219. This designation has implications beyond the INA, including penalties under U.S. criminal law. Aliens who engage in certain activities in connection with these organizations can be rendered inadmissible under the INA. Organizations currently designated as FTOs and information about the designation process can be found on the S/CT website.

(b) **(U)** An organization designated by the Secretary of State for inclusion in the Terrorist Exclusion List (TEL), pursuant to INA 212(a)(3)(B)(vi)(II). The TEL designation is for immigration purposes only. Information about the designation process can be found on the S/CT website.

(c) **(U)** An organization that has not been designated but is a group of two or more individuals, whether organized or not, that engages in, or has a subgroup (see 9 FAM 302.6-2(B)(3) paragraph h) that engages in, terrorist activities described in the INA 212(a)(3)(B)(iv)(I) – (VI). With respect to undesignated terrorist organizations:

9 FAM 302.6 Page 11 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

11
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

ARCHIVE COPY

Case 20-3837, Document 41, 02/23/2021, 3042809, Page128 of 302

JA-126

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

(i) [redacted] B7(E)

(ii) [redacted]

(iii) **(U)** Where a finding of inadmissibility would involve an undesignated terrorist organization, the alien may overcome the finding by demonstrating, by clear and convincing evidence (see 9 FAM 302.6-2(B)(3) paragraph b), that the alien did not know, and should not reasonably have known, that the organization was a terrorist organization (except with respect to representatives of undesignated terrorist organizations, those who persuade others to support an undesignated terrorist organization, and those who receive military-type training on behalf of an undesignated terrorist organization, for whom there is no such defense); and,

(2) **(U)** Pursuant to section 691(b) of Fiscal Year 2008 Department of State, Foreign Operations and Related Programs Appropriations (Division J of the Omnibus Appropriations Act, HR 2764) ("FY08 Appropriations Act"), the following groups are not considered terrorist organizations under INA 212(a)(3)(B)(vi) for acts or events that occurred prior to December 26, 2007:

- **(U)** Karen National Union/Karen Liberation Army (KNU/KNLA)
- **(U)** Chin National Front/Chin National Army (CNF/CNA)
- **(U)** Chin National League for Democracy (CNLD)
- **(U)** Kayan New Land Party (KNLP)
- **(U)** Arakan Liberation Party (ALP)
- **(U)** Tibetan Mustangs
- **(U)** Cuban Alzados
- **(U)** Karenni National Progressive Party
- **(U)** "Appropriate groups affiliated with" the Hmong
- **(U)** "Appropriate groups affiliated with" the Montagnards

As a result of this legislation, an alien who did any of the following prior to December 26, 2007, is no longer inadmissible on account of the following

9 FAM 302.6 Page 12 of 45

SENSITIVE BUT UNCLASSIFIED ~~(SBU)~~

12

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

ARCHIVE COPY

Case 20-3837, Document 41, 02/23/2021, 3042809, Page129 of 302

JA-127

C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

terrorism-related grounds of inadmissibility:

- **(U)** Solicited funds or other things of value on behalf of one of these named groups (INA 212(a)(3)(B)(iv)(IV)(cc))
- **(U)** Solicited an individual for membership in one of these named groups (INA 212(a)(3)(B)(iv)(V)(cc))
- **(U)** Committed an act that provided material support, including transfer of funds, false documentation, weapons or training to one of these named terrorist groups (INA 212(a)(3)(B)(iv)(VI)(dd))
- **(U)** Is a representative of one of these named groups (INA 212(a)(3)(B)(i)(IV)(aa))
- **(U)** Is a member of one of these named terrorist groups (INA 212(a)(3)(B)(i)(VI))
- **(U)** Persuaded others to endorse or support one of these named terrorist groups (INA 212(a)(3)(B)(i)(VII))
- **(U)** Received military-type training from one these named terrorist groups (INA 212(a)(3)(B)(i)(VIII))

(3) **(U)** Pursuant to 691(d) of the FY08 Appropriations Act, as of December 26, 2007, the Taliban must be treated as a designated terrorist organization described in INA 212(a)(3)(B)(vi)(I) (an "FTO") for purposes of immigration law.

(4) **(U)** Public Law No. 110-257, codified at 8 U.S.C. 1182 note, added the African National Congress to the list of groups in subparagraph b, above, that are not considered terrorist organizations.

(5) **(U)** In determining whether an organization may be an undesignated terrorist organization, i.e., that it "engaged in terrorist activities" as described in INA 212(a)(3)(B)(iv)(I) – (VI). Post must evaluate information obtained in the visa interview, take advantage of available local resources, as appropriate, and check relevant databases, including:

(a) **(U)** The United Nations 1267 Committee's list of individuals and entities belonging or related to the Taliban, Osama Bin Laden and the Al-Qaida organization.

(b) **(U)** Terrorists and groups identified under E.O. 13224.

**(U)** [redacted] B7(E)

(6) [redacted] B7(E)

ARCHIVE COPY

9 FAM 302.6 Page 13 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

13

## 9 FAM 302.6-2(B)(4) (U) Inadmissibility Under INA 212(a)(3)(B)

*(CT:VISA-1; 11-18-2015) (Previous Location: 9 FAM 40.32 N3.1 CT:VISA-1942; 11-15-2012)*

a. **(U) OVERVIEW**:

(1) **(U)** INA 212(a)(3)(B) generally identifies as grounds for inadmissibility "engaging in terrorist activities" and having certain links to "terrorist organizations." The standards apply even if the relevant acts or associations preceded enactment of the law and regardless of any link to an actual terrorist attack. The section defines "terrorist activities" to include a broad range of violent acts (see INA 212(a)(3)(B)(iii)), while also making inadmissible representatives and members of groups engaging in listed activities; those endorsing, espousing, or promoting terrorism; those who have received military-type training from terrorist organizations; and immediate family members of any covered persons – with certain exceptions.

(2) **(U)** It also explicitly makes PLO officers, officials, representatives, and spokesmen inadmissible. INA 212(a)(3)(B) next defines "engaging in terrorist activities," which covers a broad range of activities that support or promote the commission of terrorist activities or groups that engage in them (see INA 212(a)(3)(B)(iv)). See 9 FAM 302.6-2(B)(4) paragraph b for more detail.

*(Previous Location: 9 FAM 40.32 PN5 CT:VISA-2074; 03-18-2014)*

b. **(SBU) TERRORIST ACTIVITY:** "Terrorist activity" (INA 212(a)(3)(B)(iii)) means any of the acts listed below, unlawful where committed, or which would be unlawful if committed in the United States under the laws of the United States or any State. [redacted] B7(E) [redacted] The following acts are defined as terrorist activities:

(1) **(SBU)** The hijacking or sabotage of any conveyance (including an aircraft, vessel or vehicle);

(2) **(SBU)** The seizing or detaining, and threatening to kill, injure, or continue to detain, any person in order to compel a third party (including governmental organizations) to act or to refrain from acting as a condition for releasing the detained individual;

(3) **(SBU)** A violent attack upon an internationally protected person (as defined in 18 U.S.C. 1116(b)(4)) or upon his or her liberty (questions as to whether a person is an internationally protected person should be referred to the Office of the Legal Adviser);

(4) **(SBU)** An assassination [redacted]

ARCHIVE COPY

Case 20-3837, Document 41, 02/23/2021, 3042809, Page131 of 302

JA-129

C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

B7(E)

(5) **(SBU)** The use of any biological or chemical agent, nuclear weapon or device, or explosive or firearm or other weapon or dangerous device (other than for mere personal monetary gain) with intent to endanger, directly or indirectly, the safety of another individual or individuals or to cause substantial property damage; or

(6) **(SBU)** A threat, attempt, or conspiracy to do any of the above actions.

*(Previous Location: 9 FAM 40.32 N3.2 CT:VISA-2173; 09-16-2014)*

c. **(U) ENGAGED IN TERRORIST ACTIVITY:**

(1) **(U)** After defining the violent acts that constitute terrorist activity (see INA 212(a)(3)(B)(iii)), the INA identifies the acts that render aliens inadmissible because of their connections to these violent acts or to those who commit them. (See definition of "engage in terrorist activity" INA 212(a)(3)(B)(iv)).

(2) **(U)** An alien is inadmissible on any of the grounds identified below if either the alien has engaged in terrorist activity in the past or you or the Secretary of Homeland Security or the Attorney General knows or has reason to believe that the alien currently is engaged in, or likely after entry to engage in, a terrorist activity. (See INA 212(a)(3)(B)(i)(I)-(II)).

(3) **(U)** An alien is inadmissible for "engaging in terrorist activity" if the alien acts, as an individual or as a member of a group, to:

(a) **(U)** Commit or incite to commit a terrorist activity, under circumstances that indicate an intention to cause death or serious bodily injury;

(b) **(U)** Prepare or plan a terrorist activity;

(c) **(U)** Gather information on potential targets for terrorist activity;

(d) **(U)** Solicit funds or other things of value for a terrorist activity or solicit any individual to engage in terrorist activity;

(e) **(U)** Solicit funds or other things of value for, or solicit any individual for membership in, a terrorist organization. If the terrorist organization is undesignated at the time the solicitation occurred, (see 9 FAM 302.6-2(B)(3) paragraph i(3));

(f) **(U)** Commit an act that the actor knows, or reasonably should know, affords material support for the commission of a terrorist activity;

(g) **(U)** Commit an act that the actor knows, or reasonably should know, affords material support to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity; or

ARCHIVE COPY

9 FAM 302.6 Page 15 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

15

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page132 of 302

JA-130

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

(h) **(U)** Commit an act that the actor knows, or reasonably should know, affords material support to an entity that was a terrorist organization (i.e., engaged in terrorist activity) at the time the material support was provided or to a member of a terrorist organization, without regard to how the contribution was to be used. If the terrorist organization was undesignated at the time material support was provided, (see 9 FAM 302.6-2(B)(3) paragraph i(3)).

(4)

B7(E)

(5) **(U)** Current representatives of the following are inadmissible:

(a) **(U)** A terrorist organization (designated or undesignated; there is no defense based on lack of knowledge concerning the organization's activities); or

(b) **(U)** A political, social, or other similar group that endorses or espouses terrorist activity, regardless of whether the group's endorsement or espousing undermines U.S. efforts.

(6) **(U)** Current members of a terrorist organization are inadmissible. (See 9 FAM 302.6-2(B)(3) paragraph e) If the terrorist organization is undesignated, the alien is not admissible if the applicant can demonstrate "by clear and convincing evidence" that he or she did not know, and should not reasonably have known, that the organization was a terrorist organization (See 9 FAM 302.6-2(B)(3) paragraph b).

(7) **(U)** Endorsing or espousing terrorist activity or persuading others to endorse or espouse terrorist activity or support a terrorist organization, whether designated or undesignated renders an alien is inadmissible. (See 9 FAM 302.6-2(B)(3) paragraph c)

(8) **(U)** Military-type training, received from or on behalf of any organization that, at the time the training was received, was a terrorist organization, makes an alien inadmissible. "Military-type training," as defined in 18 U.S.C. 2339D(c)(1), includes training in means or methods that can cause death or serious bodily injury, destroy or damage property, or disrupt

ARCHIVE

9 FAM 302.6 Page 16 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
16
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page133 of 302
JA-131
IED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

services to critical infrastructure, or training on the use, storage, production, or assembly of any explosive, firearm or other weapon, including any weapon of mass destruction.

*(Previous Location: 9 FAM 40.32 N3.3 CT:VISA-1942; 11-15-2012)*

d. **(U) PALESTINE LIBERATION ORGANIZATION (PLO) AND OTHER PALESTINIAN ENTITIES:**

(1) **(U)** Any alien who is an officer, official, representative, or spokesperson of the PLO is considered to be engaged in terrorist activity and therefore inadmissible. See INA 212(a)(3)(B)(i). This provision applies only to those individuals who are currently PLO officers, officials, representatives, or spokespersons. Although not covered by the PLO-specific provisions, past officers, officials, representatives, or spokespersons likely would be inadmissible under the other provisions of INA 212(a)(3)(B). "PLO Officials" would be individuals with substantive or policy making responsibility in the PLO. Members of the PLO Executive Committee, PLO Representatives at Missions around the world, and PLO Representatives to the United Nations and other International Organizations clearly would be inadmissible under this provision.

(2) **(U)** Applicants who no longer occupy official positions with the PLO and persons who may be viewed as current or former members or employees, but are not officers, officials, representatives, or spokespersons, are not inadmissible under the PLO-specific provision. You should be alert to the possibility that applicants with present or past associations with the PLO may be inadmissible under INA 212(a)(3)(B) for other reasons.

(3)

B7(E)

*(Previous Location: 9 FAM 40.32 PN3.1 CT:VISA-2074; 03-18-2014)*

(4) **(U) Composition of the Palestine Liberation Organization (PLO)**

(a)

ARCHIVE COPY

9 FAM 302.6 Page 17 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
17
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page134 of 302
JA-132
C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

B7(E)

(b)

(i) **(SBU)**
(ii) **(SBU)**
(iii) **(SBU)**
(iv) **(SBU)**
(v) **(SBU)**
(vi) **(SBU)**
(vii) **(SBU)**
(viii) **(SBU)**
(ix) **(SBU)**
(x) **(SBU)**
(xi) **(SBU)**
(xii) **(SBU)**

*(Previous Location: 9 FAM 40.32 PN3.2 CT:VISA-2074; 03-18-2014)*

(5) **(U) Implications for Other Palestinian Entities:**

(a) **(SBU)**

9 FAM 302.6 Page 18 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
18
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

ARC

Case 20-3837, Document 41, 02/23/2021, 3042809, Page135 of 302

JA-133

C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

U.S. Department of State Foreign Affairs Manual Volume 9
Visas

B7(E)

(b) **(SBU)**

ly,

(c) **(SBU)**

*(Previous Location: 9 FAM 40.32 N3.4 CT:VISA-1902; 09-26-2012)*

e. **(U) SPOUSE AND CHILDREN OF AN INADMISSIBLE ALIEN:**

(1) **(U)** Spouses and children of aliens found inadmissible under INA 212(a)(3)(B) are also inadmissible if the activity causing the alien to be inadmissible occurred within the last five years. However, there are exceptions to this inadmissibility.

(2) **(U)** INA 101(b)(1) defines child as an unmarried person under twenty-one

9 FAM 302.6 Page 19 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

19

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page136 of 302
JA-134

C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

years of age.

B7(E)

(4) **(U)** This ground of inadmissibility does not apply to a spouse or child who did not know or should not reasonably have known of the alien's activity that caused the alien to be found inadmissible. It also does not apply if you or the Secretary of Homeland Security finds that there are reasonable grounds to believe the spouse or child has renounced the activity causing the alien to be found inadmissible. The statutory exception to spouse and child inadmissibility applicable in cases where the spouse or child didn't know of the terrorist activity or renounced the activity is found in INA 212(a)(3)(B)(ii).

(5)

## 9 FAM 302.6-2(B)(5) (U) Exemptions

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.32 N4.1 CT:VISA-1942; 11-15-2012)*

a. **(U) EXEMPTION VERSUS WAIVER:** Both of these discretionary authorities allow an alien to receive an immigration benefit, even though the alien would not otherwise qualify for the benefit. One significant difference is that when using a waiver authority, the Department first determines that the alien is not qualified to receive a benefit (e.g., a visa) and then follows the applicable procedures for obtaining a waiver of the disqualification from the Department of Homeland Security (DHS). The waiver authority, found in INA 212(d)(3)(A), is available only for non-immigrant visas. In contrast, when exemption authority is exercised, the Secretary, following interagency consultations, determines that the disqualification (which must arise under the INA's terrorism-related grounds for inadmissibility) "shall not apply" in the particular case. Exemptions are available for both NIV and IV cases, as well as other immigration-related benefits. These authorities are further discussed below.

9 FAM 302.6 Page 20 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
20
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

ARCHIVED COPY

Case 20-3837, Document 41, 02/23/2021, 3042809, Page137 of 302
JA-135
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

*(Previous Location: 9 FAM 40.32 N4.2 CT:VISA-1942; 11-15-2012)*

b. **(U) EXEMPTION AUTHORITY FOR INDIVIDUALS UNDER INA 212(d)(3)(B)(i):**

(1) **(U)** Under INA 212(d)(3)(B)(i), the Secretaries of Homeland Security and State, in consultation with each other and the Attorney General, each are authorized to conclude, in their sole and unreviewable discretion, that almost any of the terrorism-related provisions under INA 212(a)(3)(B) should not apply to an alien. If the alien is in the United States, however, and removal proceedings have commenced, only the Secretary of Homeland Security has the authority to apply the exemption.

(2) **(U)** INA 212(d)(3)(B)(i) exemptions cannot be granted to:

(a) **(U)** Aliens for whom there are reasonable grounds to believe are engaged in (present activities) or likely to engage after entry in (future activities) terrorist activity (INA 212(a)(3)(B)(i)(II));

(b) **(U)** Members of Tier I and Tier II terrorist organizations (designated by the State Department) (INA 212(a)(3)(B)(i)(V));

(c) **(U)** Representatives of Tier I and Tier II terrorist organizations (designated by the State Department) (INA 212(a)(3)(B)(i)(IV)(aa));

(d) **(U)** Aliens who voluntarily and knowingly engaged in terrorist activity on behalf of a Tier I or Tier II group (INA 212(a)(3)(B)(i)(I), as defined by INA 212(a)(3)(B)(iv));

(e) **(U)** Aliens who voluntarily and knowingly endorsed or espoused terrorist activity or persuaded others to do so on behalf of a Tier I or Tier II group (INA 212(a)(3)(B)(i)(VII));

(f) **(U)** Aliens who voluntarily and knowingly received military-type training from a Tier I or II terrorist organization (INA 212(a)(3)(B)(i)(VIII)).

(3) **(U)** It is important to note that with respect to past activities, the limitations on the exemption authority relate only to aliens with ties to designated (Tier I and Tier II) terrorist organizations. The exemption potentially may overcome inadmissibility for any past terrorist activity associated with an undesignated (Tier III) terrorist organization.

(4) **(U)** By including "voluntarily or knowingly" in the statute, Congress made clear that exemptions may be used to overcome inadmissibility for past terrorist activity associated with a designated (Tier I or II) terrorist organization, if the alien acted under duress or without the relevant knowledge.

(5) **(U)** Although exercises of the exemption authority require action by the Secretary following interagency consultations and, therefore, will not be commonplace, you may recommend that the Department pursue an

9 FAM 302.6 Page 21 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018
21

ARCHIVE COPY

Case 20-3837, Document 41, 02/23/2021, 3042809, Page138 of 302
JA-136
C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

exemption from provisions of INA 212(a)(3)(B) for a nonimmigrant visa applicant, if politically justified, or an immigrant visa applicant. Such requests must be submitted to the Department with a detailed assessment explaining why an exemption is appropriate and any balancing considerations.

*(Previous Location: 9 FAM 40.32 N4.3 CT:VISA-1992; 05-23-2013)*

c. **(U) EXEMPTION AUTHORITY FOR INDIVIDUALS ASSOCIATED WITH THE AFRICAN NATIONAL CONGRESS:**

(1) **(U) In General**:

(a) **(U)** Under Public Law No. 110-257, codified at 8 U.S.C. 1182 note, the Secretaries of State and Homeland Security, in consultation with each other and the Attorney General, each are authorized to determine, in their sole and unreviewable discretion, that (2)(A)(i)(I), (2)(B), and (3)(B) (other than clause (i)(II)) of INA 212(a), must not apply to an alien with respect to activities undertaken in association with the African National Congress in opposition to apartheid rule in South Africa. This authority operates the same as the general individual exemption authority described in 9 FAM 302.6-2(B)(5) paragraph b, but for activities that may fall within the scope of this law, only this exemption should be considered. An exemption under the Public Law may cover both terrorism-related and some of the criminal-related grounds of inadmissibility. The same law also establishes that the ANC must not be treated as a terrorist organization, for purposes of section 212(a)(3)(B) of the INA, based on past actions. See 9 FAM 302.6-2(B)(3) paragraph i.

(b) **(U)** Effective March 30, 2011, the Secretary of State, following consultations with the Secretary of Homeland Security and the Attorney General, exercised her discretionary authority under Public Law 110-257 to determine that INA 212(a)(2)(A)(i)(I ), (2)(B), and (3)(B) (other than clause (i)(II)) shall not apply to individuals for activities undertaken in association with the African National Congress (ANC) in opposition to apartheid rule in South Africa (the "ANC categorical exemption"). The ANC categorical exemption sets out conditions for eligibility, described below, that must be applied by consular officers and other relevant U.S. Government officials in accordance with the procedures below. Please see CAWeb Exemption Authorities for the complete text.

*(Previous Location: 9 FAM 40.32 PN1.1 CT:VISA-1849; 07-26-2012)*

(2) **(SBU)** [redacted] B7(E)

(a) **(SBU)** [redacted]

9 FAM 302.6 Page 22 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
22
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

ARCHIVE COPY

Case 20-3837, Document 41, 02/23/2021, 3042809, Page139 of 302

JA-137

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

B7(E)

(b) **(SBU)**

(c) **(SBU)**

(d) **(SBU)**

*(Previous Location: 9 FAM 40.32 PN1.2 CT:VISA-1849; 07-26-2012)*

(3) **(U) Requirements for ANC Exemptions:**

(a) **(SBU)** As required by the Public Law, you must determine that the applicant's activities were:

(i) **(SBU)** Undertaken in association with the ANC; and

(ii) **(SBU)** In opposition to apartheid rule in South Africa.

(b) **(SBU)** "Undertaken in association with the ANC - If the applicant's activities were not associated with the ANC, the exemption does not apply to the applicant's activities and/or association in question.

(c) **(SBU)** "In opposition to apartheid rule" - You must determine that the individual engaged in activities in association with the ANC "in opposition to apartheid rule."

(d) **(SBU)** "In South Africa"

(i) **(SBU)**

(ii) **(SBU)** The Public Law also precludes any exemption if you know or have a reasonable ground to believe the applicant is engaged

ARCHIVE COPY

9 FAM 302.6 Page 23 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
23
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page140 of 302

JA-138

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

in or is likely to engage in terrorist activity as defined in clause (iv) of INA 212(a)(3)(B) after entry into the United States.

*(Previous Location: 9 FAM 40.32 PN1.3 CT:VISA-2074; 03-18-2014)*

(4) **(SBU)**

B7(E)

(a) **(SBU)**

(b) **(SBU)**

(c) **(SBU)**

(d) **(SBU)**

(ii) **(SBU)**

(iii) **(SBU)**

(iv) **(SBU)**

(f) **(SBU)**

**(SBU)**

9 FAM 302.6 Page 24 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

24

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page141 of 302

JA-139

C06533909FIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

U.S. Department of State Foreign Affairs Manual Volume 9

B7(E)

(g) **(SBU)**

(i) **(SBU)**

(ii) **(SBU)**

(A) **(SBU)** s; nor

(B) **(SBU)**

(C) **(SBU)**

(1) **(SBU)**

physical control.

(2) **(SBU)**

- **(SBU)**
- **(SBU)**
- **(SBU)**

9 FAM 302.6 Page 25 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

25

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page142 of 302

JA-140

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

- **(SBU)** [redacted] B7(E)

(3) **(SBU)** [redacted]

(iii) **(SBU)** [redacted]

(iv) **(SBU)** [redacted]

*(Previous Location: 9 FAM 40.32 N4.4 CT:VISA-1942; 11-15-2012)*

e. **(U) EXEMPTION AUTHORITY FOR UNDESIGNATED TERRORIST ORGANIZATIONS (TIER III) UNDER INA 212(d)(3)(B)(i):** The Secretaries of State and Homeland Security, in consultation with each other and the Attorney General, each are authorized, in their sole and unreviewable discretion, to exempt any group from being treated as an undesignated terrorist organization, with two exceptions:

(1) **(U)** Groups that have engaged in terrorist activity against the United States or another democratic country; and

(2) **(U)** Groups that have purposefully engaged in a pattern or practice of terrorist activity that is directed at civilians.

f. **(U) EXEMPTION AUTHORITY FOR KURDISTAN DEMOCRATIC PARTY, IRAQI NATIONAL CONGRESS, AND PATRIOTIC UNION OF KURDISTAN:**

*(Previous Location: 9 FAM 40.32 PN2.4 CT:VISA-2074; 03-18-2014)*

(1) **(U) Background:**

(a) **(SBU)** The KDP, the PUK, and, for a period prior to 2004 (but not for any period after 2004), the INC, were found to fall within the INA definition of a "terrorist organization," pursuant to INA 212(a)(3)(B)(vi)(III), ("Tier III").

(b) **(SBU)** [redacted] B7(E)

ARCHIVE COPY

9 FAM 302.6 Page 26 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

26

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

[redacted] the Secretaries of Homeland Security and State granted exemptions under INA section 212(d)(3)(B)(i) for a category of qualified individuals, as described above, from grounds of inadmissibility applicable as a result of any activity or association relating to the KDP, the PUK, and the INC (the "categorical exemptions"). B7(E)

(c) **SBU)** This guidance is intended for consular officers considering visa applications of those who may fall within the scope of the categorical exemptions.

**(SBU)** The categorical exemptions allow the Visa Office and, subject to guidance from the Visa Office, consular officers to determine whether a particular alien meets the conditions of the categorical exemptions.

(d) **(SBU)** The categorical exemptions set out several conditions that must be met by any individual being considered for exemption. Under the terms of the categorical exemptions, eligibility of an individual must be determined by consular or DHS officials, as appropriate, with respect to applicants for visas or other immigration benefits. The full texts of the categorical exemptions are set out in Exhibit II of this Note. The terms of these three exemptions are identical.

(e) **(SBU)** Note that there is a congressional reporting requirement for individuals exempted under the categorical exemptions relating to the KDP, INC, and PUK. Refer to 9 FAM 302.6-2(B)(6) paragraph c. Not later than 90 days after the end of each fiscal year, the Secretaries of State and Homeland Security must submit a report to specified congressional committees on all individuals exempted under INA 212(d)(3)(B)(i).

*(Previous Location: 9 FAM 40.32 N6 CT:VISA-1992; 05-23-2013)*

(2) **(U) In General:** In September 2009, the Secretary of Homeland Security and Secretary of State granted an exemption under Immigration and Nationality Act (INA) section 212(d)(3)(B)(i) covering the category of individuals who meet certain conditions, as determined by consular or DHS officials, as appropriate, from certain inadmissibility grounds in Section 212(a)(3)(B) of the INA with respect to any activities or associations relating to the Kurdistan Democratic Party (KDP), the Patriotic Union of Kurdistan (PUK) or the Iraqi National Congress (INC) (hereinafter the "categorical exemption"). Please see CAWeb Exemptions for the full text of the exemption.

*(Previous Location: 9 FAM 40.32 PN2.1 CT:VISA-1942; 11-15-2012)*

(3) **(U) Procedures:**

(a) **(SBU)** [redacted] B7(E)

Case 20-3837, Document 41, 02/23/2021, 3042809, Page144 of 302

JA-142

C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

U.S. Department of State Foreign Affairs Manual Volume 9

Visas

B7(E)

(b) **(SBU)**

(c) **(SBU)**

(d) **(SBU)**

(e) **(SBU)**

(f) **(SBU)**

(g) **(SBU)**

9 FAM 302.6 Page 28 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

28

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page145 of 302
JA-143

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

*(Previous Location: 9 FAM 40.32 PN2.2 CT:VISA-1849; 07-26-2012)*

(4) **(SBU) Threshold Requirements Under the Categorical Exemption:**

(a) **(SBU)** B7(E)

(i) **(SBU)**

(ii) **(SBU)**

(iii) **(SBU)**

(iv) **(SBU)**

(v) **(SBU)**

9 FAM 302.6 Page 29 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
29
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page146 of 302

JA-144

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

B7(E)

(vi) **(SBU)**

(vii) **(SBU)** The applicant fully disclosed, in applications and/or interviews with U.S. Government representatives or agents, the nature and circumstances of activities or associations falling within the scope of INA 212(a)(3)(B);

(viii) **(SBU)**

(ix) **(SBU)**

(x) **(SBU)**

(b)

g. **(U) APPLICATION OF EXEMPTION FOR INDIVIDUALS ASSOCIATED WITH KOSOVO LIBERATION ARMY (KLA):**

*(Previous Location: 9 FAM 40.32 PN6.1 CT:VISA-2240; 01-02-2015)*

**(1) (U)**

(a) **(SBU)**

(b) **(SBU)**

(c) **(SBU)**

9 FAM 302.6 Page 30 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

30

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page147 of 302

JA-145

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

B7(E)

(d) **(SBU)**

(e) **(SBU)**

*(Previous Location: 9 FAM 40.32 PN6.2 CT:VISA- 2240; 01-02-2015)*

(2) **(SBU)**

(a) **(SBU)**

(b) **(U)** The applicant is seeking a benefit or protection under the INA, which may include a non-immigrant visa, and is otherwise eligible for the benefit or protection.

(c)

**(U)**

(d) **(U)** The applicant has fully disclosed, to the best of his or her knowledge, in all relevant applications and interviews with U.S. government representatives and agents, the nature and circumstances of activities or associations falling within the scope of INA section 212(a)(3)(B).

(e)

**(U)** (NOTE: a conviction is not required; rather, an indictment will suffice to make the applicant ineligible for the exemption. If you are unsure whether

9 FAM 302.6 Page 31 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

31

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page148 of 302

JA-146

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

the applicant was or is subject to indictment, email you CA/VO/SAC analyst. See Who's Who in VO for your point of contact in CA/VO/SAC.)

(f) **(U)** The applicant has not participated in, or knowingly provided material support to, terrorist activities that targeted noncombatant persons or United States interests.

**(U)** (NOTE: for further information on material support, see 9 FAM 302.6-2(B)(3).)

(g) **(U)** The applicant has established to your satisfaction that he or she poses no danger to the safety and security of the United States.

(h) **(U)** The applicant warrants an exemption from the relevant inadmissibility provisions in the totality of the circumstances.

**(U)** (NOTE: The exemption gives you broad latitude to consider any relevant factors and determine that an applicant who might otherwise appear eligible for the exemption should not benefit based on the totality of circumstances.)

(i) **(SBU)** [redacted] B7(E)

(j) **(SBU)** [redacted]

*(Previous Location: 9 FAM 40.32 PN6.3 CT:VISA- 2240; 01-02-2015)*

(3) [redacted]

(a) [redacted]

(i) [redacted]

(ii) [redacted]

(iii) [redacted]

(iv) [redacted]

(b) **(SBU)** [redacted]

AP COPY

9 FAM 302.6 Page 32 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

32

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page149 of 302

JA-147

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

*(Previous Location: 9 FAM 40.32 PN6.4 CT:VISA-2240; 01-02-2015)*

B7(E)

(4) **(SBU)**

(a) **(SBU)**

(b) **(SBU)**

(c) **(SBU)**

(d) **(SBU)**

(e) **(SBU)**

(f) **(SBU)**

**(U)**

*(Previous Location: 9 FAM 40.32 PN6.5 CT:VISA-2240; 01-02-2015)*

(5) **(SBU)**

***(Previous Location: 9 FAM 40.32 PN6.6 CT:VISA-**2240; 01-02-2015**)***

(6) **(SBU)**

9 FAM 302.6 Page 33 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

33

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page150 of 302

JA-148

C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

B7(E)

## 9 FAM 302.6-2(B)(6) (U) Reports to Congress

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.32 N5 CT:VISA-2173; 09-16-2014)*

a. **(U) Report on 3B Denials:** Section 128 of Public Law 102-138 of October 28, 1991, added to the law a permanent requirement that the Secretary of State report, on a timely basis, to the Judiciary Committees of the House and Senate, the House Foreign Affairs Committee, and the Senate Foreign Relations Committee every denial of a visa "on grounds of terrorist activity," along with a brief description of the factual basis for the denial.

b. **(U) Report on 3B Waivers:** The Secretary of State also must report on all aliens inadmissibility under INA 212(a)(3)(B) to whom the Department issued a visa, or failed to object to the issuance of a visa. This report, required by section 51 of the State Department Basic Authorities Act, as amended by Section 231 of the Foreign Relations Authorization Act, Fiscal Year 2003, must be submitted to appropriate committees on a semi-annual basis. The requirement for these reports may be found at 22 U.S.C. 2723.

c. **(U) Report on Exemptions under INA 212(d)(3)(B):** Not later than 90 days after the end of each fiscal year, the Secretaries of State and Homeland Security must submit a report to specified congressional committees on all individuals exempted under INA 212(d)(3)(B)(i). Exemptions for groups must be reported within one week (INA 212(d)(3)(B)(ii)).

## 9 FAM 302.6-2(C) (U) Security Advisory Opinions

### 9 FAM 302.6-2(C)(1) (U) Security Advisory Opinions Required

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.32 N1.1(b) CT:VISA-1902; 09-26-2012)*

a. (SBU)

ARCHIVE COPY

9 FAM 302.6 Page 34 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

34

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page151 of 302

JA-149

C06533909 IED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

U.S. Department of State Foreign Affairs Manual Volume 9
Visas

*(Previous Location: 9 FAM 40.32 PN4 CT:VISA-2074; 03-18-2014)*

b. **(SBU)**

B7(E)

c. **(SBU)**

d. **(SBU)**

e. **(SBU)**

f. **(SBU)**

g. **(SBU)**

(1) **(SBU)**

9 FAM 302.6 Page 35 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

35

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page152 of 302

JA-150

C06533909 FIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

U.S. Department of State Foreign Affairs Manual Volume 9
Visas

B7(E)

(2) **(SBU)**

(3) **(SBU)**

h. **(SBU)**

i. **(SBU)**

j. **(SBU)**

9 FAM 302.6 Page 36 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

36

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page153 of 302

JA-151

C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

## 9 FAM 302.6-2(C)(2)

B7(E)

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.32 PN1.4 CT:VISA-1849; 07-26-2012)*

a. **(SBU)**

B7(E)

(1) **(SBU)**

(2) **(SBU)**

(3) **(SBU)**

(4) **(SBU)**

(5) **(SBU)**

B7(E)

*(Previous Location: 9 FAM 40.32 PN1.5 CT:VISA-1849; 07-26-2012)*

b. **(SBU)**

(1) **(SBU)**

B7(E)

9 FAM 302.6 Page 37 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

37

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page154 of 302
JA-152
C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

(a) **(SBU)** [redacted] B7(E)

(b) **(SBU)** [redacted]

(c) **(SBU)** [redacted]

(2) **(SBU)** [redacted]

(a) **(SBU)** [redacted]

(b) **(SBU)** [redacted]

(c) **(SBU)** [redacted]

(d) **(SBU)** [redacted]

(e) **(SBU)** [redacted]

(f) **(SBU)** Be advised that discussion of the visa status or visa application of an individual visa applicant is governed by the confidentiality provisions in INA Section 222(f).

9 FAM 302.6 Page 38 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
38
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page155 of 302

JA-153

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

B7(E)

## 9 FAM 302.6-2(C)(3)

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.32 PN2.3 CT:VISA-1849; 07-26-2012)*

a. **(SBU)**

b. **(SBU)**

c. **(SBU)**

d. **(SBU)**

hich

e. **(SBU)**

f. **(SBU)**

ings
the

of

g. **(SBU)**

9 FAM 302.6 Page 39 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

39
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page156 of 302

JA-154

FIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

h. **(SBU)** B7(E)

r

groups in Iran.

i. **(SBU)**

## 9 FAM 302.6-2(C)(4) (U) Exemption Authority for Individuals or Activities Associated with the Kosovo Liberation Army (KLA)

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.32 N7 CT:VISA-2040; 01-02-2015)*

a. On June 4, 2012, Homeland Security Secretary Napolitano, following consultations with the Secretary of State and the Attorney General, exercised her authority under INA section 212(d)(3)(B)(i), not to apply certain inadmissibility grounds under INA section 212(a)(3)(B) for certain activities or associations relating to the Kosovo Liberation Army (KLA). Prior to applying this "exemption" to a visa applicant, there are several issues that must be considered. These are described below and differ for immigrant and non-immigrant visa applicants.

b. The exemption cannot be applied to any immigrant or non-immigrant visa applicant you know or have reasonable grounds to believe is engaged in or is likely to engage after entry into the United States in any terrorist activity, as defined in INA section 212(a)(3)(B)(iv).

ARCHIVE COPY

## 9 FAM 302.6-2(D) (U) Waivers

### 9 FAM 302.6-2(D)(1) (U) Waivers for Immigrants

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.6 Exhibit I CT:VISA-2316; 08-19-2015)*

**(U)** No waiver is available for immigrant visa applicants.

### 9 FAM 302.6-2(D)(2) (U) Waivers for Nonimmigrants

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.32 N4.1(b) CT:VISA-1942; 11-15-2012)*

**(U)** You may request that a finding of INA 212(a)(3)(B) inadmissibility be waived for a nonimmigrant in a particular case. Such requests must be submitted to the Department with a detailed assessment explaining why a waiver is appropriate and

9 FAM 302.6 Page 40 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

40

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page157 of 302

JA-155

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

any balancing considerations. Where appropriate, the Department will forward the request with a recommendation to Department of Homeland Security (DHS) Washington to grant the waiver. You may not request waivers from DHS attachés at post.

**(U)** NOTE: The Department may request a waiver from DHS on its own initiative if it believes a waiver is appropriate under the circumstances in a particular case. The Department will advise you whenever a waiver has been approved, and you must annotate the visa in accordance with 9 FAM 403.8.

# 9 FAM 302.6-3 (U) ASSOCIATION WITH TERRORIST ORGANIZATIONS - INA 212(A)(3)(F)

## 9 FAM 302.6-3(A) (U) Grounds

*(CT:VISA-1; 11-18-2015)*

**(U)** Section 212(a)(3)(F) of the Immigration and Nationality Act (INA) renders inadmissible any alien who the Secretary of State, after consultation with the Secretary of Homeland Security, determines has been associated with a terrorist organization and intends while in the United States to engage solely, principally, or incidentally in activities that could endanger the welfare, safety, or security of the United States.

## 9 FAM 302.6-3(B) (U) Application

### 9 FAM 302.6-3(B)(1) (U) Background and Summary

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.36 N1 CT:VISA-1443; 06-15-2010)*

a. **(U)** Subsection (f) of section 212(a)(3) of the Immigration and Nationality Act (INA) was added by section 411(a)(2) of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of October 26, 2001 (Public Law 107-56) (USA PATRIOT ACT). It was proposed by the Executive Branch and modeled in part on former INA 212(a)(27) and (28).

b. **(U)** Subsection (f) was added to provide a flexible legal basis for denying entry to aliens who have been associated with terrorist organizations and whose travel to the United States would be inconsistent with the welfare, safety, or security of the United States. To ensure its use only in appropriate circumstances, it applies only if the Secretary of State, after consultation with the Secretary of Homeland Security, or Secretary of Homeland Security after consultation with the Secretary of State, determines that the alien has been associated with a terrorist organization and intends while in the United States

ARCHIVE COPY

9 FAM 302.6 Page 41 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
41
UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page158 of 302

JA-156

C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

to engage solely, principally, or incidentally in activities that could endanger the welfare, safety, or security of the United States. The Secretary of State's authority to make such a determination has not been delegated to consular officers. Thus this provision can be used to deny visas only when such use is approved by the Department after a determination is made by the Secretary or an official to whom the Secretary's authority has been delegated.

## 9 FAM 302.6-3(B)(2) (U) Recommending a Finding

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.36 N2 CT:VISA-1649; 05-13-2011)*

a. **(U)** The authority to determine whether an alien is inadmissible under INA 212(a)(3)(F) rests with the Secretary of State or the Secretary of Homeland Security, each in consultation with the other. Accordingly, if you believe that an individual may be inadmissible under this provision, you must refer the matter back to us for decision.

b. **(U)** You should address the following in any request for a determination of inadmissibility under this provision:

(1) **(U) Terrorist organization(s) involved:** If the organization involved has been designated as a foreign terrorist organization under INA 219 as a Terrorist Exclusion List (TEL) organization under INA 212(a)(3)(B)(vi)(II) or under Executive Order 13224, or has been defined by INA 212(a)(3)(B)(vi)(III) as a Tier III terrorist organization, provide the name of the organization and note the relevant designation(s). If an organization has not been designated under any of these authorities, explain why the organization is considered to be a terrorist organization and provide as much information as possible regarding the nature and structure of the organization and its activities. Include information on the nature, timing, and relevant circumstances surrounding the organization's terrorist activities;

**(U)** NOTE: "Terrorist Organization" is defined in INA 212(a)(3)(B)(vi) and references the definition of "engaged in terrorist activity" under INA 212(a)(3)(B)(iv) and "terrorist activity" as defined in INA 212(a)(3)(B)(iii);

(2) **(U) Nature of the alien's association:** We believe that for an alien to be inadmissible under INA 212(a)(3)(F), the association must be meaningful. Therefore, provide information concerning:

(a) **(U)** The frequency, duration, and level of the alien's contacts with the organization;

(b) **(U)** The nature and purpose of the alien's contacts with the organization; and

(c) **(U)** The alien's awareness of association. Because terrorist organizations often operate in secret, provide your assessment of:

ARCHIVE COPY

9 FAM 302.6 Page 42 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

42

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

Case 20-3837, Document 41, 02/23/2021, 3042809, Page159 of 302

JA-157

FIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

(i) **(U)** Whether the alien knew or should have known that the organization was a terrorist organization (see 9 FAM 302.6-2(B)(3) paragraph e for relevant factors to consider);

(ii) **(U)** Whether the alien knew or should have known that the person(s) with whom the alien had contact was a member, representative, or affiliate of a terrorist organization; and

(iii) **(U)** Whether the alien knew or should have known that the person(s) with whom the alien had contact was engaged in terrorist activity;

(3) **(U)** Alien's activities in the United States: Provide as much information as possible regarding the alien's proposed activities in the United States and explain why these activities are cause for concern – i.e., why the determination required under subsection F should be made; and

(4) B7(E)

**(U)** NOTE: Subsection (F) applies to an alien who "has been" associated with a terrorist organization, regardless of when that association occurred. Therefore, an alien whose association with a terrorist group took place prior to enactment of subsection (F) could be found inadmissible. On the other hand, the inadmissibility can be triggered only if the alien intends while in the United States to engage in activities that could endanger the welfare, safety, or security of the United States.

## 9 FAM 302.6-3(B)(3) (U) Findings

*(CT:VISA-14 11-18-2015)*
*(Previous Location: 9 FAM 40.36 N3 CT:VISA-1649; 05-13-2011)*

a. **(U)** In order to find an alien inadmissible under subsection (F), the Secretary of State or Homeland Security, each in consultation with the other (or their delegees), must find:

(1) **(U)** That the alien has been associated with a terrorist organization; and

(2) **(U)** That the alien intends while in the United States to engage solely, principally, or incidentally in activities that could endanger the welfare, safety, or security of the United States.

b. **(U)** Within the Department, Consular Affairs will normally take the lead in coordinating the necessary interagency consultations and ensuring that a determination, if made, is made by an appropriate Department official with delegated authority. Generally, a determination will be made only if INA

9 FAM 302.6 Page 43 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

43

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

ARCHIVE COPY

Case 20-3837, Document 41, 02/23/2021, 3042809, Page160 of 302

JA-158

C06533909 UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

U.S. Department of State Foreign Affairs Manual Volume 9

Visas

212(a)(3)(B) is not applicable.

c. **(U)** As noted above, we believe that "associated with" requires a meaningful association. Generally, to be found inadmissible, an alien must have had contact over a period of time with individuals who the alien knew or should have known were members or representatives of a terrorist organization. A single meeting with a terrorist operative could be sufficient for finding that an alien has been "associated with" a terrorist organization, however. For example, we would likely find an alien was associated with a terrorist organization if the alien had made a commitment at a single meeting with a known recruiter for a terrorist organization to act on the organization's behalf.

d. **(U)** A finding that an alien "intends while in the United States to engage in activities that could endanger the welfare, safety, or security of the United States" can be made in appropriate cases by inferring the necessary intent from the relevant facts and circumstances. For example, an alien who has extensive knowledge of explosives who has been meeting regularly with well-known members of a terrorist organization and seeks to travel to the United States could be found inadmissible under subsection (F). Similarly, an alien who has received flight training, or has received counter surveillance training from a terrorist organization (as defined in INA 212(a)(3)(B)(vi)) could be found to have such an intent based on these and other relevant facts, and therefore be found inadmissible under subsection (F).

e. **(U)** It is not necessary that the alien intend to engage in activities that would be illegal or otherwise prohibited under the laws and regulations in the United States for us to find the alien inadmissible under INA 212(a)(3)(F). For example, an alien who intends to attend flight school in the United States – a lawful activity – could be found inadmissible under subsection (F) if the facts are sufficient to permit the Secretary or her delegate to determine that the alien has been associated with a terrorist organization and that the alien's attendance at the flight school could endanger the security of the United States.

## 9 FAM 302.6-3(B)([illegible]) (U) Not a Permanent Bar

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.36 N5 CT:VISA-1443; 06-15-2010)*

**(U)** B7(E)

9 FAM 302.6 Page 44 of 45

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

44

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

ARCHIVE COPY

Case 20-3837, Document 41, 02/23/2021, 3042809, Page161 of 302

JA-159

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~
U.S. Department of State Foreign Affairs Manual Volume 9
Visas

## 9 FAM 302.6-3(C) (U)

B7(E)

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.36 N4 CT:VISA-1443; 06-15-2010)*

B7(E)

## 9 FAM 302.6-3(D) (U) Waivers

### 9 FAM 302.6-3(D)(1) (U) Waivers for Immigrants

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.6 Exhibit I CT:VISA-2316; 08-19-2015-2010)*

**(U)** No waiver is available for immigrant visa applicants.

### 9 FAM 302.6-3(D)(2) (U) Waivers for Nonimmigrants

*(CT:VISA-1; 11-18-2015)*
*(Previous Location: 9 FAM 40.6 Exhibit I CT:VISA-2316; 08-19-2015)*

**(U)** An INA 212(d)(3)(A) waiver is available for nonimmigrant visa applicants.

ARCHIVE COPY

9 FAM 302.6 Page 45 of 45
~~SENSITIVE BUT~~ UNCLASSIFIED ~~(SBU)~~

45

UNCLASSIFIED U.S. Department of State Case No. F-2017-14346 Doc No. C06533909 Date: 11/09/2018

THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, ET AL.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case Number: 17-cv-07572 |

**DECLARATION OF ERIC F. STEIN**

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1. I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department") and have served in this capacity since January 22, 2017. Previously, I was the Acting Director since October 16, 2016, and Acting Co-Director since March 21, 2016. I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other applicable records access provisions. As the IPS Director, I have original classification authority and am authorized to classify and declassify national security information. Prior to serving in this capacity, from April 2013, I worked directly for the Department's Deputy Assistant Secretary ("DAS") for Global Information Services ("GIS") and served as a senior advisor and deputy to the DAS on all issues

related to GIS' offices and programs, which includes IPS. The core responsibilities of IPS include: (1) responding to records access requests made by the public (including under the FOIA, the Privacy Act, and the mandatory declassification review requirements of the Executive Order governing classified national security information), by members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders, and discovery requests; (2) records management; (3) privacy protection; (4) national security classification management and declassification review; (5) corporate records archives management; (6) research; (7) operation and management of the Department's library; and (8) technology applications that support these activities.

2. I am familiar with the efforts of Department personnel to process the subject request, and I am in charge of coordinating the agency's search and recovery efforts with respect to that request. I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties.

3. This declaration further describes the justification for the Exemption 5 and Exemption 7(E) withholdings that Plaintiff is still challenging.

**FOIA Exemption 5**

4. Plaintiff continues to challenge the Department's Exemption 5 withholdings in six documents. These documents were used to assist in the coordination between the President and other members of the Executive Branch in carrying out their responsibilities regarding immigration enforcement. These documents contain information covered by various privileges encompassed in Exemption 5: deliberative process privilege, attorney client privilege, presidential communications privilege, and attorney work product privilege.

5. **Document C06534021** is a memorandum entitled "Inadmissibility Based on Endorsing or Espousing Terrorist Activity: First Amendment Concerns." This memorandum was solicited for a meeting of the National Security Council (NSC) Lawyer's Group headed by a Deputy Legal Advisor to the National Security Council. The Deputy Legal Advisor was acting at the direction of John Eisenberg, the Assistant to the President, Deputy Counsel to the President for National Security Affairs, and Legal Advisor to the National Security Council, a senior presidential advisor with broad and significant responsibility for gathering information in the course of preparing advice for potential presentation to the President. This document is deliberative and predecisional with respect to visa policies considered by the President regarding the "endorse or espouse" provisions of the Immigration and Nationality Act. To the best of my knowledge, the analysis has not been publicly adopted formally or informally. The document offers legal analysis of a range of possible policy options, and this analysis was not binding on the Department or the President, and therefore is not working law. The document was kept confidential and was not widely disseminated; it was disseminated only to the attendees of the NSC Lawyer's Group, a select group of senior agency counsel, including the acting Assistant Legal Adviser of the Office of Consular Affairs at the State Department who retrieved the memorandum for this search. For these purposes, the members of the NSC Lawyer's Group are government officials and employees, and therefore their communications fall within the scope of governmental privileges. The document was prepared by U.S. Immigration and Customs Enforcement attorneys with input from the members of the Lawyers Group in order to provide legal advice for possible presentation to the President through Mr. Eisenberg. Finally, civil litigation has frequently challenged aspects of this administration's immigration policy (*see, e.g.*, *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017); *Trump v. Hawaii*, 138 S. Ct. 2392 (2018);

*Ramos v. Nielsen*, 336 F. Supp. 3d 1075 (N.D. Cal. 2018)), and this memorandum explicitly assesses the litigation risk of policy decisions in this area of immigration law. Because the entire memorandum consists of deliberative, legal analysis that is subject to the above-mentioned privileges, no part of the memorandum is segregable for release. Any limited factual material is inextricably intertwined with the deliberative and legal privileges. Therefore, this document was withheld in full under FOIA Exemption 5.

6. **Document C06569352** is an approved Action Memorandum entitled "Travel Sanctions Against Persons Who Participate in Serious Human Rights Violations and Other Abuses" that was withheld in part under FOIA Exemptions 5 and 7(E). **Document C06569347** is Tab 2 to the memorandum. The subject of the Action Memorandum is "Proposed Implementation Procedures," and the record bears the title "Procedures for Implementation of the 212(f) Proclamation Barring Entry of Aliens Involved in Various Human Rights and Humanitarian Law Abuses." This document was withheld in full under FOIA Exemption 5, with portions also withheld under FOIA Exemption 7(E). **Document C06569349** is Tab 3 to the memo, entitled "Background on Sanctions Authority" that was withheld in full under FOIA Exemption 5. This action memorandum was drafted in response to the request of the National Security Council Staff for "legal options for barring entry into the United States to aliens who participate in serious human rights and humanitarian law violations and related abuses" so that they could present those options to the President. The analysis in the memorandum and the two attachments to the memorandum is predecisional with respect to the President's final decision on whether to exercise his authority to bar entry in the United States of aliens who participate in serious human rights violations, which resulted in Presidential Proclamation 8697. To the best of my knowledge, the analysis in this memorandum and its attachments has not been publicly

adopted formally or informally. The documents offer legal and policy analysis of a range of possible policy options, including discussion of how to implement those options and potential interagency coordination. This analysis of proposals was not binding on the Department or the President, and therefore is not working law. As the released portion of the memorandum makes clear, the memorandum was provided at the request of the National Security Council Staff in order to advise the President in his creation of the policy announced in Presidential Proclamation 8697. The document was kept confidential and was not widely disseminated; it was created by the relevant equity holders at the Department and used by the Secretary to brief the National Security Council Staff. Portions of the Memorandum and the entirety of "Background on Sanctions Authority" contain legal advice given by the Legal Adviser, Harold Koh, to the Secretary of State and the President. Because the entirety of the two tabs consists of deliberative analysis that is subject to the above-mentioned privileges, no part of the tabs is segregable for release. The Action Memorandum has already been segregated to release all non-privileged information, and no further segregation is possible without harm to the privileges and law enforcement sensitive information contained in the redacted portions. Any limited factual material under the redactions is inextricably intertwined with the deliberative and legal privileges. Therefore, the two tabs were withheld in full under FOIA Exemption 5, as were portions of the Action Memorandum.

7. **Document C06568577** is a two-page memorandum from the Department of Justice's Office of the Legal Counsel entitled "Informal Legal Opinion on Section 212(d)(3)(B)(i) of the Immigration and Nationality Act." This informal opinion, distributed to the National Security Council, evaluates conflicting legal views among agencies on an interpretation of INA § 212(d)(3)(B)(i). The President and National Security Council used this

informal opinion to inform decisions on a policy related to a specific geographical region, the details of which are classified. To the best of my knowledge, the analysis in this memorandum and its attachments has not been publicly adopted formally or informally. The analysis specifically acknowledged different viable legal interpretations and was not binding on the agencies, and therefore is not working law. The document was kept confidential and was not widely disseminated; it was created by attorneys in the Office of the Legal Counsel and used to brief the National Security Council Staff. Because the entire memorandum consists of deliberative, legal analysis that is subject to the above-mentioned privileges, no part of the memorandum is segregable for release. Any limited factual material is inextricably intertwined with the deliberative and legal privileges. Therefore, this document was withheld in full under FOIA Exemption 5.

8. **Document C06570336** is a one-paragraph inter-agency Executive Branch memorandum from the Deputy Assistant Attorney General of the Department of Justice's National Security Division ("NSD") entitled "Memorandum for Michele T. Bond Acting Assistant Secretary Department of State." The analysis in this memorandum offers the National Security Division's legal views on a proposed exemption under INA § 212(d)(3)(B) for material support provided to a terrorist organization under duress. To the best of my knowledge, the analysis in this memorandum and its attachments have not been publicly adopted formally or informally and was provided prior to any exemption from INA § 212(d)(3)(B) being enacted. Accordingly, this memorandum is a pre-decisional record. Furthermore, NSD's views did not bind the Department of State to take an action, and so are not working law. Because the entire memorandum reflects NSD's deliberative, legal analysis and evaluation of a proposed exemption from an existing law, this record is subject to the deliberative process privilege. There is no non-

exempt information in the memorandum that could be segregated for release. Any limited factual material is inextricably intertwined with NSD's deliberative process and the Department of State's attorney client privilege, and would provide no informational value if disclosed. Thus, this memorandum is protected in full by the deliberative process privilege and attorney client privilege of Exemption 5 of the FOIA.

**FOIA Exemption 7(E) – Law Enforcement Information**

9. The Department withheld certain information under FOIA Exemption 7, which protects from disclosure all "records or information compiled for law enforcement purposes" that could reasonably be expected to cause one of the six harms outlined under 5 U.S.C. § 552(b)(7). The Department is a mixed-function agency and enforcement of the Immigration and Nationality Act falls squarely within the Department's law enforcement functions. The withheld information details investigation techniques used to assess the core national security concerns that arise in processing visa applications, such as triggers for further security investigations or checking for terrorism ineligibilities. These sections describe the proactive steps consular officers take to prevent criminals, terrorists, and other bad actors from entering the United States.

10. The Department reviewed the documents line by line, and released information wherever possible. The information that is redacted, including in 9 FAM 302.6-2(B)(3), does not appear unredacted elsewhere, and is more specific and technical than information that was released. Withheld section headings contain specific law-enforcement-sensitive information that must not be released.

**V. CONCLUSION**

11. In summary, the Department has carefully reviewed all of the documents addressed herein for reasonable segregation of non-exempt information and has implemented

segregation when possible. Otherwise, the Department determined that no segregation of meaningful information in the documents could be made without disclosing information warranting protection under the law.

***

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 3rd day of May 2019, Washington, D.C.

Eric F. Stein

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,<br><br>Plaintiff,<br><br>-v-<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.<br><br>Defendants. | 17 Civ. 7572 (ALC) |

**DECLARATION OF JILL A. EGGLESTON
IN SUPPORT OF UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES
MOTION FOR SUMMARY JUDGMENT**

I, JILL A. EGGLESTON, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury:

1. I am the Assistant Center Director in the Freedom of Information and Privacy Act ("FOIA/PA") Unit, National Records Center ("NRC"), United States Citizenship and Immigration Services ("USCIS"), within the United States Department of Homeland Security ("DHS"), in Lee's Summit, Missouri. I have held the position of Assistant Center Director since February 4, 2008. I am also an attorney, licensed to practice law by the State of Kansas in 1983. Prior to joining DHS, I served for 19 ½ years as Associate General Counsel for the Defense Finance and Accounting Service ("DFAS") of the U.S. Department of Defense ("DoD"). As part of my duties with the DFAS, among other things, I provided legal advice to the agency on the release of information sought under the FOIA and PA.

2. As the Chief FOIA Officer for USCIS, I supervise over 200 information access professionals at the NRC who are responsible for the orderly processing of all public, congressional, judicial, and inter-/intra-agency requests or demands for access to USCIS records and information pursuant to the FOIA, Privacy Act, Executive Orders, departmental directives, regulations and compulsory legal process.

3. This declaration is submitted in support of USCIS's litigation in this matter. This declaration describes, generally, agency procedures for processing FOIA requests for access to agency records and, more specifically, agency action taken in response to the Plaintiff's FOIA request. The statements contained in this declaration are based on my personal knowledge, my review of relevant documents kept by USCIS in the course of ordinary business, and upon information provided to me by other USCIS employees in the course of my official duties.

**USCIS'S STANDARD FOIA OPERATING PROCEDURES**

4. USCIS routinely and consistently processes FOIA requests in compliance with DHS implementing regulations found at 6 C.F.R. Part 5 and Management Directive No. 0460.1:

   a) after determining the nature, scope, and contours of a valid FOIA request, a preliminary search is conducted to locate potentially responsive records;

   b) because FOIA requests are generally processed by the NRC on a first-in/first-out basis, the request is logged in the approximate order of its receipt into a computerized case tracking and retrieval system which automatically assigns a control number and tracks the file created;

   c) an acknowledgement letter is contemporaneously mailed to the requester, advising of the control number, processing fee arrangement, processing options, and contact information, and addressing any collateral requests made by requester;

   d) during any abeyance in processing, periodic system inquiries are conducted to maintain updated information concerning the disposition of agency records that are subject to the pending FOIA request;

   e) if relevant records are in the possession of an office or agency other than the responding office, a request for the production of the records is sent to the records' custodian(s) at that time;

   f) during the course of processing, the FOIA request and any responsive records are subjected to rigorous analyses to arrive at the proper final agency determination; and finally;

   g) the NRC sends its response to the requester, granting or denying, in whole or in part, access to requested records, and advising of any additional rights that may have vested in the requester by virtue of the final agency determination.

5. In an effort to process FOIA requests in a manner designed to be fair and expeditious, USCIS has adopted a policy of processing such requests on a first-in/first-out basis. This process is further enhanced by the implementation of a regulation providing for expedited processing of requests under given circumstances, and the adoption of a multi-track system of processing which not only allows the agency to process requests on a first-in/first-out basis within each track, but also permits the USCIS to respond to relatively simple requests more quickly than requests involving complex and/or voluminous records. The NRC's first-in/first-out and multi-track processing protocol is consistent with the requirements set forth in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976).

**PROCESSING OF PLAINTIFF KNIGHT FIRST AMENDMENT INSTITUTE'S**

**FOIA REQUEST**

6. On August 7. 2017, the NRC received a FOIA request submitted by Plaintiff, Knight First Amendment Institute at Columbia University ("Plaintiff"). Plaintiff's request sought the following records:

1. All directives, memoranda, guidance, emails, or other communications sent by the White House to any federal agency since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude or remove individuals from the United States.

2. All memoranda concerning the legal implications of excluding or removing individuals from the United States based on their speech, beliefs, or associations.

3. All legal or policy memoranda concerning the endorse or espouse provisions, or the foreign policy provision as it relates to "beliefs, statements or associations."

4. All records containing policies, procedures, or guidance regarding the application or waiver of the endorse or espouse provisions or the foreign policy provision. Such records would include policies, procedures, or guidance concerning the entry or retrieval of data relevant to the endorse or espouse provisions or the foreign policy provision into or from an electronic or computer database.

5. All Foreign Affairs Manual sections (current and former) relating to the endorse or espouse provisions or the foreign policy provision, as well as records discussing, interpreting, or providing guidance regarding such sections.

6. All records concerning the application, waiver, or contemplated application or waiver of the endorse or espouse provisions to exclude or remove individuals from the United States, or the application, waiver, or contemplated application or waiver of the foreign policy provision to exclude or remove individuals from the United States based on "beliefs, statements or associations," including:

    a. Statistical data or statistical reports regarding such application, waiver, or contemplated application or waiver;
    b. Records reflecting the· application, waiver, or contemplated application or waiver of the endorse or espouse provisions or foreign affairs provision by an immigration officer, a border officer, a Department of Homeland Security official or a Department of justice official;

    c.    Records concerning any determination made by the Attorney General pursuant to 8 U.S.C. § 1225(c) regarding the admissibility of arriving aliens under the endorse or espouse provisions or the foreign policy provision;

    d.    Department of Homeland Security and Department of Justice records concerning consultation between the Secretary of State, the Secretary of Homeland Security, and/or the Attorney General (or their designees) relating to any waiver or contemplated waiver of the endorse or espouse provision pursuant to 8 U.S.C. §§ 1158(b)(2)(v), 1182(d)(3)(A), or 1182(d)(3)(B)(i); and

    e.    Notifications or reports from the Secretary of Homeland Security or the Secretary of State concerning waivers of the endorse or espouse provision pursuant to 8 U.S.C. § 1 182(d)(3)(B)(ii).

USCIS assigned control number COW2017000956 to Plaintiff's FOIA request.

7.    Plaintiff filed this FOIA suit against USCIS seeking injunctive relief in an action styled *Knight First Amendment Institute v. DHS*, 17-cv-7572 *(ALC)* on October 4, 2017 (Dkt. 1). Plaintiff's lawsuit alleged USCIS violated FOIA by failing to timely respond to its FOIA request. FOIA only allows twenty business days for an agency response to a FOIA request. 5 U.S.C. § 552(a)(6)(A). Due to the complexity of Plaintiff's FOIA request, USCIS could not complete a FOIA search and response within the limited time period permitted by FOIA.

8.    Through an agreement reached between the parties on February 14, 2018, Plaintiff's request was modified to exclude draft documents and emails and limited to the following USCIS records:

    1.    All final policy or legal memorandums concerning the legal implications of excluding or removing individuals from the United States based on their speech, beliefs, or associations.
        -Final records only since May 11, 2005.

    2.    All final policy or legal memorandums concerning the endorse or espouse provisions, or the foreign policy provision as it relates to "beliefs, statements or associations."
        -Final records only since May 11, 2005.

    3.    All final policy, procedures or guidance regarding the application or waiver of the endorse or espouse provisions or the foreign policy provision.
        -Final records only since May 11, 2005.

    4.    Statistical data or statistical reports regarding such application, waiver, or contemplated application or waiver.

The statistical data/reports were limited to final reports or final documents containing data that were already compiled as part of USCIS's normal business since January 12, 2012.

9. After carefully reviewing the categories of records in Plaintiff's revised FOIA request, USCIS determined certain records related to its enforcement of the Immigration and Nationality Act ("INA"), particularly its provisions on terrorism-related inadmissibility grounds ("TRIG"), found in INA § 212, codified in 8 U.S.C. § 1182, were responsive to Plaintiff's request, which, generally, sought a variety of records related to excluding or removing individuals from the United States based on their activities and associations, as more specifically described in paragraph 8, *supra*. An alien's activities and associations could result in him or her being deemed inadmissible to the United States pursuant to the TRIG grounds enumerated in INA § 212. The TRIG grounds for inadmissibility include, but are not limited to, individuals who:

- Engaged in terrorist activity;
- Are engaged or are likely to engage in terrorist activity after entry;
- Incited terrorist activity with intent to cause serious bodily harm or death;
- Are representatives or current members of a terrorist organization;
- Endorsed or espoused terrorist activity;
- Received military-type training from or on behalf of a terrorist organization; or
- Are spouses or children of anyone who has engaged in terrorist activity within the last five years (with certain exceptions).

10. Since no one central file or database contained all responsive records related to Plaintiff's complex FOIA request, USCIS FOIA staff at the NRC had to staff the records search to numerous USCIS agency program offices and enlist their assistance in searching for responsive records. USCIS program offices that assisted in conducting a comprehensive FOIA search included the Office of Chief Counsel; Office of Policy and Strategy; Field Operations Directorate; Office of Fraud Detection and National Security; Office of Refugee, Asylum and International Operations; and the Office of Human Capital and Training. These offices searched various USCIS computer databases as well as personal and hardcopy files seeking potentially responsive records which they forwarded to NRC FOIA staff for review and processing.

11. The NRC compiled over 2,200 pages of potentially responsive records from the USCIS program offices described, *supra*. NRC FOIA staff determined 1,278 pages of records were responsive to Plaintiff's FOIA request. The NRC provided Plaintiff a continuing (rolling) production of responsive records, which commenced on May 30, 2018, with a final records production made to Plaintiff on June 29, 2018. USCIS released 551 pages of records to Plaintiff on May 30, 2018, and released an additional 727 pages of records on June 29, 2018. In response to Plaintiff's FOIA request, USCIS released a total of 957 pages of

records in their entirety to Plaintiff. 357 pages were withheld in part subject to various FOIA exemptions.

12. Subsequent to filing this lawsuit, Plaintiff and USCIS engaged in further negotiations to narrow the scope of any disputes. Plaintiff agreed to not challenge USCIS's FOIA records search nor its application of FOIA Exemption 6 (5 U.S.C. § 552 (b)(6)) to any of the withheld records. Plaintiff informed USCIS that it intends to challenge USCIS's application of FOIA Exemptions 5 and 7(E) to the withheld records (5 U.S.C. § 552 (b)(5) and (7)(E)). USCIS only applied FOIA Exemptions 5, 6 and 7(E) to certain records released to Plaintiff in response to its FOIA request.

## *VAUGHN* INDEX

13. USCIS is providing as part of the text of this declaration a *Vaughn* index[1] justifying the FOIA exemptions it applied only on those pages of records that expressly remain in dispute in this litigation. USCIS specifically denotes those pages in the *Vaughn* index, *infra*, by reference to the page numbers of each disputed record, as provided to Plaintiff by USCIS on a compact disc containing .pdf files of the documents. Plaintiff received two such discs from USCIS, one on or about May 30, 2018, and the other on or about June 29, 2018. *See* ¶ 11, *supra*. The *Vaughn* index, which I have reviewed in conjunction with the records and that I incorporate into my Declaration, justifies USCIS's application of Exemptions 5 and 7(E) to the records that remain in dispute in this action. The *Vaughn* index describes the records and withholdings in the order in which they were provided to Plaintiff.

## DESCRIPTION OF FREEDOM OF INFORMATION ACT WITHHOLDINGS

### FOIA Exemption 5

### (codified at 5 U.S.C. § 552(b)(5))

14. FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.*

15. To qualify for Exemption 5 protections, a document must satisfy two conditions. The document's source must be a government agency and it must fall within the ambit of a privilege against discovery recognized under Exemption 5.

16. The three primary and most frequently invoked privileges that have been held to be incorporated into Exemption 5 are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

[1] *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (a *Vaughn* index is a document that agencies prepare in FOIA litigation to describe the withheld records and justify each withholding of information under a FOIA exemption; no specific format is required, it can be, as here, submitted as a Declaration).

17. The most commonly invoked privilege within Exemption 5 is the deliberative process privilege, which is designed to protect the decision making processes of government agencies. The privilege protects not merely documents, but also the integrity of the deliberative process itself where the exposure of that process would result in harm and would have a chilling effect on the ability of the government to engage in internal debate and deliberations when developing agency policy. Agency records produced to Plaintiff that were predecisional and deliberative, as further described herein, were withheld pursuant to Exemption 5's deliberative process privilege.

**FOIA Exemption 7(E)**

**(codified at 5 U.S.C. § 552(b)(7)(E))**

18. FOIA Exemption 7(E) protects from disclosure records or information compiled for law enforcement purposes and would disclose techniques, procedures or guidelines for law enforcement investigations or prosecutions.

19. Exemption 7(E) applies to categorical protections of law enforcement techniques and procedures, and it does not require that the disclosure will cause harm.

20. USCIS has responsibility to enforce federal immigration law pursuant to the INA through its adjudications of applications and petitions submitted to USCIS by individuals seeking immigration benefits from the United States government. Primarily, the records described herein are used to train USCIS immigration officers how to screen for possible terrorism ties and terrorism-related inadmissibility grounds pursuant to the INA when interviewing applicants and adjudicating petitions and applications from individuals seeking immigration benefits from USCIS. Thus, these records were compiled for law enforcement purposes.

21. Exemption 7(E) applies even if the law enforcement procedures or techniques are generally known, as disclosure of the specific procedures or techniques may reduce or nullify their effectiveness.

**A. <u>May 30, 2018, Records Production</u>**

**<u>DESCRIPTION OF RECORDS EXEMPT FROM DISCLOSURE</u>**

22. **Pages 5-7, 16-17, 22- 26, 34-36, 43-46; from November 2015 edition of the USCIS Academy Terrorist-Related Inadmissibility Grounds (TRIG) Instructor Guide.**

These 16 pages of records, which are part of an instructor manual used to train newly hired USCIS immigration officers, were partially withheld pursuant to Exemption 7(E) because these pages describe guidelines as well as techniques and procedures for law enforcement

investigations, *e.g.*, used by USCIS immigration officers to identify terrorist organizations, determine if an individual applicant provided material support to a terrorist organization, carried out a TRIG activity, whether he or she is exempt from TRIG inadmissibility, and describes procedures used to document TRIG exemptions in an individual's alien file. The redacted pages also depict various applicant scenarios encountered by officers in which law enforcement techniques, procedures, and guidelines may be applied to determine if an individual is inadmissible or meets an exemption under TRIG. The release of this information could reasonably be expected to risk the circumvention of law by enabling applicants to tailor their testimony, conceal terrorism ties, and avoid government detection, thus rendering the relevant procedures and guidelines useless. Such records are, therefore, appropriately exempt pursuant to Exemption 7(E).

23. **Pages 52-56; copy of a memorandum, dated February 8, 2017, and entitled "Briefing Memo for the Acting Director: Recommendation to Eliminate the USCIS Terrorism-Related Inadmissibility Grounds (TRIG)," which included a draft copy of a proposed new USCIS policy, entitled "Policy Memorandum: Revised Guidance for Processing Cases Involving Terrorism-Related Inadmissibility Grounds and Elimination of the Hold Policy for Such Cases."**

These five pages of records were partially withheld pursuant to Exemption 5's deliberative process privilege. Exemption 5 protects from disclosure records reflecting internal agency memoranda that are pre-decisional and deliberative in nature. These pages contain discussions and recommendations from USCIS staff to senior agency management regarding the current and future posture of the USCIS TRIG Hold Policy and contain recommendations for senior agency staff regarding a proposed revision to the USCIS TRIG implementation policy. Released portions of this memo describe its purpose as follows: "[t]his paper provides information regarding cases currently being held by USCIS pursuant to the existing USCIS TRIG hold policy and a review of relevant considerations for determining whether these cases should continue to be held or released for adjudication." Included with this internal agency memorandum is a draft copy of a proposed agency policy for revising the way USCIS processes cases involving possible terrorist ties pursuant to TRIG, as set forth in the INA and its implementing regulations. Release of this record would disclose sensitive deliberative and predecisional internal agency discussions related to the TRIG Hold Policy. Disclosure of these sensitive, predecisional and deliberative records could have a chilling effect on the ability of agency personnel to formulate new government policy. Such records are appropriately exempt pursuant to Exemption 5's deliberative process privilege.

24. **Pages 59-63, Senior Policy Council-Briefing Paper: TRIG Exemptions & INA § 318**

These 5 pages of records were partially withheld pursuant to the deliberative process privilege of Exemption 5. This internal agency briefing paper was prepared by agency personnel for senior agency management and discussed specific TRIG exemptions and how they could be interpreted and applied to specific types of applicants who seek immigration

benefits from USCIS. The memo included various scenarios and presented options for action by senior management when making the final agency policy determination. This briefing paper concludes with a specific course of action recommended by the drafters for senior agency management's consideration and final determination on formulation of new agency policy regarding application of TRIG exemptions to cases presented to USCIS immigration officers for adjudication. Disclosure of these sensitive, predecisional and deliberative records could have a chilling effect on the ability of agency personnel to formulate new government policy. Such records are appropriately exempt pursuant to Exemption 5's deliberative process privilege.

25. **Pages 64-70, Options Paper: Exercise of Authority Relating to the Terrorism-Related Inadmissibility Grounds.**

These seven pages of records were partially withheld pursuant to the deliberative process privilege of Exemption 5. This internal agency memorandum was prepared by agency personnel for senior agency management and discussed options for implementing an Executive Order that directed the Secretaries of State and DHS to consider rescinding the TRIG exemptions permitted by Section 212 of the INA (EO 13780 – Protecting the Nation from Foreign Terrorist Entry into the United States, March 9, 2017). Specifically, the paper presented three options for an agency response to the Executive Order. The memorandum presented senior USCIS management with three options for a final agency decision for issuing a new agency policy that implemented the Executive Order. This is a predecisional and deliberative internal agency memorandum that is properly exempt from disclosure pursuant to Exemption 5. Disclosure of these sensitive, predecisional and deliberative records could have a chilling effect on the ability of agency personnel to formulate new government policy.

26. **Pages 78-95, 97-109, Terrorism-Related Inadmissibility Grounds Exemptions – Group-Based Exemptions officer training manual provisions.**

These 31 pages of material from a USCIS immigration officer training manual were partially withheld pursuant to Exemptions 5 and 6.[2] USCIS withdraws Exemption 5 as originally applied to these pages but continues to hold the material as exempt, asserting they are exempt pursuant to Exemption 7(E). The withheld material discusses specific TRIG exemptions for 21 different militant groups that either Congress, the DHS Secretary or the Secretary of State determined should be exempt from application of the TRIG bases for inadmissibility under the INA. In addition, certain situational exemptions were discussed as well, *e.g.* the various support under duress TRIG exemptions and the voluntary medical support exemption. The withheld sections on these pages discuss why these particular groups and situations warrant an exemption from the TRIG bases for inadmissibility. This information is used to train USCIS immigration officers how to correctly grant an applicant

[2] Plaintiff has agreed to not challenge USCIS's application of Exemption 6 to the records in this case, see ¶ 12, *supra*. The "Case Examples" sections on these pages were withheld pursuant to both Exemptions 5 and 6. USCIS withdraws Exemption 5 as applied to the Case Examples sections on these pages but continues to hold these personal records as exempt material pursuant to Exemption 6.

an exemption to the TRIG bases. Such information, if disclosed, could be used by applicants to illegally represent themselves to USCIS immigration officers as being eligible for a TRIG exemption and enable them to obtain immigration benefits, including admission to the United States, to which they are not entitled. The withheld information serves as guidelines as well as techniques and procedures for law enforcement that are utilized by USCIS immigration officers to enforce the INA, and, accordingly, should be exempt from disclosure pursuant to Exemption 7(E).

27. **Pages 125-133, 135-136, 146-153, 157-162, 165-178, 186-196, 206-207, 209, 211, from the USCIS Refugee, Asylum and International Operations Directorate (RAIO) Officer Training - Combined Training course manual on National Security, dated January 24, 2013.**

These 53 pages were withheld in part pursuant to Exemption 7(E). The redacted pages are from a 100 page USCIS training manual on national security. The training manual is used to train newly hired USCIS asylum and refugee officers. The training manual's objectives are to prepare officers to identify national security issues such as when an applicant's activities and associations render him or her a national security concern, including when such concerns may establish a link to a TRIG or other security-related inadmissibility ground or bar.

The partially redacted pages contained information such as sensitive law enforcement database codes used to flag possible terrorist suspects, discussed various indicators used to identify possible national security and terrorism links when screening applicants, issues to probe during applicant interviews and when analyzing their applications and petitions for immigration benefits, discussed when to deny or hold applications due to possible national security concerns, discussed the TRIG standards and when a bar might be assessed to an applicant, and revealed model applicant scenarios that officers might face during applicant encounters and recommended techniques and procedures for processing applicants who pose possible national security/terrorism ties.

The withheld information, if disclosed, could be used by future applicants to tailor their testimony and applications when seeking immigration benefits so they could hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security. The withheld material includes guidelines and techniques and procedures for law enforcement investigations utilized by USCIS immigration officers to screen immigration applicants and thus was appropriately withheld pursuant to FOIA Exemption 7(E).

28. **Pages 234, 242-244, 246-247, 254, 257, 260-264, 270-275, from the USCIS Terrorism Related Inadmissibility Grounds (TRIG) Instructor Guide, created in March 2017. The Guide was prepared by the USCIS Academy Training Center, Federal Law Enforcement Training Center, North Charleston, SC.**

These 18 pages records were partially withheld pursuant to Exemption 7(E) because they are manual sections that describe techniques, procedures, and guidelines used to train USCIS employees to identify terrorist organizations, recognize terrorism-related inadmissibility grounds, recognize whether an individual provides material support to a terrorist group, and recognize applicable TRIG exemptions when processing an individual's application or petition for admissibility or other immigration benefits. The release of this information could reasonably be expected to risk the circumvention of law and render the relevant techniques, procedures, and guidelines useless. The release of this information could be used to tailor an applicant's testimony or conceal his or her record in order to avoid government detection and illegally meet admissibility requirements. Such records are, therefore, appropriately exempt pursuant to Exemption 7(E).

29. **Pages 295-296, 300-304, 309, 311, 313-315, 319-322, from the USCIS Terrorism Related Inadmissibility Grounds (TRIG) Participant Guide, created in March 2017. The Guide was prepared by the USCIS Academy Training Center, Federal Law Enforcement Training Center, North Charleston, SC.**

These 16 pages were partially redacted from the March 2017 version of the TRIG participant guide pursuant to Exemption 7(E). Withheld material consisted of model questions and key words that help USCIS immigration officers screen applicants for possible terrorism ties. Other withheld information consisted of training scenarios that were depicted in the guide's appendix that described potential applicant testimonies and questions officers should ask that were designed to uncover possible terrorism ties. All such information was withheld pursuant to Exemption 7(E), as they are guidelines, techniques and procedures for law enforcement investigations, *e.g.*, enforcement of the INA by USCIS immigration officers.

The withheld information, if disclosed, could be used by future applicants to tailor their testimony and applications when seeking immigration benefits so they could hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security. The withheld material includes guidelines, techniques and procedures for law enforcement investigations utilized by USCIS immigration officers to screen immigration applicants and thus was appropriately withheld pursuant to FOIA Exemption 7(E).

30. **Pages 323-435 consist of slides from a USCIS training PowerPoint presentation entitled Terrorism Related Inadmissibility Grounds (TRIG), Course 234, dated March 21, 2017, prepared by the USCIS Academy, and used to train USCIS immigration officers.[3]**

This PowerPoint presentation, which USCIS produced to Plaintiff in May 2018, was erroneously included in the June 29, 2018, production to Plaintiff as well. Accordingly, USCIS refers the Court to the description of this PowerPoint and its eight withholdings, *infra*, subsection B, ¶ 38, pages 361 – 439, which I adopt and incorporate here by reference.

31. **Pages 469-470, 487-488, 494, 525, 527, 529, consist of slides from an earlier edition (November 2015) of the USCIS training PowerPoint presentation entitled Terrorism Related Inadmissibility Grounds (TRIG), Course 234, which is described at pages 323-435, *supra*, and *infra*, subsection B, ¶ 38, pages 361-439. The PowerPoint presentation was prepared by the USCIS Academy and used to train USCIS immigration officers.[4]**

These eight slides were partially withheld pursuant to Exemption 7(E). This PowerPoint training presentation on TRIG is similar to the other TRIG training PowerPoint presentations described in this index. Its purpose is stated in the PowerPoint presentation, *e.g.*, "Upon completion of this module, you will be able to identify TRIG grounds of inadmissibility and determine whether these grounds apply when adjudicating an application for an immigration benefit." The partially redacted slides identified, *supra*, are replete with specific questions that USCIS immigration officers are trained to ask applicants when screening them for possible ties to terrorism and when assessing TRIG bars. In addition, key words that officers are trained to look for during applicant interviews, which, if noted, could indicate the applicant might be have ties to terrorism, are also redacted. These slides contain details on guidelines, techniques and procedures for law enforcement investigations – in this case, enforcement of the INA by USCIS immigration officers. As such, they are properly withheld pursuant to Exemption 7(E).

The withheld information, if disclosed, could be used by future applicants to tailor their testimony and applications when seeking immigration benefits so they could hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security. The withheld material includes guidelines, technique and procedures for law enforcement investigations utilized by USCIS immigration officers to screen immigration applicants and thus was appropriately withheld pursuant to FOIA Exemption 7(E).

---

[3] Portions of one PowerPoint slide in this presentation, which appears at page 421 of the May 2018 production, were partially withheld pursuant to Exemption 7E, but a copy of the same slide was later released to Plaintiffs in full at page 434 of the June 2018 production, which is described in subsection B, *infra*.

[4] Portions of one PowerPoint slide in this presentation, which appears at page 524 of the May 2018 production, were partially withheld pursuant to Exemption 7E, but a copy of the same slide was later released to Plaintiffs in full at page 434 of the June 2018 production, which is described in subsection B, *infra*. This is another copy of the same PowerPoint slide referenced in n. 3.

All documents provided by USCIS to Plaintiff in the May 2018 records production were carefully reviewed by first-line, then supervisory staff, prior to production. USCIS FOIA staff ensured that all non-exempt, reasonably segregable information was disclosed as required by FOIA. USCIS FOIA staff determined that no further responsive, reasonably segregable information could be disclosed from these records other than the information that was disclosed. Disclosure of any additional information from the records provided would reveal information that is properly exempt from disclosure pursuant to Exemptions 5 and 7(E), as described, *supra*.

**B. June 29, 2018, Records Production**

**DESCRIPTION OF RECORDS EXEMPT FROM DISCLOSURE**

32. **Pages 14-17, 19, 26-27 from 2010 edition of the USCIS BASIC Instructor Guide manual on Terrorism-Related Grounds of Inadmissibility (BASIC is the USCIS basic immigration law and agency adjudication procedures course for newly hired USCIS Immigration Service Officers).**

These seven pages from the 2010 BASIC course instructor guide were partially withheld pursuant to Exemption 7(E). The withheld portions of the guide, which was used by instructors to train newly hired USCIS immigration officers, instructs the officers on how to determine whether an applicant might be inadmissible due to suspected ties to terrorist groups or terrorist activities, *e.g.* triggering application of the Terrorism-Related Grounds of Inadmissibility (TRIG) found in section 212 of the Immigration and Nationality Act (INA), which is enforced by USCIS and its officials. The redacted sections contain specific examples for issue spotting during applicant interviews that could trigger assessment of a TRIG bar to admission, *e.g.* material support for terrorism questions that should be asked and topics to cover during questioning; suggestions on how to spot possible terrorist activities by looking for certain key words used by applicants in their immigration interviews and applications; and TRIG specific model questions that USCIS immigration officers should ask when interviewing applicants.

The withheld information, if disclosed, could be used by future applicants to tailor their testimony and applications when seeking immigration benefits so they could hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security. The withheld material is guidelines as well as a technique and procedure for law enforcement investigations utilized by USCIS immigration officers to screen immigration applicants and thus was appropriately withheld pursuant to FOIA Exemption 7(E).

33. **Pages 47, 49-51, 58-59 from 2010 edition of the USCIS BASIC Participant (student) Guide manual on Terrorism-Related Grounds of Inadmissibility.**

These six pages from the 2010 BASIC course participant guide were partially withheld pursuant to Exemption 7(E). The withheld portions of the guide, which was used by students taking the newly hired USCIS immigration officers' BASIC course, instructs the student officers on how to determine whether an applicant might be inadmissible due to suspected ties to terrorist groups or terrorist activities, *e.g.* triggering application of the Terrorism-Related Grounds of Inadmissibility (TRIG) found in section 212 of the Immigration and Nationality Act (INA), which is enforced by USCIS and its officials. The redacted sections contain specific examples for issue spotting during applicant interviews that could trigger assessment of a TRIG bar to admission, *e.g.* material support for terrorism questions that should be asked and topics to cover during questioning; suggestions on how to spot possible terrorist activities by looking for certain key words used by applicants in their immigration interviews and applications; and TRIG specific model questions that USCIS immigration officers should ask when interviewing applicants. Other withheld sections inform officers on how to assess whether an applicant might be eligible for an exemption to a TRIG bar and how to complete agency records documenting the requirements for determining a whether a TRIG exemption applies.

The withheld information, if disclosed, could be used by future applicants to tailor their testimony and applications when seeking immigration benefits so they could hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security. The withheld material is a technique and procedure for law enforcement investigations utilized by USCIS immigration officers to screen immigration applicants and thus appropriately withheld pursuant to FOIA Exemption 7(E).

34. **Pages 107-108, 114-115, 124, 146 – 147, 150-152, 154 from a 104 slide USCIS training PowerPoint presentation prepared in May 2010 that was used by USCIS instructors during training of USCIS immigration officers on how and when to determine whether to apply a INA § 212 TRIG bar to a particular applicant seeking immigration benefits.**

The 11 PowerPoint slides on these pages were partially withheld pursuant to Exemption 7(E). As stated in the PowerPoint presentation, its training objective was to assist USCIS immigration officers, when making immigration adjudications, and on how to "identify the terrorist-related grounds of inadmissibility, determine the applications barred, and identify the exceptions to the bars." These training slides were used to train USCIS immigration officers on how to enforce the INA, namely determine whether INA § 212 TRIG bars applied that would bar an applicant from receiving immigration benefits from the U.S. government and that could lead to a determination that the individual was inadmissible and lead to his or her removal from the U.S. They are guidelines, techniques, and procedures for

law enforcement investigations, *e.g.* immigration adjudications by USCIS immigration officers, and were properly withheld pursuant to Exemption 7(E). Withheld information discussed testimony or evidence that an applicant could provide that indicates material support for a terrorist group, follow-up questions that immigration officers should ask when they spot issues in testimony that could trigger a TRIG bar, factors to be used to identify possible participation by an applicant with a terrorist group, and how to identify information supplied by an applicant that could make him or her eligible for an exemption to a TRIG bar. All withheld information is critical to government screening for potential terrorism ties and as such, is an essential part of our national security vetting process and should be protected from disclosure to the public.

The withheld information, if disclosed, could be used by future applicants to tailor their testimony and applications when seeking immigration benefits from USCIS so they could hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security. The withheld material is guidelines, techniques, and procedure for law enforcement investigations utilized by USCIS immigration officers to screen immigration applicants and thus appropriately withheld pursuant to FOIA Exemption 7(E).

35. **Pages 200, 228, 232, 236, 239, 242 from a 72 slide USCIS training PowerPoint presentation entitled Terrorism Related Inadmissibility Grounds (TRIG) Training, and was presented at the USCIS Academy on May 9, 2012, to USCIS immigration service officers.**

The six partially redacted slides identified, *supra*, were part of a TRIG training delivered to USCIS immigration officers. The training was meant to help new USCIS officers identify basic principles of TRIG and learn to identify situations during applicant encounters when TRIG bars could apply, based on the information provided by applicants seeking immigration benefits from USCIS. Sections of the slides withheld included key words used by applicants that could identify their associations with terrorist groups; key words used by applicants that could identify possible material support to a terrorist group that could trigger a TRIG bar; factors to consider when evaluating an applicant that could warrant granting an exemption from a TRIG bar; factors to consider when determining whether to grant an exemption for material support to a terrorist group; factors to consider when determining whether one's military training might not be sufficient to warrant a TRIG bar; as well as other key words and situations that could warrant additional exemptions from TRIG bars. All of the withheld factors and key words on the redacted PowerPoint slides are guidelines as well as techniques and procedures that USCIS immigration officers utilize to enforce the INA. These records are compiled for law enforcement purposes and are appropriately exempt from disclosure pursuant to Exemption 7(E).

The withheld information, if disclosed, could be used by future applicants to tailor their testimony and applications when seeking immigration benefits from USCIS so they could

hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security. The withheld material serves as guidelines as well as techniques and procedures for law enforcement investigations utilized by USCIS immigration officers to screen immigration applicants and thus was appropriately withheld pursuant to FOIA Exemption 7(E).

36. **Pages 259-260, 262-263, 264-267, and 272 from the 2012 edition of the USCIS BASIC Instructor Guide manual on Terrorism-Related Grounds of Inadmissibility.**

This USCIS instructor guide is similar to the 2010 USCIS instructor guide described, *supra*, paragraph 30, pages 14-17, 19, 26-27 of the records provided to Plaintiff. These nine pages from the 2012 BASIC course instructor guide were partially withheld pursuant to Exemption 7(E). The withheld portions of the guide, which was used by instructors to train newly hired USCIS immigration officers, instructs the officers on how to determine whether an applicant might be inadmissible due to suspected ties to terrorist groups or terrorist activities, *e.g.* triggering application of the Terrorism-Related Grounds of Inadmissibility (TRIG) found in section 212 of the Immigration and Nationality Act (INA), which is enforced by USCIS and its officials. The redacted sections contain specific examples for issue spotting during applicant interviews that could trigger assessment of a TRIG bar to admission, *e.g.* material support for terrorism questions that should be asked and topics to cover during questioning; suggestions on how to spot possible terrorist activities by looking for certain key words used by applicants in their immigration interviews and applications; and TRIG specific model questions that USCIS immigration officers should ask when interviewing applicants.

The withheld information, if disclosed, could be used by future applicants to tailor their testimony and applications when seeking immigration benefits so they could hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security. The withheld material serves as guidelines as well as techniques and procedures for law enforcement investigations utilized by USCIS immigration officers to screen immigration applicants and thus was appropriately withheld pursuant to FOIA Exemption 7(E).

37. **Pages 297-298, 300-305, 310 from the 2012 edition of the USCIS BASIC Participant (student) Guide manual on Terrorism-Related Grounds of Inadmissibility (BASIC is the USCIS basic immigration law and agency adjudication procedures course for newly hired USCIS Immigration Service Officers).**

This USCIS BASIC course participant guide is a subsequent edition of the same guide described, *supra*, paragraph 31, pages 47, 49-51, 58-59. These nine pages from the 2012 BASIC course participant guide were partially withheld pursuant to Exemption 7(E). The

withheld portions of the guide, which was used by students taking the newly hired USCIS immigration officers' BASIC course, instructs the student officers on how to determine whether an applicant might be inadmissible due to suspected ties to terrorist groups or terrorist activities, *e.g.* triggering application of the Terrorism-Related Grounds of Inadmissibility (TRIG) found in section 212 of the Immigration and Nationality Act (INA), which is enforced by USCIS and its officials. The redacted sections contain specific examples for issue spotting during applicant interviews that could trigger assessment of a TRIG bar to admission, *e.g.* material support for terrorism questions that should be asked and topics to cover during questioning; suggestions on how to spot possible terrorist activities by looking for certain key words used by applicants in their immigration interviews and applications; and TRIG specific model questions that USCIS immigration officers should ask when interviewing applicants. Other withheld sections inform officers on how to assess whether an applicant might be eligible for an exemption to a TRIG bar and how to complete agency records documenting the requirements for determining a whether a TRIG exemption applies.

The withheld information, if disclosed, could be used by future applicants to tailor their testimony and applications when seeking immigration benefits so they could hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security. The withheld material serves as guidelines as well as techniques and procedures for law enforcement investigations utilized by USCIS immigration officers to screen immigration applicants and thus was appropriately withheld pursuant to FOIA Exemption 7(E).

38. **Pages 361-362, 387-388, 396, 435, 437, 439 from a 131 slide USCIS training PowerPoint presentation entitled Terrorism Related Inadmissibility Grounds (TRIG), Course 234, dated March 21, 2017, prepared by the USCIS Academy, and used to train USCIS immigration officers.**

These eight slides were partially withheld pursuant to Exemption 7(E). This PowerPoint training presentation on TRIG is similar to the other TRIG training PowerPoint presentations described, *supra.* Its purpose is stated in the PowerPoint presentation, "Upon completion of this module, you will be able to identify TRIG grounds of inadmissibility and determine whether these grounds apply when adjudicating an application for an immigration benefit." The partially redacted slides are replete with specific questions that USCIS immigration officers are trained to ask applicants when screening them for possible TRIG bars. In addition, key words that officers are trained to look for during applicant interviews, which, if noted, could indicate the applicant might be denied due to TRIG issues, are also redacted. These slides contain details on guidelines and techniques and procedures for law enforcement investigations – in this case, enforcement of the INA by USCIS immigration officers. As such, they are properly withheld pursuant to Exemption 7(E).

The withheld information, if disclosed, could be used by future applicants to tailor their testimony and applications when seeking immigration benefits so they could hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security. The withheld material serves as guidelines as well as techniques and procedures for law enforcement investigations utilized by USCIS immigration officers to screen immigration applicants and thus was appropriately withheld pursuant to FOIA Exemption 7(E).

39. **Pages 475-476, 483-485, 488-489, 495-497, 501-504, 510-515 from the 2017 edition of the Terrorism Related Inadmissibility Grounds (TRIG) Instructor Guide, revision date May 2017. Guide prepared by the USCIS Academy Training Center, Federal Law Enforcement Training Center, North Charleston, SC.**

These 20 pages were partially redacted from the 2017 version of the TRIG instructor guide pursuant to Exemption 7(E). The 2017 version of the TRIG instructor guide is similar to the earlier editions of the same guide described in this index. Besides model questions and key words that were withheld because they are guidelines and techniques and procedures used by USCIS immigration officers to screen applicants for possible terrorism ties, training scenarios depicted in the guide's appendix, that described potential applicant testimonies and questions officers should ask, that were designed to uncover possible terrorism ties, were also withheld pursuant to Exemption 7(E), as they too are guidelines and techniques and procedures for law enforcement investigations.

The withheld information, if disclosed, could be used by future applicants to tailor their testimony and applications when seeking immigration benefits so they could hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security. The withheld material includes guidelines and technique and procedures for law enforcement investigations utilized by USCIS immigration officers to screen immigration applicants and thus was appropriately withheld pursuant to FOIA Exemption 7(E).

40. **Pages 529-530, 534-537, 541-542, 544-546, 550-553 from the 2017 edition of the Terrorism Related Inadmissibility Grounds (TRIG) Participant Guide, revision date May 2017. Guide prepared by the USCIS Academy Training Center, Federal Law Enforcement Training Center, North Charleston, SC.**

These 15 pages were partially redacted from the 2017 version of the TRIG participant guide pursuant to Exemption 7(E). The 2017 version of the TRIG participant guide is similar to the earlier editions of the same guide described in this index. Besides model questions and key words that were withheld because they are guidelines and techniques and procedures used by USCIS immigration officers to screen applicants for possible terrorism

ties, training scenarios depicted in the guide's appendix, that described potential applicant testimonies and questions officers should ask, that were designed to uncover possible terrorism ties, were also withheld pursuant to Exemption 7(E), as they too are guidelines and techniques and procedures for law enforcement investigations.

The withheld information, if disclosed, could be used by future applicants to tailor their testimony and applications when seeking immigration benefits so they could hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security. The withheld material includes guidelines and technique and procedures for law enforcement investigations utilized by USCIS immigration officers to screen immigration applicants and thus was appropriately withheld pursuant to FOIA Exemption 7(E).

41. **Pages 568-577, 580-581, 585, 593, 596-601, 605-606, 608, 610-612, 614-617, 621-635, 641-644, 646-653 from the USCIS Refugee, Asylum and International Operations Directorate (RAIO) Officer Training - Combined Training course manual on National Security, revised Oct. 26, 2015.**

These 56 pages were withheld in part pursuant to Exemption 7(E). The partially redacted pages are from a 102 page USCIS training manual on national security. The training manual is used during training for newly hired USCIS asylum and refugee officers. The training manual states the training objectives during the national security course are to prepare officers to identify national security issues such as when an applicant's activities and associations render him or her a national security concern, including when such concerns may establish a link to a TRIG or other security-related inadmissibility ground or bar.

The partially redacted pages contained information such as law enforcement database codes used to flag possible terrorist suspects, discussed various indicators used to identify possible national security and terrorism links when screening applicants, issues to cover during applicant interviews and when analyzing their applications and petitions for immigration benefits, discussed when to deny or hold applications due to possible national security concerns, , discussed the TRIG standards and when a bar might be assessed to an applicant, and revealed model applicant scenarios that officers might face during applicant encounters and recommended techniques and procedures for processing applicants who pose possible national security/terrorism ties.

The withheld information, if disclosed, could be used by future applicants to tailor their testimony and applications when seeking immigration benefits so they could hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security. The withheld material includes guidelines and techniques and procedures for law enforcement investigations utilized by USCIS immigration officers to screen immigration

applicants and thus was appropriately withheld pursuant to FOIA Exemption 7(E).

All documents provided by USCIS to Plaintiff in the June 2018 records production were carefully reviewed by first-line, then supervisory staff, prior to production. USCIS FOIA staff ensured that all non-exempt, reasonably segregable information was disclosed as required by FOIA. USCIS FOIA staff determined that no further responsive, reasonably segregable information could be disclosed from these records other than the information that was disclosed. Disclosure of any additional information from the records provided would reveal information that is properly exempt from disclosure pursuant to Exemption 7(E), as described, *supra*.

## CONCLUSION

42. As described in my Declaration, USCIS properly processed Plaintiff's FOIA request and provided all responsive, reasonably segregable, non-exempt information. For these reasons, USCIS's actions in response to Plaintiff's FOIA request were in full compliance with FOIA. Therefore, Plaintiff's Complaint should be dismissed.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed in Lee's Summit, Missouri on this 14th day of March 2019.

JILL A. EGGLESTON
Associate Center Director
Freedom of Information Act and Privacy Act Unit
USCIS National Records Center

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.<br><br>Defendants. | Civil Action No. 1:17-CV-07572-ALC |

**SECOND DECLARATION OF TONI FUENTES**
**IN SUPPORT OF THE U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

I, Toni Fuentes, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Deputy Officer of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since September 30, 2018, and am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C. § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I have held numerous FOIA positions over the past 20 years, including: FOIA Director for the National Protection and Programs Directorate ("NPPD") at the U.S. Department

of Homeland Security ("DHS"); Government Information Specialist for Department of Justice, U.S. Marshal's Service, Office of General Counsel; Government Information Specialist for the Department of Defense, Office of the Inspector General's FOIA Office; FOIA Officer, Paralegal Specialist for Department of the Navy, NAVAIR/NAWCAD's Office of Counsel; Management and Program Analyst for Department of Homeland Security, Customs and Border Protection's FOIA Office; and FOIA Paralegal Specialist for the National Aeronautics and Space Administration's Office of Chief Counsel.

    2.     The ICE FOIA Office is responsible for processing and responding to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. The ICE FOIA Office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

    3.     My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office. The ICE FOIA Office is responsible for the receipt, processing, and response to all FOIA and Privacy Act requests received at ICE. I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE. Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act. In that respect, I am familiar with ICE's processing of the FOIA request dated August 7, 2017, that the Knight First Amendment Institute at Columbia University ("Knight Institute" or "Plaintiff") submitted to ICE, which is the subject of this litigation.

    4.     I make this declaration in my official capacity in support of ICE's motion for partial summary judgment in the above-captioned action. The statements contained in this declaration

are based upon my personal knowledge, my review of records kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties. The documents attached hereto are kept by ICE in the ordinary course of its business activities.

5. This declaration, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), provides a description of how ICE withheld portions of the records located in response to the Plaintiff's FOIA request and an explanation of the basis for withholding portions of pages, in part or in whole, pursuant to Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E) of the FOIA.

## II. PLAINTIFF'S FOIA REQUEST

6. As explained in my First Declaration, dated February 26, 2019, in a letter dated August 7, 2017, Knight Institute submitted the following request:

> 1. All directives, memoranda, guidance, emails, or other communications sent by the White House to any federal agency since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude or remove individuals from the United States.
>
> 2. All memoranda concerning the legal implications of excluding or removing individuals from the United States based on their speech, beliefs, or associations.
>
> 3. All legal or policy memoranda concerning the endorse or espouse provisions, or the foreign policy provision as it relates to "beliefs, statements or associations."
>
> 4. All records containing policies, procedures, or guidance regarding the application or waiver of the endorse or espouse provisions or the foreign policy provision. Such records would include policies, procedures, or guidance concerning the entry or retrieval of data relevant to the endorse or espouse provisions or the foreign policy provision into or from an electronic or computer database.

5. All Foreign Affairs Manual sections (current and former) relating to the endorse or espouse provisions or the foreign policy provision, as well as records discussing, interpreting, or providing guidance regarding such sections.

6. All records concerning the application, waiver, or contemplated application or waiver of the endorse or espouse provisions to exclude or remove individuals from the United States, or the application, waiver, or contemplated application or waiver of the foreign policy provision to exclude or remove individuals from the United States based on "beliefs, statements or associations," including:

   a. Statistical data or statistical reports regarding such application, waiver, or contemplated application or waiver;

   b. Records reflecting the application, waiver, or contemplated application or waiver of the endorse or espouse provisions or foreign affairs provision by an immigration officer, a border officer, a Department of Homeland Security official, or a Department of Justice official;

   c. Records concerning any determination made by the Attorney General pursuant to 8 U.S.C. § 1225(c) regarding the admissibility of arriving aliens under the endorse or espouse provisions or the foreign policy provision;

   d. Department of Homeland Security and Department of Justice records concerning consultation between the Secretary of State, the Secretary of Homeland Security, and/or the Attorney General (or their designees) relating to any waiver or contemplated waiver of the endorse or espouse provisions pursuant to 8 U.S.C. §§ 1158(b)(2)(v), 1182(d)(3)(A), or 1182(d)(3)(B)(i); and

   e. Notifications or reports from the Secretary of Homeland Security or the Secretary of State

concerning waivers of the endorse or espouse provision pursuant to 8 U.S.C. §1182(d)(3)(B)(ii).

. . . .

## III. ICE'S RESPONSE TO THE REQUEST

7. Also as described in my First Declaration, in an email to Knight Institute, dated August 23, 2017, the ICE FOIA Office acknowledged receipt of the FOIA request and stated that due to increasing number of FOIA requests, there may some delay in processing the request. The email assigned an ICE FOIA case number to Knight Institute's FOIA request ("2017-ICFO-43023").

8. On October 4, 2017, Knight Institute filed a complaint in the United States District Court for the Southern District of New York. Dkt. 1, Compl.

9. Through discussions with plaintiff, ICE began producing documents responsive to the FOIA request, which consisted of policy documents, correspondence and accompanying attachments to and from employees in ICE's Office of the Principal Legal Advisor ("OPLA"), Enforcement and Removal Operations ("ERO"), the Office of Policy ("Policy"), and the Office of the Director. *See* Dkt. No. 48 at ¶ C(g).

10. In June 2018, Knight Institute agreed to narrow the scope of records to only final policy guidance or memoranda and to exclude all email correspondence (the "Narrowed Request"), and ICE agreed to re-review the collected documents to identify materials responsive to the Narrowed Request. *See* Dkt. No. 64. As a result of that re-review, ICE determined that 99 pages of documents were responsive to the Narrowed Request; ICE released 50 pages in whole or in part

on July 3, 2018, and referred 49 pages to other agencies, which were released on whole or in part on August 3, 2018. *See* Dkt. No. 77.

11. In total, the ICE FOIA Office reviewed the collected documents and released four productions, concluding in July 2018, resulting in a total of 2,574 pages produced to Knight Institute responsive both to the original FOIA request and the Narrowed Request, applying withholdings pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E). Records that were referred to other agencies were also produced to Knight Institute.

## IV. ORGANIZATION OF THE VAUGHN INDEX

12. The enclosed *Vaughn* Index, attached as Exhibit A, encompasses production releases in September 2017, and in March, April, and July of 2018, which provides a description of specified redactions and correlates each redaction to the corresponding exemption applied.

13. Each record has been assigned a Document Identification number (or bates stamp number, located at the bottom right hand side of every page) associated with that record. This number is located in the first column of the *Vaughn* Index. The second column identifies whether the records were redacted in full or in part. Column three is titled "Description of Records and Redactions, and Reasons for Redactions." Within this column, the Plaintiff will find a description of the record, a description of the type of information that was redacted, and the reason for the redaction. Specifically, this column highlights the personal privacy and/or law enforcement interests found within the record and the harm that could occur, should the record be released. Finally, the fourth column of the *Vaughn* Index contains the statutory exemption(s) applied to the redaction(s) within the record(s).

14. A *Vaughn* Index is provided for Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). *A true and correct copy of Defendant's Vaughn Index is attached at Exhibit A.*

**A. Description of Records Released to the Plaintiff by ICE**

15. The two thousand five hundred and seventy-four (2,574) pages of records released to the Plaintiff originated from the ICE Office of Enforcement and Removal Operations (ERO), the ICE Office of Policy, the ICE Office of the Principal Legal Advisor (OPLA), and the ICE Director's Office. A complete description of these documents, and the bases for the withholding of information in said documents, is detailed in ICE's *Vaughn* Index.

## V. WITHHOLDINGS ASSERTED BY ICE PURSUANT TO FOIA EXEMPTIONS

**A. 5 U.S.C. § 552 EXEMPTION 5**

16. Exemption 5 of the FOIA allows the withholding of inter- or intra-agency records that are normally privileged in the civil discovery context. Pursuant to Exemption (b)(5), the three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

17. ICE applied FOIA Exemption (b)(5) to protect from disclosure documentation subject to the deliberative process privilege and attorney-client privilege. Specifically, ICE withheld internal discussions consisting of comments and proposed edits of draft memoranda and legislations, and discussion among ICE employees regarding ICE policy statements.

18. The aforementioned, withheld communications and records are non-final and pre-decisional in nature; these communications contemplate: (1) potential immigration enforcement actions, (2) content of employee guidance, (3) details of agreements with state and local entities,

and (4) possible content of public statements regarding official ICE positions and policies. The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, preliminary conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. This would result in a chilling effect on intra- and inter-agency communications. ICE employees must be able to discuss proposed agency action freely. Further, if draft, un-finalized responses to media inquiries, and draft information regarding agency policies and enforcement actions were released, the public could potentially become confused regarding ICE's mission, priorities, and enforcement activities.

19. Specifically, emails originating from OPLA regarding draft, proposed responses to inquiries from federal agencies involve communications between subordinate and supervisory employees at ICE. These communications set forth the questions posed to ICE, proposed answers, and summaries of internal meetings, for consideration in evaluating draft responses. The pre-decisional emails also involve deliberation between supervisory employees representing different offices or divisions within ICE. These emails provided non-final opinions regarding the appropriate ICE response to questions posed by federal agencies.

20. Emails originated by OPLA containing substantive comments regarding policy considerations and enforcement guidance, as well as status updates to supervisory ICE employees inform the appropriate decision maker(s) within ERO and the Director's Office regarding the merits of the proposed memoranda and legislation. In the responsive documents, supervisory employees additionally provided feedback and questions to subordinates regarding their proposed

comments. The withheld email contents are protected by the deliberative process privilege, as release of these communications would expose ICE's decision-making process in such a way as to inhibit the free exchange of information among agency personnel.

21. The attorney-client privilege applies to a category of records that contains confidential communications between an ICE attorney and his/her client (employees in ERO and the Director's Office) relating to a legal matter for which the client has sought professional advice. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.

22. Furthermore, certain information has been withheld pursuant to the work product privilege, which protects documents and other memoranda prepared by an attorney in contemplation of litigation. The redacted portions contain material prepared by agency attorneys concerning pending or possible litigation in immigration and federal court. Disclosure of this information would release specific legal notes, guidance, analysis and strategy involving pending or anticipated litigation.

**B. 5 U.S.C. § 552 EXEMPTION 6**

23. Exemption 6 of the FOIA allows the withholding of personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of

personal privacy. Records that apply to or describe a particular individual, including investigative records, qualify as "personnel," "medical," or "similar files" under Exemption 6. When applying this exemption to responsive documentation, the agency must balance the individual's personal privacy interest against the public need for the information.

24.     ICE applied FOIA Exemption (b)(6) to protect from disclosure the names, phone numbers, email addresses, physical work locations, and other personally identifiable information (PII) of ICE law enforcement officers, and other ICE employees (such as, employees in ERO, OPLA or the Office of Policy). With respect to aliens and third parties (such as, family members of aliens or witnesses), PII such as names, dates of birth, home addresses, social security numbers, alien numbers, driver's license numbers, and passport numbers were redacted from the responsive documentation. In some instances, redacted information related to an individual's immigration application(s) and corresponding documentation submitted to DHS/ICE, the release of which would reveal the individual's identity, as well as to PII pertaining to their family members and protected information (i.e. information regarding asylum applications). For a complete listing of all material withheld pursuant to FOIA Exemption (b)(6), please see Defendant's Vaughn index at Exhibit A.

25.     The disclosure of such sensitive PII to the public could subject law enforcement officers and other government personnel to harassing telephone calls and unwarranted hostility, which could disrupt and impede official law enforcement activity. Law enforcement officers handle a myriad of tasks relating to the enforcement of federal immigration law, including the investigation of noncitizens who may be illegally present in the United States. Law enforcement officers, federal government employees, and state government employees have a privacy interest

in not being targeted by individuals who may begrudge them for ICE affiliation. The privacy interests of law enforcement officers and government personnel in the information contained in the records outweighs any minimal public interest in the disclosure of the information. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Further, Plaintiff has not articulated a public interest or public need to justify release of this information.

26. Similarly, the disclosure of alien and third-party information to the public could constitute an unwarranted invasion of personal privacy and subject the individuals to embarrassment, harassment, and undue public attention. Aliens and third-party individuals have a colorable privacy interest in protecting and controlling their personally identifiable information. The individuals' privacy interest in the information contained in the record outweighs any minimal public interest in the disclosure of the information. Plaintiff has not articulated a sufficient public interest or public need to justify release of this information. Moreover, the aliens and third parties referenced in the records have not consented to the release of their PII.

**C. 5 U.S.C. § 552 EXEMPTION 7 THRESHOLD**

27. Exemption 7 establishes a threshold requirement, which must be met in order for certain information in the records subject to this litigation to be withheld on the basis of subparts (b)(7)(A), (b)(7)(C), and (b)(7)(E). Specifically, the redactions at issue must be contained within a record of information compiled for a law enforcement purpose.

28. The information for which FOIA Exemption (b)(7) has been asserted in the instant matter satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act, codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the

administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. See 8 U.S.C. § 1103. ICE is the largest investigative arm of DHS, and is responsible for identifying and eliminating vulnerabilities within the nation's borders. ICE is tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises. The records at issue in this matter pertain to ICE's immigration enforcement actions and information sharing with state entities in support of ICE's mission.

**D. 5 U.S.C. § 552 (B)(7)(C)**

29. 5 U.S.C § 552 (b)(7)(C) is applied to protect from disclosure records or information compiled for a law enforcement purpose, to the extent that release of the information could reasonably be expected to constitute an unwarranted invasion of personal privacy. Prior to asserting this exemption, consideration was given to the strength and nature of any third-party privacy interests in ICE's law enforcement files. Having determined that the records at issue were compiled for law enforcement purposes, and third-party privacy interests existed in the documentation, the ICE FOIA Office then considered whether release of the information served to inform the public about ICE's performance of its statutory mission.

30. ICE applied Exemption (b)(7)(C) to withhold the names, signatures, phone numbers, email addresses, physical work locations, and ICE employees (such as, employees in OPLA, ERO, or the Office of Policy). The disclosure of such sensitive PII could subject ICE employees to harassing telephone calls and unwarranted hostility, which could disrupt and impede official law enforcement activity. Law enforcement officers handle a myriad of tasks relating to the enforcement of federal immigration law, including the investigation of noncitizens who may

be illegally present in the United States. Law enforcement officers have a privacy interest in not being targeted by individuals who may begrudge them for ICE affiliation. Plaintiff failed to articulate a public interest or public need for the release of data such as names, phone numbers, email addresses, and physical work locations of federal and state government employees. The disclosure of this PII serves no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities.

31. With respect to aliens and third parties, names, dates of birth, home addresses, social security numbers, alien numbers, and passport numbers were redacted from the responsive documentation. Additionally, large amounts of text were withheld; this redacted information relates to an individual's immigration application(s) and supporting documentation submitted to DHS/ICE, the release of which would reveal the individual's identity. For a complete listing of all material withheld pursuant to FOIA Exemption (b)(7)(C), please see Defendant's Vaughn index.

32. The disclosure of alien and third-party information could constitute an unwarranted invasion of personal privacy and subject the individuals to embarrassment, harassment, and undue public attention. Such information, if disclosed to the public or to a third-party requester without the permission of the individual alien, could expose the alien to identity theft and may reasonably lead to unwanted contact from persons that might seek to harm the individual alien (or his or her relatives, including minor children) due to the individual's immigration status in the United States.

33. Furthermore, aliens and third-party individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes. The identities of persons named in law enforcement files

(whether or not the named individual is the target of investigations or law enforcement actions) are properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C) in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement files. The individuals' privacy interest in the information contained in the record outweighs any minimal public interest in the disclosure of the information. Plaintiff has not articulated a sufficient public interest or public need to justify release of this information. The disclosure of this PII serves no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities. Finally, the aliens and third-parties mentioned in the law enforcement records did not consent to the disclosure of their PII.

**E. 5 U.S.C. § 552 (b)(7)(E)**

34. This exemption protects from disclosure information compiled for law enforcement purposes where release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions," or where it would "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

35. ICE applied FOIA Exemption (b)(7)(E) to protect from disclosure investigative techniques and law enforcement procedures including the following: internal URLs, IP addresses, passcodes, internal acronyms, access codes to law enforcement teleconferences, the names of internal data sharing systems, computer codes and commands, and case numbers. FOIA Exemption (b)(7)(E) was asserted to withhold internal identifying numbers that did not originate from ICE (such as, FBI case numbers). For a complete listing of all material withheld pursuant to FOIA Exemption (b)(7)(E), please see Defendant's Vaughn index at Exhibit A.

36. Disclosure of internal computer codes, commands, acronyms, and access codes could assist unauthorized parties in deciphering the meaning of the codes, commands, or acronyms, gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the law enforcement database. Disclosure of these techniques and practices for navigating law enforcement databases could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations.

37. Law enforcement database codes, to include administrative and computer codes, serve a dual purpose. The codes are not only used for the purposes of indexing, storing, locating, and retrieving information, but also serve to provide information about the investigation. Specifically, this information could identify the type and location of the case, the scope and size of the investigation, agency resources utilized for the investigation, type of activity under investigation, and location of investigative efforts. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is executing its statutory responsibilities.

38. Disclosure of the internal processes for law enforcement to access and utilize the agency's databases could assist unauthorized parties in gaining improper access to the database and assist in the unauthorized party's navigation of the database. If an unauthorized party obtains access to a database where law enforcement records are housed, he or she could modify data in circumvention of law enforcement efforts.

## VI. SEGREGABILITY

39. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

40. My staff, under my supervision, has reviewed each record line-by-line to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

41. With respect to the records that were released in part, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released.

## VII. JURAT CLAUSE

42. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Signed this 15th day of March 2019.

Toni Fuentes, Deputy FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

***Knight First Amendment Institute v. Department of Homeland Security, et. al.***

Case No. 17-cv-07572 (S.D.N.Y.)

U.S. Immigration and Customs Enforcement *Vaughn* Index

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2017-ICFO-43023<br>September 29, 2017<br>Production<br><br>Pages<br>30,31,32,52,54,63,64,<br>65,70,72,75,77,78,80,86<br>,100,116,136,146,151,<br>154,155,156,158,165,<br>176,185,200,202,211,<br>212,213,218,219,220,<br>223,225,226,228,234,<br>235,249,264,284,287,<br>294,299,302,302,303,<br>304,306,313,324,326,<br>327,333,348,350,359,<br>360,361,366,367,368,<br>372,374,376,382,383,<br>386,397,412,436,442,<br>447,451,452,455,461,<br>472,475,476,482,497,<br>499,508,509,510,515,<br>516,517,521,523,525,<br>531,532,535,539,546,<br>561,585,591,596,600,<br>601,604,610,621,631,<br>646,649,658,659,734,<br>741,746,751,760,773,<br>774,780,795,797,806,<br>807,808,813,814,815,<br>819,821,823,829,830,<br>833,844,859,883,889,<br>894,898,899,902,908,<br>919,929,944,947,956,<br>957,1032,1039,1049,<br>1058,1071,1073,1095, | Partial | **Document:** Draft legislation containing comments to language regarding border security, immigration and law enforcement personnel, emergency port of entry and infrastructure spending, etc. The document is labeled as a "Draft Copy" in the header of each page.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 1104,1105,1106,1111, 1112,1113,1119,1121, 1127,1128,1131,1142, 1157,1181,1187,1192, 1196,1197,1200,1206, 1217,1227,1242,1245, 1254,1255,1269,1270, 1330,1337,1342,1347, 1356,1369,1370,1376, 1391,1393,1402,1403, 1404,1409,1410,1411, 1415,14171419,1425, 1426,1429,1440,1455, 1479,1485,1490,1494, 1495,1498,1504,1515, 1525,1540,1543,1552, 1553,1567,1568,1628, 1635,1640,1645,1654 | | | |
| 2017-ICFO-43023 September 29, 2017 Production<br><br>Pages 30-1,666 | Full | **Document:** Draft legislation regarding border security, immigration and law enforcement personnel, emergency port of entry and infrastructure spending, etc. The document is labeled as a "Draft Copy" in the header of each page.<br><br>**Redactions**: The information withheld throughout the document under (b)(5) contains proposed legislative language that was under review and being changed as ICE offices and ICE employees provided edits, comments, and recommendations on the proposed draft.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2018-ICAP-00118<br><br>Pages 18-19 | Partial | **Document:** Internal email between ICE employees discussing review of and edits to draft PowerPoint presentation titled Immigration Priorities slideshow.<br><br>**Redactions**: The information withheld in the email under (b)(5) contains proposed edits that were under review and being changed as ICE offices and ICE employees provided edits, comments, and recommendations on the proposed draft.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Pages 21-26 | Partial | **Document:** Draft memorandum of agreement (MOA) between ICE Enforcement and Removal (ERO) Miami Field Office and the American Federal of Government Local 527 employees. The MOA's purpose is to establish a pilot training program for newly hired Deportation Officers in the Miami Field Office. The document is watermarked "DRAFT."<br><br>**Redactions**: The information withheld in the document under (b)(5) contains proposed edits that were under review and being changed as ICE offices and ICE employees provided edits, comments, and recommendations on the proposed draft.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 2018-ICAP-00118<br><br>Page 50 | Partial | **Document:** Internal email between ICE employees drafting and discussing a broadcast message that would inform field offices of a temporary restraining order that impacted specific sections of Executive Order 13,780.<br><br>**Redactions**: The information withheld in the email under (b)(5) contains proposed language that was under review and being changed as ICE offices and ICE employees provided edits, comments, and recommendations on the proposed draft.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2018-ICAP-00118<br><br>Page 100 | Partial | **Document:** Internal email between DHS employees, including an ICE employee, discussing the potential impact of a federal district court's order. The email is authored by the Acting General Counsel for DHS and is labeled as "Attorney Client Communication" and "Attorney Work Product."<br><br>**Redactions**: The information withheld in the email under (b)(5) contains strategy and possible action items to enact once the federal court's opinion is received.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance regarding pending litigation. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>The redacted portions are also protected by the work product doctrine. The work product doctrine protects documents and other memoranda prepared by an attorney in contemplation of litigation. The redacted portions contain material prepared by agency attorneys specifically internal attorney notes regarding pending litigation in immigration and federal court. Disclosure of this information would release specific legal notes and strategy involving pending litigation. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>This page may contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Pages 232-241 | Partial | **Document:** Draft memorandum, dated February 2017, to be sent from the Acting Director of ICE to the Secretary of DHS. The memo is titled "ICE Implementation Plan for Executive Orders." The document is watermarked "DRAFT."<br><br>**Redactions**: The information withheld throughout the document under (b)(5) contains a implementation plans for Executive Orders 13767 and 13768 that were under review | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | and being changed as ICE employees provided edits, comments, and recommendations on the proposed statement/draft.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations. | |
| 2018-ICAP-00118<br><br>Page 245 | Partial | **Document:** Internal email, authored by an attorney with the National Security Law Section (NSLS), between ICE employees discussing the acquisition of translation services in preparation for a hearing.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Page 248 | Partial | **Document:** Internal email between ICE employees discussing the acquisition of translation services in preparation for a hearing.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>This page may contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Page 253 | Partial | **Document:** Duplicate internal email on Bates page 245. Authored by an attorney with the National Security Law Section (NSLS) and discusses the acquisition of translation services in preparation for a hearing.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>This page may contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Page 256 | Partial | **Document:** Duplicate of internal email on Bates page 248 between ICE employees discussing the acquisition of translation services in preparation for a hearing.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>This page may contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2018-ICAP-00118<br><br>Pages 260-261 | Partial | **Document:** Internal email authored by an attorney with the National Security Law Section (NSLS) in September 2017 and provides background, current, and next steps regarding the current high-interest cases in NSLS.<br><br>**Redactions**: The Information withheld in the email under (b)(5) contains a briefing of several of NSLS' high-interest cases.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance regarding pending litigation. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>The redacted portions are also protected by the work product doctrine. The work product doctrine protects documents and other memoranda prepared by an attorney in contemplation of litigation. The redacted portions contain material prepared by agency attorneys specifically internal attorney notes regarding pending litigation in immigration and federal court. Disclosure of this information would release specific legal notes and strategy involving pending litigation. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Page 263 | Partial | **Document:** Duplicate internal email on Bates pages 245 and 253. Authored by an attorney with the National Security Law Section (NSLS) and discusses the acquisition of translation services in preparation for a hearing.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>This page may contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Page 266 | Partial | **Document:** Duplicate of internal email on Bates pages 248 and 256 between ICE employees discussing the acquisition of translation services in preparation for a hearing. Author of email is attorney with NSLS.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>This page may contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Pages 270-271 | Partial | **Document:** Internal email between ICE employees discussing the need for translation services and additional funding to cover the expense in preparation for an October 2017 hearing. Author of email is attorney with NSLS.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Page 273 | Partial | **Document:** Internal email between ICE employees discussing the need for translation services and additional funding to cover the expense in preparation for an October 2017 hearing. Author of email is attorney with NSLS.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>This page may contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Page 275 | Partial | **Document:** Email between ICE employee and third party discussing the need for translation services and to provide a quote.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | This page may contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Page 277 | Partial | **Document:** Email between ICE employee and third party discussing the need for translation services and whether services can be provided by particular date.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>This page may contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Page 279 | Partial | **Document:** Internal email between two NSLS ICE attorneys sharing a hyperlink containing web address to a draft document on network that discusses endorse and espouse.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>This page may contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C). | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(c), (b)(7)(E) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.<br><br>**Redactions**: The information withheld under (b)(7)(E) contains a URL address directed to network servers. The web address within hyperlink provides access to server(s) and creates opportunities for cyber-attacks on agency server(s), which are used to store a myriad of information/data related to countless law enforcement cases.<br><br>**Reason**: ICE FOIA applied FOIA Exemption (b)(7)(E) to protect from disclosure information compiled for law enforcement purposes, the release of which would disclose investigative techniques and procedures, such as internal database codes. The disclosure of law enforcement codes could reveal techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions which are not well known to the public and could reasonably be expected to risk circumvention of the law. The disclosure of this information could reasonably be expected to risk the circumvention of law by allowing individuals to access law enforcement sensitive information as well as personally identifying information of DHS personnel thereby potentially interfering with ICE ongoing investigations, obstructing enforcement proceedings, and endangering the safety of DHS employees. Disclosure could also assist third parties in deciphering the | |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | meanings of the codes and could allow an individual to alter or manipulate law enforcement databases if they were to gain access to the system. Disclosure of these techniques and practices in navigating the databases could permit people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. Further, how law enforcement officers access databases is a law enforcement technique and procedure that is not commonly known. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 2018-ICAP-00118<br><br>Pages 281-288 | Partial | **Document:** Meeting minutes for Homeland Security Investigations Law Division (HSILD) All-Hands meeting on August 17, 2017.<br><br>**Redactions**: The information withheld under (b)(5) contains status updates regarding a variety of issues and cases handled by HSILD. The withheld information also includes recommendations and guidance to attorneys on how to exercise prosecutorial discretion, how to implement President's Executive Orders on Immigration, and listing the agency's enforcement priorities.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 2018-ICAP-00118<br><br>Pages 290-291 | Partial | **Document:** Emails between ICE OPLA attorneys. The discussions in the email include an update to an attached document to reflect recent action by opposing counsel.<br><br>**Redactions**: The information withheld in the email under (b)(5) contains information showing that a draft document was edited.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance regarding pending litigation. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>The redacted portions are also protected by the work product doctrine. The work product doctrine protects documents and other memoranda prepared by an attorney in contemplation of litigation. The redacted portions contain material prepared by agency attorneys specifically internal attorney notes regarding pending litigation in immigration and federal court. Disclosure of this information would release specific legal notes and strategy involving pending litigation.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C). | |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Pages 293-297 | Partial | **Document:** Document titled “Hot Lit Report.” The document provides case name, assigned attorneys, action type, facts, and updates for certain pending ICE cases. The document is labeled as “Attorney Work Product/Attorney-Client Privileged” and DRAFT/PRE-DECISIONAL/DELIBERATIVE.” The document is also watermarked “DRAFT.”<br><br>**Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The materials reflect opinions, analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding pending litigations.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency’s ability to efficiently and effectively formulate | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance regarding pending litigation. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>The redacted portions are also protected by the work product doctrine. The work product doctrine protects documents and other memoranda prepared by an attorney in contemplation of litigation. The redacted portions contain material prepared by agency attorneys specifically internal attorney notes regarding pending litigation in immigration and federal court. Disclosure of this information would release specific legal notes and strategy involving pending litigation.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and | |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Pages 298-306 | Partial | **Document:** Email between ICE OPLA attorneys. The discussion in the email involves Section 235(c) of the Immigration and Nationality Act (INA) and a case where it is implicated; also whether the attached document reflects current policy or law on Section 235(c). The attached document titled “Removal of National Security Threat Aliens” is on Bates Pages 299-306. This attached document includes a background on Section 235(c), ICE’s interpretation and implementation of the section, a case study, and OPLA’s recommendations the use of the section. The document is labeled as “Privileged Document: Attorney-Client, Attorney Work Product” and is watermarked “DRAFT.”<br><br>**Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The materials reflect opinions, analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding pending litigations.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency’s ability to efficiently and effectively formulate | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance on a particular section of the INA. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>The redacted portions are also protected by the work product doctrine. The work product doctrine protects documents and other memoranda prepared by an attorney in contemplation of litigation. The redacted portions contain material prepared by agency attorneys specifically internal attorney notes regarding pending litigation in immigration and federal court. Disclosure of this information would release specific legal notes and strategy involving pending litigation.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and | |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Pages 307-319 | Full | **Document:** Draft document titled "Inadmissibility Based on Endorsing or Espousing Terrorist Activity: First Amendment Concerns." The document discusses First Amendment concerns that may arise in applying the security-related ground of inadmissibility under Section 212(a)(3)(B)(i)(VII) of the INA. The document is labeled "FOR OFFICIAL USE ONLY/PRE-DECISIONAL" and "Attorney Work Product/Attorney-Client Privileged." The document is also watermarked "DRAFT."<br><br>**Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The materials reflect opinions, analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding a particular section of the INA.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance on a particular section of the INA. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>The redacted portions are also protected by the work product doctrine. The work product doctrine protects documents and other memoranda prepared by an attorney in contemplation of litigation. The redacted portions contain material prepared by agency attorneys specifically internal attorney notes regarding pending litigation in immigration and federal court. Disclosure of this information would release specific legal notes and strategy involving pending litigation.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal | |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Pages 322-463 | Full | **Document:** Draft legislation regarding border security, immigration and law enforcement personnel, emergency port of entry and infrastructure spending, etc. The document is labeled as a "Draft Copy" in the header of each page.<br><br>**Redactions**: The information withheld throughout the document under (b)(5) contains proposed legislative language that was under review and being changed as ICE offices and ICE employees provided edits, comments, and recommendations on the proposed draft.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 2018-ICAP-00118<br><br>Pages 465-490 | Partial | **Document:** Memorandum, dated August 9, 2016, addressing a series of interrelated questions related to a particular lawful permanent resident (LPR). The document is labeled "PRIVILEGED AND CONFIDENTIAL // Attorney-Client Communication." The document is also watermarked "DRAFT." | Freedom of Information Act 5 U.S.C. § 552 (b)(5), |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The materials reflect opinions, analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding a pending case.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance on a pending case. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This | (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Pages 515-523 | Partial | **Document:** Duplicate copy of draft document titled "Inadmissibility Based on Endorsing or Espousing Terrorist Activity: First Amendment Concerns" starting on Bates page 307. The document discusses First Amendment concerns that may arise in applying the security-related ground of inadmissibility under Section 212(a)(3)(B)(i)(VII) of the INA. The document is labeled "FOR OFFICIAL USE ONLY/PRE-DECISIONAL" and "Attorney Work Product/Attorney-Client Privileged." The document is also watermarked "DRAFT."<br><br>**Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The materials reflect opinions, analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding a particular section of the INA. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance on a particular section of the INA. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>The redacted portions are also protected by the work product doctrine. The work product doctrine protects documents and other memoranda prepared by an attorney in contemplation of litigation. The redacted portions contain material prepared by agency attorneys specifically internal attorney notes regarding pending litigation in immigration and federal court. Disclosure of this information would release specific legal notes and strategy involving pending litigation.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This | |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Pages 566-580,884-898 | Partial | **Document:** Draft document titled "Inadmissibility Based on Money Laundering that Occurs Entirely Outside of the United States." The document discusses Section 212(a)(2)(I) of the INA and its applicability to certain individuals. The document is labeled "SENSITIVE BUT UNCLASSIFIED / DELIBERATIVE & PRE-DECISIONAL / ATTORNEY WORK PRODUCT."<br><br>**Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The materials reflect opinions, analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding a particular section of the INA.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance on a particular section of the INA. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>The redacted portions are also protected by the work product doctrine. The work product doctrine protects documents and other memoranda prepared by an attorney in contemplation of litigation. The redacted portions contain material prepared by agency attorneys specifically internal attorney notes regarding pending litigation in immigration and federal court. Disclosure of this information would release specific legal notes and strategy involving pending litigation. | |
| 2018-ICAP-00118<br><br>Pages 581-583,874-875 | Partial | **Document:** Draft documents titled "Questionnaire for Evaluating Whether an Organization Is a Totalitarian Party" and "Update on Lawyers Group Analysis of Immigration Ineligibility Categories." The documents discuss Section 212(a)(3)(D) of the INA, and other grounds for finding aliens ineligible to receive visas or to be admitted into the United States under the INA. Both documents contain comments and/or edits.<br><br>**Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The materials reflect opinions, analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding a particular section of the INA. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance on a particular section of the INA. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>The redacted portions are also protected by the work product doctrine. The work product doctrine protects documents and other memoranda prepared by an attorney in contemplation of litigation. The redacted portions contain material prepared by agency attorneys specifically internal attorney notes regarding pending litigation in immigration and federal court. Disclosure of this information would release specific legal notes and strategy involving pending litigation. | |
| 2018-ICAP-00118<br><br>Pages 584-591 | Full | **Document:** Draft document titled "Application of INA § 212(a)(2)(A)(i)(I) to Foreign Convictions." The document discusses Section 212(a)(2)(A)(i)(I) of the INA, which addresses crimes involving moral turpitude. The document contains comments and/or edits.<br><br>**Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The materials reflect opinions, analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding a particular section of the INA. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance on a particular section of the INA. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>The redacted portions are also protected by the work product doctrine. The work product doctrine protects documents and other memoranda prepared by an attorney in contemplation of litigation. The redacted portions contain material prepared by agency attorneys specifically internal attorney notes regarding pending litigation in immigration and federal court. Disclosure of this information would release specific legal notes and strategy involving pending litigation. | |
| 2018-ICAP-00118<br><br>Pages 645-648 | Partial | **Document:** Internal email between DHS and ICE OPLA attorneys providing comments/edits regarding a memorandum circulated for review. The memo addresses the impact of the President's Executive Order on a particular lawful permanent resident (LPR).<br><br>**Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The withheld information contains specific comments regarding the content of the memo. The materials reflect opinions, | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding a pending case.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to a pending case. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>The redacted portions are also protected by the work product doctrine. The work product doctrine protects documents and other memoranda prepared by an attorney in contemplation of litigation. The redacted portions contain material prepared by agency attorneys specifically internal attorney notes regarding pending litigation in immigration and federal court. Disclosure of this information would release specific legal notes and strategy involving pending litigation.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information. | |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Pages 652-682 | Partial | **Document:** Internal email between DHS and ICE OPLA attorneys providing comments/edits regarding a memorandum circulated for review. The memo addresses the impact of the President's Executive Order on a particular lawful permanent resident (LPR).<br><br>**Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The materials reflect opinions, analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding a pending case. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to a pending case. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>The redacted portions are also protected by the work product doctrine. The work product doctrine protects documents and other memoranda prepared by an attorney in contemplation of litigation. The redacted portions contain material prepared by agency attorneys specifically internal attorney notes regarding pending litigation in immigration and federal court. Disclosure of this information would release specific legal notes and strategy involving pending litigation.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This | |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Pages 690,691,696, 698-706,711-730, 736-754,758-761 | Partial | **Document:** Internal email between DHS and ICE OPLA employees providing comments/edits to a draft white paper circulated for review. Different iterations of the same draft white paper start on Bates pages 698, 712, and 736. The white paper discusses the inadmissibility ground for endorsing or espousing terrorist activity under Section 212(a)(3)(B)(i)(VII) of the INA. These white papers are similar, if not identical, to the previous version starting on Bates page 307.<br><br>**Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The materials reflect opinions, analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding a section of the INA.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to the INA. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." | |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Pages 765-793,796-824,828-858 | Partial | **Document:** This memorandum addresses a series of interrelated questions related to a particular lawful permanent resident (LPR) on Bates pages 767 and 797, and are similar or identical to memo starting on Bates page 465. The document is labeled "PRIVILEGED AND CONFIDENTIAL // Attorney-Client Communication." The document is also watermarked "DRAFT." There are also internal emails between DHS and ICE OPLA employees providing comments/edits to this memo, which was circulated for review.<br><br>**Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The materials reflect opinions, analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding a pending case.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(c) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance on a pending case. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.<br><br>**Redaction(s):** ICE applied FOIA Exemptions (b)(6) and (b)(7)(C) to protect from disclosure the name, contact information, telephone numbers, signatures, or initials of DHS employees to prevent an unwarranted invasion of privacy. The privacy interests of the individual(s) in the records requested outweigh any minimal public interest in the disclosure of the information.<br><br>These pages contain personally identifiable information (PII) of ICE employees. Such PII includes names, initials, signatures, contact information, phone numbers, postal addresses, email addresses, sign in identifiers and/or other identifying information. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reason**: FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) protects personal information that was compiled for law enforcement purposes, when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."<br><br>Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the PII of ICE personnel in these records, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | |
| 2018-ICAP-00118<br><br>Pages 859-869 | Partial | **Document:** Draft memorandum discussing whether Taliban is a terrorist organization under the INA. The document is labeled "ATTORNEY-CLIENT PRIVILEGED MATERIAL."<br><br>**Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The materials reflect opinions, analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding a particular section of the INA.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance on a particular section of the INA. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 2018-ICAP-00118<br><br>Pages 870-873 | Partial | **Document:** Memorandum titled "ICE ability to use 212(a)(3)(C) Foreign Policy Charge." | Freedom of Information |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Redactions:** The information withheld in this document under (b)(5) contains information protected by the attorney-client privilege. The materials reflect opinions, analysis, guidance and legal advice provided by attorneys in the ICE Office of the Principal Legal Advisor (OPLA), regarding a particular section of the INA.<br><br>**Reason**: FOIA Exemption (b)(5): The information being withheld contains pre-decisional, draft, and deliberative information. The document is not a final draft. Disclosure of this information would chill the free and frank exchange of ideas and recommendations and hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. The document also contains non-final agency decisions, options being considered, and recommendations.<br><br>The attorney-client privilege protects confidential communications between attorneys and their clients relating to a legal matter for which the client has sought professional advice. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the redacted portions constitute and/or reflect opinions, analysis, guidance and legal advice provided by attorneys (OPLA attorneys) relating to guidance on a particular section of the INA. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel. | Act 5 U.S.C. § 552 (b)(5) |
| | | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, U.S. DEPARTMENT OF JUSTICE, and U.S. DEPARTMENT OF STATE,<br><br>Defendants. | No. 1:17-cv-07572-ALC |

**DECLARATION OF CARRIE DECELL IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, Carrie DeCell, declare and state as follows:

1. I am a staff attorney at the Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute"). I have served in this role since July 31, 2017.

2. Along with my colleagues, I submitted identical Freedom of Information Act ("FOIA") requests (the "Request") to the Department of Homeland Security ("DHS"), Customs and Border Protection ("CBP"), Immigration and Customs Enforcement ("ICE"), U.S. Citizenship and Immigration Services ("USCIS"), Department of Justice ("DOJ"), and Department of State ("DOS") (collectively, "Defendants") on August 7, 2017. The Request sought, among other things, agency records concerning the exclusion or removal of individuals from the United States based on their speech, beliefs, or associations, and records concerning any new policies for "vetting"

individuals on these grounds.

3. The Knight Institute requested expedited processing of the Request on the ground that the records sought were urgently needed to inform the public about government activity, particularly with respect to the "extreme vetting" program President Trump has ordered federal agencies to develop.

4. Seeking the immediate release of all agency records responsive to the Request, as required by FOIA, 5 U.S.C. § 552, the Knight Institute filed a complaint in this Court on October 4, 2017. The Institute filed an amended complaint on March 14, 2018.

5. I represent the Knight Institute in this action and have served as the primary contact for Defendants' counsel since the beginning of the litigation.

6. The purpose of this declaration is to provide the Court with information regarding ICE's and USCIS's responses to the Request.

**<u>Communications Relating to ICE's Response to the Request</u>**

7. On September 29, 2017, ICE sent the Knight Institute a "final response" to the Request "for 1. All directives, memoranda, guidance, emails, or other communications sent by the White House to any federal agency since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude1 [sic] or remove individuals from the United States (please see request for more details)." *See* First Am. Compl. Ex. C, at 3, ECF No. 42-3. Along with the letter, dated September 28, 2017, ICE released 1,666 pages of records responsive to the Request but withheld 1,653 of those pages in full, invoking FOIA exemptions. True and correct copies of the September 28, 2017 letter and the first sixteen pages of the accompanying production are attached hereto in Exhibit A.

8. I submitted an administrative appeal requesting review of ICE's response to Item 1 of the Request, on the view that ICE had responded only as to that Item. Based on ICE's subsequent characterization of its September 29, 2017 response as a final response to the entire Request, I amended the Knight Institute's administrative appeal by letter dated January 5, 2018, to request review of ICE's response to the entire Request.

9. On February 6, 2018, I received ICE's response to the Knight Institute's amended administrative appeal, in which ICE denied our challenge to the withholdings in its September 29, 2017 response but agreed to conduct a new or modified search, remanding the Request to ICE's FOIA Office for further processing and retasking.

10. Also on February 6, 2018, Defendants' counsel informed me that ICE had already remanded the appeal to the FOIA Office, completed its new search, and located approximately 14,000 pages of potentially responsive records. Defendants' counsel further informed me that ICE had begun to process the records and scheduled an initial production for March 7, 2018, and that ICE proposed to process the records at a rate of 500 pages per month and make productions on the seventh day of each month thereafter.

11. On February 13, 2018, I received an email from ICE confirming that it had located approximately 14,000 pages of potentially responsive documents, and that it would commit to processing at least 500 pages per month. ICE indicated that the first production would be made on March 7, 2018, with subsequent productions on the seventh day of each month thereafter.

12. By letter dated March 7, 2018, ICE informed me that it had processed 560 pages of records and referred eighty-seven of those pages to other agencies. Along with the letter, ICE released 463 pages, redacting certain pages and withholding others in their entirety on the basis of FOIA Exemptions 5, 6, 7(C), and 7(E).

13.     On April 11, 2018, my co-counsel, Megan Graham, and I spoke with Defendants'
counsel to discuss the possibility of modifying the scope of the Request in order to expedite ICE's
processing. Defendants' counsel explained that ICE had conducted its new search based on the
original Request, not the Request as provisionally narrowed by the parties on a January 25, 2018
call. I responded that the Knight Institute would provisionally agree to accept ICE's response to
the modified Request, or to narrow the scope of the potentially responsive records it had already
located on an Item-by-Item basis.

14.     By letter dated April 30, 2018, ICE informed me that it had processed an additional
1,124 pages for release and referred 728 of those pages to other agencies. Along with the letter,
ICE released 395 pages, redacting certain of those pages and withholding others in their entirety
on the basis of FOIA Exemptions 5, 6, 7(C) and 7(E).

15.     In May 2018, Defendants' counsel and I reached an agreement allowing ICE to
conduct a "re-review" of the records it had identified post-remand as responsive to the initial
Request to determine which of those records were responsive to the provisionally narrowed
Request. ICE would then process only those records responsive to the provisionally narrowed
Request.

16.     By letter dated June 29, 2018, ICE informed me that following its re-review, it had
identified only ninety-nine pages of records responsive to the provisionally narrowed Request. ICE
referred forty-nine pages to other agencies for processing and released fifty pages to the Knight
Institute, redacting certain of those pages on the basis of FOIA Exemptions 5, 6, 7(C) and 7(E).

17.     Attached hereto as Exhibit B are true and correct copies of the following records
contained in ICE's March 7, 2018, April 30, 2018, and June 29, 2018 releases: "Removal of
National Security Threat Aliens" and accompanying emails (2018-ICAP-00118, at 298–306);

"Inadmissibility Based on Endorsing or Espousing Terrorist Activity: First Amendment Concerns" and accompanying emails (2018-ICAP-00118, at 693–706); "Memo Discussing Whether the Taliban Is a Terrorist Organization Under the INA" (2018-ICAP-00118, at 859–69); and "ICE Ability to Use 212(a)(3)(C) Foreign Policy Charge" (2018-ICAP-00118, at 870–73).

18. By email dated March 15, 2019, Defendants' counsel informed me that, in connection with the preparation of its *Vaughn* index, ICE had decided to withdraw its application of Exemption 5 to several pages of previously released records. By email dated March 22, 2019, Defendants' counsel sent me a supplemental release from ICE containing less-redacted versions of those records.

**Communications Relating to USCIS's Response to the Request**

19. By letter dated May 30, 2018, USCIS informed me that it had completed its search, that it was reviewing and processing records responsive to the Request, and that it would produce responsive records on a rolling basis. Along with the letter, USCIS released 551 pages of responsive records, redacting certain of those pages in part on the basis of Exemptions 5, 6, and 7(E).

20. By letter dated June 29, 2018, USCIS informed me that it had processed 727 pages and one Excel spreadsheet responsive to the Request, and that it was producing a subset of those records in the second and final part of its rolling production. Along with the letter, USCIS released 578 pages and one Excel spreadsheet in their entirety, redacting 149 pages in part on the basis of Exemption 7(E).

21. Attached hereto as Exhibit C are true and correct copies of the following records contained in USCIS's May 30, 2018 and June 29, 2018 releases: "Briefing Memo for the Acting Director: Recommendations to Eliminate the USCIS Terrorism-Related Inadmissibility Grounds

(TRIG)"; "Senior Policy Council—Briefing Paper: TRIG Exemptions & INA § 318"; "Options Paper: Exercise of Authority Relating to the Terrorism-Related Inadmissibility Grounds"; Terrorism Related Inadmissibility Grounds (TRIG) Instructor Guide, version dated May 2017; Terrorism-Related Inadmissibility Grounds Exemptions – Group-Based Exemptions / Situational Exemptions; and USCIS Refugee, Asylum and International Operations Directorate (RAIO) Officer Training – Combined Training Course on National Security, version dated Oct. 26, 2015.

22. By letter dated July 27, 2018, USCIS informed me that it had received a referral from ICE on July 26, 2018, from which it had identified fifteen pages of records responsive to the Request. USCIS withheld all fifteen pages in full on the basis of Exemptions 7(C) and 7(E). True and correct copies of the July 27, 2018 letter and the accompanying production are attached hereto in Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed: April 16, 2019

Carrie DeCell
Carrie DeCell
Knight First Amendment Institute
at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
carrie.decell@knightcolumbia.org
(646) 745-8500

Case 20-3837, Document 41, 02/23/2021, 3042809, Page258 of 302
JA-256

# EXHIBIT A

## TABLE OF CONTENTS

1. Letter from Catrina M. Pavlik-Keenan, FOIA Officer, ICE, to Caroline DeCell, Knight First Amendment Institute (Sept. 28, 2017) ............ 1–3

2. ICE Sept. 29, 2017 Production (2017-ICFO-43023), at 1–16 ............ 4–19

3. Letter from Jill A. Eggleston, Director, FOIA Operations, USCIS, to Caroline M. DeCell, Knight First Amendment Institute (July 27, 2018) ............ 20

4. USCIS July 27, 2018 Production ............ 21–35

*Freedom of Information Act Office*

**U.S. Department of Homeland Security**
500 12th St SW, Stop 5009
Washington, DC 20536

U.S. Immigration
and Customs
Enforcement

September 28, 2017

Caroline DeCell
Knight First Amendment Institute
314 Low Library
535 West 116th Street
New York, NY 10027

**RE: ICE FOIA Case Number 2017-ICFO-43023**

Dear Ms. DeCell:

This letter is the final response to your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated August 07, 2017, for 1. All directives, memoranda, guidance, emails, or other communications sent by the White House to any federal agency since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude1 or remove individuals from the United States (please see request for more details).

ICE has considered your request under both the FOIA, 5 U.S.C. § 552.

A search of the ICE Office of Policy and Office of The Principal Legal Advisor for records responsive to your request produced 1666 pages that are responsive to your request. After review of those documents, ICE has determined that 13 pages will be released in their entirety. Portions of 1653 pages will be withheld pursuant to Exemptions of the FOIA as described below.

ICE has applied Exemption 5 to protect from disclosure intra-agency documents that contain the recommendations, opinions, and conclusions of agency employees. The disclosure of these communications would discourage the expression of candid opinions and inhibit the free and frank exchange of information and opinions among agency personnel on important agency decision-making by having a chilling effect on the agency's deliberative process.

**FOIA Exemption 5** protects from disclosure those inter- or intra-agency documents that are normally privileged in the civil discovery context. The three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege. After carefully reviewing the responsive documents, I have determined that portions of the responsive documents qualify for protection under the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege. The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. The release of this internal

information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. The attorney work-product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. The attorney-client privilege protects confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice. It applies to facts divulged by a client to his attorney, and encompasses any opinions given by an attorney to his client based upon, and thus reflecting, those facts, as well as communications between attorneys that reflect client-supplied information. The attorney-client privilege is not limited to the context of litigation.

ICE has applied FOIA Exemptions 6 and 7(C) to protect from disclosure the names, e-mail addresses, and phone numbers of DHS employees contained within the documents.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right to privacy. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

**FOIA Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination.

ICE has applied FOIA Exemption 7(E) to protect from disclosure internal agency case numbers contained within the document.

**FOIA Exemption 7(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. I have determined that disclosure of certain law enforcement sensitive information contained within the responsive records could reasonably be expected to risk circumvention of the law. Additionally, the techniques and procedures at issue are not well known to the public.

If you are not satisfied with the response to this request, you have the right to appeal following the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9. Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter, to:

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
500 12th Street,, S.W., Mail Stop 5900
Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Provisions of the FOIA and Privacy Act allow us to recover part of the cost of complying with your request. In this instance, because the cost is below the $14 minimum, there is no charge.[1]

If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office refer to FOIA case number **2017-ICFO-43023**. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison, Fernando Pineiro, in the same manner. Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Michael T. Johnson For

Catrina M. Pavlik-Keenan
FOIA Officer

Enclosure(s): 1666 page(s)

[1] 6 CFR § 5.11(d)(4).

Page 0001 of 1666

Withheld pursuant to exemption

(b)(5);(b)(7)(E)

of the Freedom of Information and Privacy Act

Page 0002 of 1666

Withheld pursuant to exemption

(b)(5);(b)(7)(E)

of the Freedom of Information and Privacy Act

Page 0003 of 1666

Withheld pursuant to exemption

(b)(5):(b)(7)(E)

of the Freedom of Information and Privacy Act

Page 0004 of 1666

Withheld pursuant to exemption

(b)(7)(E)

of the Freedom of Information and Privacy Act

Page 0005 of 1666

Withheld pursuant to exemption

(b)(7)(E)

of the Freedom of Information and Privacy Act

Page 0006 of 1666

Withheld pursuant to exemption

(b)(7)(E)

of the Freedom of Information and Privacy Act

Page 0007 of 1666

Withheld pursuant to exemption

(b)(5)

of the Freedom of Information and Privacy Act

Page 0008 of 1666

Withheld pursuant to exemption

(b)(5)

of the Freedom of Information and Privacy Act

Page 0009 of 1666

Withheld pursuant to exemption

(b)(5)

of the Freedom of Information and Privacy Act

Page 0010 of 1666

Withheld pursuant to exemption

(b)(5)

of the Freedom of Information and Privacy Act

Page 0011 of 1666

Withheld pursuant to exemption

(b)(5)

of the Freedom of Information and Privacy Act

Page 0012 of 1666

Withheld pursuant to exemption

(b)(5)

of the Freedom of Information and Privacy Act

Page 0013 of 1666

Withheld pursuant to exemption

(b)(5)

of the Freedom of Information and Privacy Act

Page 0014 of 1666

Withheld pursuant to exemption

(b)(5)

of the Freedom of Information and Privacy Act

Page 0015 of 1666

Withheld pursuant to exemption

(b)(5)

of the Freedom of Information and Privacy Act

Page 0016 of 1666

Withheld pursuant to exemption

(b)(5)

of the Freedom of Information and Privacy Act

U.S. Department of Homeland Security
National Records Center
P.O. Box 648010
Lee's Summit, MO 64064-8010

U.S. Citizenship
and Immigration
Services

July 27, 2018

**COW2018000894**

Caroline M. DeCell
Knight First Amendment Institute at
Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115

Dear Caroline M. DeCell:

The United States Citizenship and Immigration Services (USCIS) is providing records in response to a Freedom of Information Act/Privacy Act (FOIA/PA) referral received in this office on July 26, 2018 from Immigration and Customs Enforcement (ICE) regarding ICE FOIA request 2018-ICAP-0011. This request is the subject of litigation, *Knight First Amendment Institute vs. Dep't of Homeland Security, et al.*, 17-cv-7572 (S.D.N.Y.).

We have completed the review of all documents and have identified 15 pages that are responsive to your request. Enclosed are 15 pages withheld in full. In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information. We have reviewed and have determined these pages are exempt pursuant to 5 U.S.C. § 552 (b)(7)(C) and (b)(7)(E) of the FOIA.

The following exemptions are applicable:

Exemption (b)(7)(C) provides protection for personal information in law enforcement records, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. We have withheld information relating to third-party individuals. The types of documents and/or information we have withheld could consist of names, addresses, identification numbers, telephone numbers, fax numbers, or various other documents that are considered personal.

Exemption (b)(7)(E) provides protection for records or information for law enforcement purposes which would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. The types of documents and/or information we have withheld could consist of law enforcement systems checks, manuals, checkpoint locations, surveillance techniques, and various other documents.

If you have any questions about our response to your FOIA request, please contact Assistant United States Attorney Ellen Blain, Southern District of New York, 86 Chambers Street, New York, New York 10007.

Sincerely,

Jill A. Eggleston
Director, FOIA Operations

PAGE WITHHELD PURSUANT TO (b)(7)(c) (b)(7)(e)

PAGE WITHHELD PURSUANT TO (b)(7)(c) (b)(7)(e)

PAGE WITHHELD PURSUANT TO (b)(7)(c) (b)(7)(e)

PAGE WITHHELD PURSUANT TO (b)(7)(c) (b)(7)(e)

PAGE WITHHELD PURSUANT TO          (b)(7)(c)          (b)(7)(e)

PAGE WITHHELD PURSUANT TO            (b)(7)(c)     (b)(7)(e)

PAGE WITHHELD PURSUANT TO (b)(7)(c) (b)(7)(e)

PAGE WITHHELD PURSUANT TO (b)(7)(c) (b)(7)(e)

PAGE WITHHELD PURSUANT TO (b)(7)(c) (b)(7)(e)

PAGE WITHHELD PURSUANT TO (b)(7)(c) (b)(7)(e)
10

PAGE WITHHELD PURSUANT TO (b)(7)(c) (b)(7)(e)

PAGE WITHHELD PURSUANT TO (b)(7)(c) (b)(7)(e)

PAGE WITHHELD PURSUANT TO

(b)(7)(c)    (b)(7)(e)

PAGE WITHHELD PURSUANT TO (b)(7)(c) (b)(7)(e)

PAGE WITHHELD PURSUANT TO (b)(7)(c) (b)(7)(e)

Case 20-3837, Document 41, 02/23/2021, 3042809, Page295 of 302
JA-293

# EXHIBIT B

## TABLE OF CONTENTS

1. "Removal of National Security Threat Aliens" and accompanying emails (2018-ICAP-00118, at 298–306) ....................1–9

2. "Inadmissibility Based on Endorsing or Espousing Terrorist Activity: First Amendment Concerns" and accompanying emails (2018-ICAP-00118, at 693–706)....................10–23

3. "Memo Discussing Whether the Taliban Is a Terrorist Organization Under the INA" (2018-ICAP-00118, at 859–69) ....................24–34

4. "ICE Ability to Use 212(a)(3)(C) Foreign Policy Charge" (2018-ICAP-00118, at 870–73) ....................35–38

**From:** (b)(6);(b)(7)(C)
**Sent:** 12 Jun 2017 11:26:56 -0400
**To:** (b)(6);(b)(7)(C)
**Cc:**
**Subject:** 235(c)
**Attachments:** 235c Changes with new Rec section (2).doc, March 2007 235(c) Guidance.pdf

(b)(6);(b)(7)(C)

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C)
Acting Deputy Chief
National Security Law Section, Homeland Security Investigations Law Division
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
(202) 732-(b)(6); (office)
(202) 276-(b)(7)( (cell)
(b)(6);(b)(7)(C)

***** WARNING *** ATTORNEY/CLIENT PRIVILEGE *** ATTORNEY WORK PRODUCT *****
This document contains confidential and/or sensitive attorney/client privileged information or attorney work product and is not for release, review, retransmission, dissemination or use by anyone other than the intended recipient. Please notify the sender if this message has been misdirected and immediately destroy all originals and copies. Any disclosure of this document must be approved by the Office of the Principal Legal Advisor, U.S. Immigration & Customs Enforcement. This document is for INTERNAL GOVERNMENT USE ONLY. FOIA exempt under 5 U.S.C. § 552(b)(5).

Page 299

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 300

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 301

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 302

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 303

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act